SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice* forthcoming)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801

*Attorneys for Plaintiff Fabien Ho Ching Ma,
on behalf of himself and all others similarly situated*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| FABIEN HO CHING MA, on behalf of himself and all others similarly situated,<br><br>Petitioner,<br><br>v.<br><br>TWITTER, INC., AND X CORP.,<br><br>Respondents. | Case No. 3:23-cv-3301<br><br>**PETITION TO COMPEL ARBITRATION**<br><br>1. FEDERAL ARBITRATION ACT, 9 U.S.C. § 4 |

Petitioner files this Petition for an Order compelling Respondents Twitter, Inc. and X Corp. (collectively, "Twitter") to arbitration as follows:

## NATURE OF THE PETITION

1. Petitioner Fabien Ho Ching Ma, on his own behalf and on behalf of other similarly situated former Twitter employees with whom Twitter has refused to engage in arbitration — despite having compelled employees to arbitrate their claims — files this Petition to Compel Arbitration against Twitter, pursuant to the terms of the arbitration agreements signed by the parties.

2. Since Elon Musk's acquisition of Twitter in October 2022, the company has been accused of a variety of unlawful acts, including failing to pay laid off employees promised severance payments, discriminating against employees on the basis of sex, race, age, and disability, failing to pay promised bonuses, violating the WARN Act and FMLA, and other violations. Approximately 2,000 of Twitter's former employees have attempted to pursue arbitration claims against the company, following Twitter's successfully moving to compel arbitration in several federal class action cases in court against it.

3. Petitioner and these thousands of other former Twitter employees signed nearly identical arbitration agreements that state that they are applicable to any disputes arising from or related to their employment with Twitter or separation of their employment. *See* Exhibit A (Petitioner's arbitration agreement).

4. The majority of these agreements provide that the parties agree to bring any claims in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), an arbitration service provider, pursuant to the then-current JAMS Rules.

5. JAMS Rules include a provision stating that, whenever parties have provided for arbitration by JAMS, the parties shall be deemed to have incorporated JAMS Rules as a part of their arbitration agreement. The Rules further provide that any other agreements the parties may make with respect to procedures for employment-related arbitrations must comport with the

JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Minimum Standards").  *See* Exhibit B.

6. Pursuant to the Minimum Standards, an employee who brings an arbitration case to JAMS must pay an initial relatively nominal filing fee (similar to the fee that would be required for a court). However, all other arbitration fees, including fees to pay the arbitrator, must be borne by the employer.  *See* Exhibit B, at 4 (Standard No. 6).

7. Following Twitter's moving to compel arbitration in several class action lawsuits brought against it in court, Petitioner and approximately two thousand other former employees, in accordance with their arbitration agreements, filed arbitration demands against Twitter with JAMS.  In each of these cases, JAMS has notified the parties that it has determined the Minimum Standards for employment disputes apply.  Twitter agreed to their application by including JAMS in its arbitration agreements, not objecting timely to the designation (*see infra* at 6 n.2), and (as explained in JAMS Minimum Standards letter) by proceeding in the arbitration process.

8. Pursuant to JAMS procedures, a number of these arbitrations began administration, a number of arbitrators were appointed, and hearing dates and other dates began to be scheduled.

9. Petitioner Fabien Ho Ching Ma filed his arbitration demand on January 11, 2023. *See* Exhibit C.  An arbitrator was appointed to his case, and a final hearing was scheduled for December 2023.

10. However, on June 2, 2023, after approximately 2,000 individual arbitrations had been filed against it, Twitter reversed course.  Despite knowing that JAMS rules require employers to pay the full arbitrator fees in employment cases under the Minimum Standards, Twitter submitted a letter to JAMS' General Counsel, Sheri Eisner, requesting that all arbitration fees be split equally among the parties (in all states other than California and a few other states, including Nevada and Oregon).  Counsel for claimants quickly objected.

