# EXHIBIT C

SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice* forthcoming)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Petitioners Fabien Ho Ching Ma, Laila Amlani, Jonathan Willis, Melissa Olson, Sasha Solomon, Ryan Crowley, Grae Kindel, Sarah Rosen, and Adam Treitler, on behalf of themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL, SARAH ROSEN, and ADAM TREITLER, on behalf of themselves and all others similarly situated,<br><br>    Petitioners,<br><br>    v.<br><br>TWITTER, INC., AND X CORP.,<br><br>    Respondents. | Case No. 3:23-cv-3301<br><br>**DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION** |

I, Shannon Liss-Riordan, declare under penalty of perjury that the following statements are true and correct:

1)      I am a partner at the law firm of Lichten & Liss-Riordan, P.C., and lead counsel for the Petitioners in the above-captioned matter.  I submit this declaration in support of Petitioners' Motion to Compel Arbitration and for Preliminary Injunction.

2)      Our law firm represents nearly 2,000 former Twitter employees in individual arbitrations, mostly stemming from their termination following Elon Musk's acquisition of Twitter in October 2022.  We filed the vast majority of those arbitrations with the Judicial Arbitration and Mediation Services ("JAMS"), as specified in Twitter's standard employee arbitration agreement.

3)      True and accurate copies of the signed arbitration agreements that Petitioners Fabien Ho Ching Ma, Laila Amlani, Jonathan Willis, Melissa Olson, Grae Kindel, Sarah Rosen, and Adam Treitler entered into with Twitter are attached as Exhibits A1-A7 of Petitioners' Amended Class Petition to Compel Arbitration. *See* Dkt. 6-1.

4)      For any employee who worked in a state without a JAMS office, we filed the arbitration demand, listing the closest JAMS office to where the employee worked.

5)      JAMS determined that its Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Minimum Standards") apply to the employees' arbitration demands. The JAMS Minimum Standards provide that an employer is required to pay all fees associated with the arbitration (including the arbitrator's fees), other than a minimal initial filing fee.

6)      At the outset of each of the JAMS arbitrations we filed against Twitter, JAMS informed the parties that the JAMS Minimum Standards would apply.

7)      Twitter has consistently objected to any arbitration demand to which we did not attach a signed copy of the employee's arbitration agreement.

8)      Twitter acknowledges that it has copies of its employees' signed arbitration agreements in its possession and has insisted that it will seek to compel arbitration for any

employee who files a case in court who is bound by an arbitration agreement.

9)    I have requested on multiple occasions since January 2023 that Twitter provide our firm with copies of the signed arbitration agreements for those employees my law firm represents. Twitter has consistently refused to do so.

10)    On June 9, 2023, Twitter's counsel once again acknowledged that Twitter was in possession of the signed arbitration agreements, that Twitter objected to any arbitration demand where the employee was unable to provide their own copy of their signed arbitration agreement, and that Twitter would seek to compel arbitration for any employee who filed in court.  In that email, Twitter's counsel also informed me that employees could obtain their signed arbitration agreement by emailing Twitter at PeopleQuestions@twitter.com.

11)    That day, I emailed PeopleQuestions@twitter.com with a list of the employees my law firm represents who do not have copies of their signed arbitration agreement and requested that Twitter provide us with the signed arbitration agreements. I received a bounce back message stating that my email was undeliverable. I immediately provided a copy of this email, and the error message, to Twitter's counsel (with a copy to JAMS' administrator), asking Twitter's counsel to forward my message to his client so that we could obtain the signed arbitration agreements and move forward with the employees' arbitrations.

12)    To date, Twitter has still refused to provide copies of these signed arbitration agreements that it acknowledges having in its possession.

13)    Twitter's refusal to provide signed arbitration agreements has caused great confusion for many employees who do not remember if their employment contract contained an arbitration agreement and do not know if their contract specified JAMS as the arbitration provider.  Some Twitter employees who worked at the company for a number of years do not have arbitration provisions in their contracts, and some of the earlier Twitter arbitration agreements do not specify JAMS (in which case we have agreed with Twitter to use AAA as the arbitration provider).  Thus, a number of employees have been uncertain as to whether they can file their claims in court or must file in arbitration.

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF
PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

14)     In an abundance of caution, our firm has filed arbitration claims for clients who are not certain whether they are even bound by an arbitration agreement.  If Twitter would provide these agreements (as it should, since it is insisting that employees who are bound by arbitration agreements file their claims only in arbitration), we (and our clients) would know where to file their claims.  Twitter has created much unnecessary work for the parties and counsel by playing this game of not providing counsel or JAMS with the signed arbitration agreements.