11. On June 21, 2023, JAMS replied to Twitter's letter, reaffirming that the Minimum Standards were applicable and stating that JAMS would decline to administer arbitrations in which the employer did not agree to abide by the Minimum Standards. *See* Exhibit D.

12. On June 28, 2023, Twitter sent another letter to JAMS informing it that Twitter would refuse to proceed with arbitrations in most states outside California. It attached a list of 891 arbitrations in which it was refusing to proceed, including Petitioner's. *See* Exhibit E.

13. On June 30, 2023, JAMS informed the parties that it would decline to arbitrate any disputes in which Twitter refused to pay its required fees and claimants did not waive application of the Minimum Standards. Shortly thereafter, JAMS notified the parties that scheduled conferences and hearings in these matters would be cancelled.

14. Petitioner has filed this Petition on behalf of himself and the other similarly situated employees who have brought arbitration claims against Twitter seeking to compel Twitter to arbitrate their cases, pursuant to the terms of the arbitration agreement that Twitter drafted and signed, which included JAMS Rules and thereby incorporated the Minimum Standards for employment cases, requiring the employer to bear the full arbitrator fees.

## PARTIES

15. Petitioner Fabien Ho Ching Ma is an adult resident of Brooklyn, New York, who has filed a demand for arbitration with JAMS against Twitter challenging its unlawful actions following Elon Musk's acquisition of the company.

16. Petitioner Ma brings this Petition to Compel Arbitration as a Rule 23 class action on behalf of all former Twitter employees throughout the United States who have filed demands for arbitration against Twitter with JAMS, and whose arbitrations JAMS has determined are subject to the Minimum Standards, but for whom Twitter has refused to abide by the Minimum Standards and pay the arbitration fees in full.

17. Respondent Twitter, Inc. is a Delaware corporation headquartered in San Francisco, California.

18. Respondent X Corp. is a Nevada corporation headquartered in San Francisco, California.

19. In or about March 2023, Twitter, Inc. merged with X Corp., and as a result Twitter, Inc. and X Corp. are a single entity. X Corp. has successor liability for the unlawful acts of Twitter, Inc. Twitter, Inc. and X Corp. are referred to herein as "Twitter".

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1332 because the underlying matters in controversy collectively exceed the sum or value of $5,000,000, exclusive of interest and costs, and the vast majority of, if not all, members of the Petitioner class reside in a different state from Respondents.

21. This Court has personal jurisdiction over Twitter, Inc. and X Corp. because both entities have their headquarters and principal places of business in California.

22. Venue is proper in this district (San Francisco Division) pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1391(b) because both Twitter, Inc. and X Corp. are headquartered and conduct business in San Francisco County, and many of the acts and omissions complained of occurred in San Francisco County.

## BACKGROUND

23. Twitter is a social media company that used to employ thousands of people across the United States.

24. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company. Since his purchase, the company has laid off, terminated, or constructively discharged a very substantial portion (75% or more) of its employees.

25. These employees have made various claims against the company concerning their separations from Twitter, including claims related to unpaid severance payments, discrimination, and other legal obligations that Twitter has refused to comply with.

26. Petitioner and the majority of those similarly situated signed substantially identical arbitration agreements with Twitter that require their claims to be pursued in arbitration proceedings conducted by JAMS. *See* Exhibit A.

27. When class action lawsuits were filed against Twitter in court, Twitter regularly moved to compel arbitration, and it succeeded (with respect to employees who were bound by an arbitration clause). *See Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); *Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); *see also Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023)[1]; *Adler v. Twitter, Inc.*, No. 3:23-CV-01788 (N.D. Cal. May 12, 2023) (Dkt. 14) (Twitter's motion to compel arbitration, which was withdrawn because plaintiff opted out of arbitration).

28. These arbitration agreements provide: "Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules…." Exhibit A at 2, § 5.

29. JAMS Rules provide: "(a) The JAMS Employment Arbitration Rules and Procedures ('Rules') govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed. (b) The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ('Agreement') whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule."