15)     Aside from the group of employees who do not have copies of their signed arbitration agreements, Twitter initially did not object to the employees' arbitration demands. It paid its portion of JAMS' initial case management fee, and it filed a template response to each employee's arbitration demand (which included forty-five affirmative defenses).

16)     Twitter also began to engage in the process of choosing arbitrators for these cases.

17)     According to the arbitration agreement, the arbitrator is supposed to be either an attorney who is licensed to practice in the state where the arbitration will take place or a retired judge from the state where the arbitration will take place. However, there are a number of states where JAMS does not have an office or any arbitrators, or it has a limited number of arbitrators, so that it cannot provide a full "strike" list. As such, for employees who worked in one of those states, JAMS could not generate a list of potential arbitrators.

18)     I spoke to Twitter's counsel regarding the lack of arbitrators in certain states. We filed arbitration demands with the closest JAMS office and suggested using arbitrators from nearby states for those employees who worked in states where JAMS does not have enough arbitrators. Twitter agreed to use out of state arbitrators in some cases, such as New York arbitrators for employees located in New Jersey. However, for other states, Twitter would not agree to use out of state arbitrators. Nor, despite my inquiries, did Twitter propose any alternate solutions. This issue has remained unresolved, and these arbitrations have not moved forward.

19)     In approximately May 2023, JAMS started appointing arbitrators to the various arbitrations.  Following those appointments, JAMS billed Twitter for a deposit towards the

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF
PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

arbitrators' fees, so that those cases could move forward.

20)   Dozens of initial case management conferences were scheduled, and final arbitration hearings were also set in many matters. For example, Fabien Ma's arbitration hearing was scheduled to take place the week of December 18, 2023.

21)   On June 2, 2023, Twitter objected to proceeding under JAMS Minimum Standards for the first time. Twitter argued that JAMS' fees should be apportioned equally between the parties, except for in California and a couple other states (including Nevada and Oregon), where it concedes that the employer must pay the full arbitration fees.

22)   I sent a response to JAMS opposing Twitter's request to require our clients to pay any arbitration fees, other than the initial filing fee.

23)   On June 21, 2023, JAMS re-affirmed that the JAMS Minimum Standards would apply to all the Twitter employees' cases and that Twitter would be responsible for paying the full JAMS' fees.

24)   On June 28, 2023, Twitter advised us and JAMS that it refused to abide by the JAMS Minimum Standards in any state other than California and a couple other states, including Nevada and Oregon.

25)   JAMS will not proceed with administering any arbitration case in which the deposit for an arbitrator's fees has not been paid.

26)   Consequently, JAMS stayed all pending arbitrations outside of California, Nevada, and Oregon and cancelled dozens of initial case management conferences.

27)   For employees, such as Petitioners Grae Kindel and Sara Rosen, whose arbitration agreements did not specify JAMS as the arbitration provider, I reached an agreement with Twitter that these cases would be arbitrated with the American Arbitration Association ("AAA").

28)   Twitter signed agreements consenting to AAA's jurisdiction in these cases and agreeing that arbitration would proceed under AAA's Employment Arbitration Rules.

29)   Consistent with the AAA Employment Arbitration Rules, AAA determined that its Employment/Workplace Multiple Case Filing Fee Schedule would apply to these cases and

that as such, Twitter would be required to pay all administrative and arbitrators' fees, other than a minimal initial filing fee for each case.

30)     During a series of conference calls between the parties' counsel and AAA on June 30, July 19, and August 4, 2023, Twitter objected to AAA's application of the Employment/Workplace Multiple Case Filing Fee Schedule.

31)     On August 1, 2023, Twitter provided AAA with a list of at least 130 individuals for whom it objected to paying the required arbitration fees.

32)     During the conference call on August 4, 2023, AAA informed the parties that Twitter could raise its objection regarding AAA's determination that its Employment/Workplace Multiple Case Filing Fee Schedule to the individual arbitrators in each case.  However, AAA informed Twitter that it would need to pay the necessary arbitrator retainer deposits first and that, if Twitter refused to do so, AAA would not move forward with administering those cases.

33)     Twitter has not agreed to pay the arbitrators' retainers for the AAA cases outside California, Nevada, and Oregon, and so those cases are not moving forward.

Executed in Boston, MA on August 30, 2023

                                        By: /s/ Shannon Liss-Riordan
                                        Shannon Liss-Riordan, Esq.