---

[1] In its Order regarding arbitration, the court in *Gadala* stated: "Plaintiff [a Florida resident] shall only be required to pay the JAMS arbitration filing fee up to the amount she would pay to initiate an action in this Court; Defendants shall be required to pay all other costs of arbitration." No. 3:23-cv-01595-JSC (Dkt. 18).

30. JAMS Rules further provide: "The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness and Rules 15(i), 30 and 31)."

31. The JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness provides: "The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services." Exhibit B, at 4 (Standard No. 6).

32. Petitioner and those similarly situated have filed with JAMS demands for arbitration against Twitter. *See, e.g.,* Exhibit C.

33. Since late in 2022, when arbitration demands began being filed, arbitrations have proceeded, arbitrators have been appointed, and arbitration conferences and hearings have been scheduled.

34. As described above, Twitter has recently informed JAMS, Petitioner, and others similarly situated, through counsel, that it will not proceed in JAMS with arbitration under the Minimum Standards for arbitrations outside California and several other states because Twitter refuses to pay the full arbitration fees for these cases.[2] *See* Exhibit E.

35. On June 30, 2023, following Twitter's notice of its refusal to pay these fees, JAMS notified the parties that: "JAMS will close its file as JAMS will not proceed with cases that we have determined fall under our Employment Minimum Standards if Respondent will not abide by those standards."

---

[2] In addition to being incorrect in its objection to these Minimum Standards, Twitter's objection was too late. JAMS' rules provide that "If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION [which includes employment disputes], Respondent should communicate this objection in writing to the JAMS case manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration". Exhibit C, at 5.

36. Under the arbitration agreement that Twitter drafted and the parties signed, the parties are required to abide by JAMS Rules, which in turn require application of the Minimum Standards. Moreover, while JAMS Rules permit the parties to agree to other rules, JAMS policy requires application of the Minimum Standards. JAMS has stated that it will refuse to proceed with administering arbitrations for which Twitter does not agree to comply with the Minimum Standards (unless Claimants agree to waive those standards, which Petitioner and others similarly situated have not agreed to waive).

37. By refusing to abide by the JAMS Minimum Standards and pay the full arbitrator fees as required by those standards (which Twitter was or should have been aware of when entering into these arbitration agreements and moving to compel employees' claims to arbitration), Twitter has interfered with Petitioner and other employees' right to arbitrate their claims at JAMS, as required by their agreements.

38. As a result, Petitioner and those similarly situated are aggrieved by Twitter's failure, neglect, and refusal to arbitrate under its own written agreement, which requires Twitter's compliance with the JAMS Minimum Standards.

39. Accordingly, this Court should compel Twitter to arbitrate under 9 U.S.C. § 4.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner, on his own behalf and on behalf of those similarly situated, respectfully requests that this Court:

1. Enter an Order requiring that Twitter arbitrate the claims of Petitioner and those similarly situated pursuant to the terms of their arbitration agreements, including by complying with JAMS Minimum Standards and paying the arbitration fees and costs JAMS determines are necessary to empanel arbitrators and proceed with arbitrations.

2. Award any additional relief to which Petitioner and those similarly situated are entitled.

                         Respectfully submitted,

                         FABIEN HO CHING MA, on behalf of himself and all others similarly situated,

                         By his attorneys,

                         /s/ *Shannon Liss-Riordan*
                         Shannon Liss-Riordan, SBN 310719
                         Thomas Fowler (*pro hac vice* forthcoming)
                         Bradley Manewith (*pro hac vice* forthcoming)
                         LICHTEN & LISS-RIORDAN, P.C.
                         729 Boylston Street, Suite 2000
                         Boston, MA 02116
                         (617) 994-5800
                         Email:  sliss@llrlaw.com; tfowler@llrlaw.com; bmanewith@llrlaw.com

Dated:          July 3, 2023