MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:     +1.415.442.1000
Fax:     +1.415.442.1001

Attorneys for Respondents
TWITTER INC., and X CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL, SARAH ROSEN, and ADAM TREITLER,<br><br>                    Petitioners,<br><br>          v.<br><br>TWITTER, INC., and X CORP.,<br><br>                    Respondents. | Case No. 4:23-cv-3301<br><br>**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO COMPEL ARBITRATION** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 2

        A.      Petitioners entered binding arbitration agreements with Twitter. ............................ 2

        B.      JAMS and AAA refused to honor the DRA's fee-sharing provision ..................... 3

        C.      Petitioners' counsel requested signed copies of various individuals' DRA
                without providing any evidence that counsel has those individuals' consent ........ 5

III.    ARGUMENT ....................................................................................................... 6

        A.      Petitioners' Motion violates the rule against one-way intervention. ..................... 6

        B.      The Court lacks the power to grant relief under 9 U.S.C. § 4 because
                Petitioners' arbitrations will not occur within this District. ................................. 8

        C.      The Court lacks the power to require Twitter to adhere to JAMS and
                AAA's policies on arbitral fees because they conflict with the DRA. .................. 9

                1.      The DRA requires Twitter and Petitioners to share arbitration fees
                        unless the individual arbitrator orders otherwise. ..................................... 10

                2.      JAMS and AAA's policies on fees do not supersede the DRA. ............... 12

                3.      By their terms, the JAMS Minimum Standards do not even apply. ......... 15

        D.      The Court lacks the power to require Twitter to produce signed arbitration
                agreements because Twitter has no such obligation under the DRA, the
                FAA, or any statute. ........................................................................................... 16

        E.      Petitioners' recourse for an unavailable arbitral forum is 9 U.S.C. § 5. ............... 18

        F.      Elon Musk's August 5, 2023 tweet is irrelevant. ................................................ 20

        G.      Petitioners' cursory request for a preliminary injunction should be denied. ........ 20

IV.     CONCLUSION ................................................................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abernathy v. DoorDash, Inc.*,
    438 F. Supp. 3d 1062 (N.D. Cal. 2020) ................................................................... 12

*Adams v. Postmates, Inc.*,
    No. 19-cv-3042, 2020 WL 1066980 (N.D. Cal. Mar. 5, 2020) ............................. 21

*Allemeier v. Zyppah, Inc.*,
    No. 18-cv-7437, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ........................... 12

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ...................................................................................... 9, 11

*Anderson v. Select Portfolio Servicing, Inc.*,
    No. 18-cv-706, 2019 WL 1487584 (W.D. Wis. Apr. 4, 2019) ............................. 11

*ASARCO, LLC v. Union Pac. R.R. Co.*,
    765 F.3d 999 (9th Cir. 2014) .................................................................................. 14

*Bahoor v. Varonis Sys., Inc.*,
    152 F. Supp. 3d 1091 (N.D. Ill. 2015) ................................................................... 14

*Bekele v. Lyft, Inc.*,
    918 F.3d 181 (1st Cir. 2019) ................................................................................... 11

*Borodaenko v. Twitter, Inc.*,
    2023 WL 3294581 (N.D. Cal. May 5, 2023) ........................................................... 2

*Bossé v. N.Y. Life Ins. Co.*,
    992 F.3d 20 (1st Cir. 2021) ..................................................................................... 13

*Bradford v. Rockwell Semiconductor Sys., Inc.*,
    238 F.3d 549 (4th Cir. 2001) ................................................................................... 11

*Brady v. Williams Cap. Grp., L.P.*,
    928 N.E.2d 383 (N.Y. 2010) ............................................................................ 11, 14

*Brown v. Hain Celestial Grp., Inc.*,
    No. 11-cv-3082, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ............................. 7

*Brown v. ITT Consumer Fin. Corp.*,
    211 F.3d 1217 (11th Cir. 2000) .............................................................................. 19

*Brown v. Peregrine Enters., Inc.*,
    No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) ...................................... 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000).......................................................................... 9

*City of Emeryville v. Robinson*,
  621 F.3d 1251 (9th Cir. 2010)........................................................................ 20

*Clark v. Renaissance W., LLC*,
  307 P.3d 77 (Ariz. Ct. App. 2013) .................................................................. 11

*Cornet v. Twitter, Inc.*,
  2023 WL 187498 (N.D. Cal. Jan. 13, 2023) ..................................................... 2

*CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*,
  19 F.4th 236 (3d Cir. 2021)............................................................................... 7

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .......................................................................................... 9

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017)........................................................................... 21

*Essex v. Children's Place, Inc.*,
  No. 15-cv-5621, 2017 WL 6000347 (D.N.J. Dec. 4, 2017).............................. 16

*Estate of Saunders v. Comm'r*,
  745 F.3d 953 (9th Cir. 2014)........................................................................... 20

*Ferrini v. Cambece*,
  No. 12-cv-1954, 2013 WL 2421717 (E.D. Cal. June 3, 2013) .......................... 19

*Folck v. Lennar Corp.*,
  No. 17-cv-992, 2018 WL 1726617 (S.D. Cal. Apr. 10, 2018)........................... 17

*Goobich v. Excelligence Learning Corp.*,
  No. 19-cv-6771, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020) ....................... 14

*Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*,
  No. 22-cv-5212, 2023 WL 2138693 (S.D.N.Y. Feb. 21, 2023)......................... 11

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) .......................................................................................... 9

*Green Tree Fin. Corp.—Ala. v. Randolph*,
  531 U.S. 79 (2000) .......................................................................................... 11

*Hamm v. Mercedes-Benz USA, LLC*,
  No. 16-cv-3370, 2019 WL 4751911 (N.D. Cal. Sept. 30, 2019) ........................ 7

*Henry v. Cent. Freight Lines, Inc.*,
  No. 16-cv-280, 2019 WL 2465330 (E.D. Cal. June 13, 2019) ........................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

*In re Jamster Mktg. Litig.*,
   No. 05-cv-819, 2008 WL 4858506 (S.D. Cal. Nov. 10, 2008) ................................................. 8

*Khan v. Dell Inc.*,
   669 F.3d 350 (3d Cir. 2012) .................................................................................................... 19

*Kim v. Colorall Techs., Inc.*,
   No. 00-cv-1959, 2000 WL 1262667 (N.D. Cal. Aug. 18, 2000) ............................................... 8

*Lambirth v. USAA Cas. Ins. Co.*,
   No. 20-cv-193, 2021 WL 3610504 (D. Idaho Aug. 13, 2021) ................................................. 11

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) .............................................................................................................. 9

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
   363 F.3d 1010 (9th Cir. 2004) ................................................................................ 1, 10, 12, 17

*Martin v. Certain Underwriters of Lloyd's, London*,
   No. 10-cv-1298, 2011 WL 13227729 (C.D. Cal. Sept. 2, 2011) ............................................. 19

*Mendez v. Palm Harbor Homes, Inc.*,
   45 P.3d 594 (Wash. Ct. App. 2002) ........................................................................................ 11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*,
   49 F.3d 323 (7th Cir. 1995) ........................................................................................... 8, 9, 21

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ................................................................................................ 16

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ...................................................................................................................... 7

*Norton v. Lyft, Inc.*,
   No. 19-cv-2025, 2019 WL 4744691 (N.D. Cal. Sept. 13, 2019) ............................................. 17

*Puri v. Golden Temple of Oregon, LLC*,
   No. 10-cv-882, 2010 WL 11595757 (C.D. Cal. June 9, 2010) .................................... 8, 10, 17

*Reddam v. KPMG LLP*,
   457 F.3d 1054 (9th Cir. 2006), *abrogated in part on other grounds by Powerex Corp.
   v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007) .............................................................. 19

*Reed v. Navient Sols., LLC*,
   No. 17-cv-1218, 2020 WL 13701850 (N.D. Ohio Mar. 24, 2020) ......................................... 13

*Rodriguez v. Four Seasons Hotels, Ltd.*,
   No. 09-cv-2864, 2009 WL 2001328 (S.D.N.Y. July 10, 2009) ............................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

*Rodriguez v. Twitter, Inc.*,
    2023 WL 3168321 (N.D. Cal. May 1, 2023) ........................................................... 2

*Schwarzschild v. Tse*,
    69 F.3d 293 (9th Cir. 1995).................................................................................... 7

*Selby v. Deutsche Bank Tr. Co. Americas*,
    No. 12-cv-1562, 2013 WL 1315841 (S.D. Cal. Mar. 28, 2013) ........................... 19

*Selman v. FCB Worldwide Inc.*,
    No. B168315, 2004 WL 2729656 (Cal. Ct. App. Dec. 1, 2004)...................... 15, 16

*Simeon v. Domino's Pizza LLC*,
    No. 17-cv-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) ............................. 16

*Simplicity Int'l v. Genlabs Corp.*,
    No. 09-cv-6146, 2010 WL 11507526 (C.D. Cal. May 6, 2010) ............................ 8

*Sink v. Aden Enters., Inc.*,
    352 F.3d 1197 (9th Cir. 2003)............................................................................. 12

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
    201 F. Supp. 2d 291 (S.D.N.Y. 2002).................................................................. 11

*Textile Unlimited, Inc. v. A..BMH & Co.*,
    240 F.3d 781 (9th Cir. 2001)................................................................................. 8

*Villa v. San Francisco Forty-Niners, Ltd.*,
    104 F. Supp. 3d 1017 (N.D. Cal. 2015) ................................................................ 7

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)............................................................................................... 9

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................................... 20, 21

*Young v. Refined Techs., Inc.*,
    No. 22-cv-1032, 2022 WL 3012536 (C.D. Cal. June 17, 2022) .......................... 16

**STATUTES**

9 U.S.C. § 3 ................................................................................................................. 14

9 U.S.C. § 4 .......................................................................................................... passim

9 U.S.C. § 5 ........................................................................................................... 18, 19

California Labor Code § 1198.5............................................................................ 6, 17, 18

Federal Rules of Civil Procedure, Rule 3 ...................................................................... 7

Federal Rules of Civil Procedure, Rule 22.................................................................................... 7

Federal Rules of Civil Procedure, Rule 23.................................................................................... 7

**RULES**

JAMS Employment Rules, Rule 2(a) ........................................................................................... 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

1    **I.      INTRODUCTION**

2          Petitioners request an order compelling arbitration under 9 U.S.C. § 4. That statutory

3    provision limits courts to compelling arbitration only "in the manner provided for in [the parties']

4    agreement" and only "in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also, e.g.,*

5    *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) ("By its terms,

6    section 4 of the FAA limits the court's discretion; the court must order the parties to proceed to

7    arbitration ***only in accordance with the terms of their agreement***." (emphasis added)). Petitioners'

8    Motion to Compel Arbitration (Dkt. 26) violates this rule by requesting an order that would rewrite

9    the terms of the parties' agreements. As a result, the Motion should be denied.

10         Although Petitioners never mention it, their arbitration agreements expressly address the

11   payment of arbitral fees: "If under applicable law the Company is not required to pay all of the

12   Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in

13   accordance with said applicable law, and any disputes in that regard will be resolved by the

14   Arbitrator." Dispute Resolution Agreement ("DRA"), § 6.[1] Twitter[2] has fully complied with this

15   provision by paying arbitral fees in arbitrations for which applicable law requires it. Petitioners, on

16   the other hand, refuse to follow this provision. They seek an order obligating Twitter to pay vastly

17   more in fees than what applicable law in the relevant jurisdictions would require—without any

18   order by any Arbitrator to do so—merely because JAMS and AAA purport to apply a policy that

19   employers should pay virtually the entire cost of certain employment arbitrations, regardless of

20   what the arbitration agreement or the Arbitrator might decide. But the arbitration providers' policies

21   cannot override material terms of the parties' agreements and thus cannot support an order under

22   Section 4.

23         Nor does the DRA impose any obligation that could support Petitioners' second request for

24   an order directing Twitter to furnish a signed copy of the agreement whenever their attorneys

---

[1] Petitioners attach copies of the DRAs that eight of them signed at Dkt. 6-1. They do not attach a signed agreement for Petitioner Ryan Crowley, claiming that he does not have a copy of it. *See* Dkt. 26-4.

[2] Though named in the Amended Petition (Dkt. 6), Twitter, Inc. no longer exists, and its successor in interest is X Corp. For convenience, the Opposition refers to both entities collectively as "Twitter."

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

demand it. If any such obligation existed, it would exist separately from the DRA and thus also be unenforceable through 9 U.S.C. § 4. Petitioners have not identified any source in fact or law for such an obligation. In reality, Twitter's refusal to accede to Petitioners' counsel's unsupported demands was entirely supported by California law and also fully consistent with Twitter's right to arbitrate.

This Court, however, need not reach those underlying disputes because Petitioners' Motion separately fails for two important threshold reasons. *First*, Petitioners' Motion violates the well-settled rule against "one-way intervention" because they purport to pursue case-dispositive relief on behalf of a class that has not been certified. *Second*, Petitioners' arbitrations would all take place outside this judicial district, but under binding Ninth Circuit precedent and the statute's plain terms, this Court cannot use 9 U.S.C. § 4 for arbitrations that would occur in other districts.

For these reasons and others discussed below, the Court should deny Petitioners' motion in its entirety.

## II.      BACKGROUND

### A.      Petitioners entered binding arbitration agreements with Twitter.

In October 2022, X Holdings I, Inc. and X Holdings II, Inc. completed their purchase of Twitter, Inc.[3] Afterward, Twitter began restructuring its workforce and operations, resulting in multiple reductions in force that affected Petitioners. As part of these reductions in force, each Petitioner was offered significant severance benefits, in exchange for a general release of claims, but they declined these severance offers. Instead, they—and over 2,200 other former employees—opted to file demands for arbitration against Twitter. *See* Declaration of Eric Meckley ("Meckley Decl."), ¶ 2.[4]

Each Petitioner entered into a binding DRA with Twitter. *See* Dkt. 6-1; Dkt. 26-4. Three different versions of the DRA are relevant here. Each gave employees a right to opt out of the DRA

---

[3] X Holdings I, Inc. and X Holdings II, Inc. no longer exist. The successor in interest to X Holdings I, Inc. is X Holdings Corp. and the successor in interest to X Holdings II, Inc. is X Corp.

[4] Some former employees with arbitration agreements instead sought to litigate in court, but Twitter successfully moved to compel arbitration. *See, e.g.*, *Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); *Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                    RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

by sending an opt out form to the human resources department. DRA § 8. The agreements explained in bold print: "**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement**." *Id.* Each of the three versions states that it is "governed by the Federal Arbitration Act." DRA § 1. And each provides for an arbitration location "no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise." DRA § 3.

Section 6 of all three versions is titled, "**Paying For The Arbitration**." It states:

> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. **If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.**

DRA § 6 (emphasis added).

One relevant difference between the DRAs concerns the designation of an arbitration provider. The version signed by Petitioners Ma, Amlani, Willis, Olson, Crowley, and Treitler ("DRA #1") and the version signed by Petitioner Solomon ("DRA #2") both provide for "arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules." DRA #1 § 5; DRA #2 § 5. These versions define "JAMS Rules" as "JAMS Employment Arbitration Rules and Procedures." DRA #1 § 3; DRA #2 § 3. In contrast, the version signed by Petitioners Kindel and Rosen ("DRA #3") do not select an arbitration provider or any arbitration rules at all. *See* DRA #3 §§ 3, 5. Section 3 of that agreement provides that "[t]he Arbitrator shall be selected by mutual agreement of the Company and the Employee." DRA #3 § 3. The parties exercised their ability under that provision by mutually agreeing to arbitrate these claims before the American Arbitration Association ("AAA") under its Employment Arbitration Rules. Dkt. 6-8.

**B.      JAMS and AAA refused to honor the DRA's fee-sharing provision.**

Although Section 6 of the DRA requires apportionment of arbitral fees between the parties, where permitted by applicable law, JAMS and AAA both decided to disregard this provision.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

On June 2, 2023, Twitter sent a letter to JAMS Senior Vice President and General Counsel Sheri Eisner citing Section 6 and requesting that JAMS cease invoicing fees to Twitter only and instead apportion fees equally among the parties in any jurisdiction where the law does not require Twitter to cover all arbitral fees. Meckley Decl. ¶ 3 & Ex. 1. The letter identified 18 jurisdictions whose laws do not require Twitter to cover all arbitral fees. *Id.*, Ex. 1.

On June 21, 2023, Ms. Eisner responded to Twitter's request. *See* Dkt. 6-4. The response asserted that JAMS would apply its Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards") "notwithstanding any contrary provision in the parties' arbitration agreement." *Id.* Although claimants could choose to contribute to arbitral fees even under the Minimum Standards, if they chose not to do so and the employer declined to proceed under the Minimum Standards, "JAMS will decline to administer the arbitration." *Id.* Ms. Eisner also stated that the arbitrator in an individual case could consider whether the Minimum Standards apply and that JAMS would take the arbitrator's position into consider. *Id.* But JAMS retained the right to make a "final determination." *Id.* Ms. Eisner's letter does not acknowledge, much less substantively address, the contradiction between JAMS' policy and the DRAs, including the DRAs' delegation of disputes over fee apportionment to each individual arbitrator. *See* DRA § 6.

Twitter responded to JAMS on June 28, 2023. Dkt. #6-4. It reiterated that JAMS' position "prevents Twitter from exercising its contractual rights and improperly negates a material provision in the dispute resolution agreements." *Id.* Rather than abandon its contractual rights, Twitter informed JAMS that it would not proceed under the Minimum Standards for demands in jurisdictions where fee-sharing is lawful. *Id.*

On June 30, 2023, Ms. Eisner acknowledged Twitter's position. Meckley Decl. ¶ 4 & Ex. 2. She noted that employees could elect to waive the Minimum Standards and "share JAMS fees according to the underlying arbitration agreement clause" (but did not explain why employees' agreement to share JAMS fees in the arbitration agreement itself was insufficient). *Id.*, Ex. 2. Petitioners have elected not to waive the Minimum Standards.

Meanwhile, AAA also decided to disregard Section 6 of the DRA. Twitter and Petitioners' counsel had an administrative conference call on June 30, 2023, in which they noted their dispute

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

over allocation of arbitral fees. Dkt. 26-7. AAA proposed to appoint a "Process Arbitrator" to decide the company's obligation to pay virtually all arbitral fees. Dkt. 6-9. But despite DRA § 6, AAA would not apportion the fees for the Process Arbitrator between the parties; rather, Twitter would have had to pay the Process Arbitrator's compensation. *Id.* Twitter explained that having a Process Arbitrator resolve the parties' fee dispute would violate the DRA, and the parties later agreed to have the issue raised to the merits arbitrator in each individual arbitration. Dkt. 26-5. Twitter further objected that AAA was disregarding the terms of the DRA by requiring Twitter to front all arbitration fees pending arbitrators' rulings on the issue, even in jurisdictions where fee apportionment was lawful. Dkt. 6-10.

After an unsuccessful attempt at mediation, the parties revisited the status of the AAA arbitrations. To move the matters along, Twitter proposed advancing the claimants' portion of the arbitral fees on the condition that claimants and their counsel agreed to comply with the merits arbitrators' rulings on fee sharing and reimbursement Twitter for the advanced payments if ordered by the merits arbitrators to do so. Meckley Decl., Ex. 3. Petitioners' counsel flatly rejected the proposal and objected to paying any share of the arbitrator fees. *Id.*

**C.    Petitioners' counsel requested signed copies of various individuals' DRA without providing any evidence that counsel has those individuals' consent.**

Separate from the dispute over fee sharing, the parties also addressed a dispute over signed arbitration agreements. Specifically, on January 19, 2023, Ms. Eisner informed the parties that it would not proceed with arbitrations where the demand for arbitration was unaccompanied by an executed arbitration agreement for the claimant. Dkt. 6-12. Petitioners' counsel took the position that Twitter had an obligation to voluntarily assist such claimants by providing Petitioners' counsel with signed copies. Dkt. 6-11. On June 12, 2023, Petitioners' counsel emailed PeopleQuestions@twitter.com with a list of 161 names of individuals that Petitioners' counsel purportedly represented and requested that Twitter provide a copy of their signed DRAs. Meckley Decl. ¶ 7 & Ex. 4. The email provided no evidence to suggest that these individuals had actually authorized Twitter to release their personnel records to Petitioners' counsel. *Id.*, Ex. 4.

In response, Twitter responded on July 21, 2023 that it "require[d] written authorization

1    from each individual employee expressly authorizing Twitter to release such files to third party

2    representatives." Dkt. 26-9. Twitter cited California Labor Code § 1198.5(e), which allows an

3    employer to "take reasonable steps to verify the identity of a current or former employee or his or

4    her authorized representative," which the statute defines as "a person ***authorized in writing by the***

5    ***employee*** to inspect, or receive a copy of, his or her personnel records." Cal. Labor Code

6    § 1198.5(e) (emphasis added). Twitter also noted subsection (p), which states, "An employer is not

7    required to comply with more than 50 requests under this section to inspect and receive a copy of

8    personnel records filed by a representative or representatives of employees in one calendar month."

9    *Id.* § 1198.5(p). Twitter explained that if Petitioners' counsel "provide[d] compliant signed and

10   dated written authorizations, Twitter [would] move as promptly as possible, with due regard to its

11   statutory obligations." Dkt. 26-9. To date, Petitioners' counsel have not provided any written

12   authorizations to support the personnel record requests, nor have Petitioners' counsel otherwise

13   provided evidence to provide assurance that the relevant individuals have knowingly consented to

14   the release of their personnel records. Meckley Decl. ¶ 11.

15   **III.    ARGUMENT**

16        **A.    Petitioners' Motion violates the rule against one-way intervention.**

17        Although they cite no authority for doing so, Petitioners purport to have filed their Petition

18   on behalf of a putative class of "employees who have brought arbitration claims against Twitter

19   seeking to compel Twitter to arbitrate their cases, pursuant to the rules of the arbitration providers

20   that Twitter selected, but for which Twitter has refused to participate in the arbitrations." Am. Pet.

21   ¶ 7. To date, they have not moved for class certification. Yet, they currently are seeking a

22   substantive ruling from the Court on the merits of their Amended Petition. This effort to obtain a

23   merits decision for a putative class before class certification clearly violates the well-settled rule

24   against one-way intervention.

25        One-way intervention occurs when absent members of the putative class seek substantive

26   relief before there has been a ruling on class certification. Such tactics, if permitted, would allow

27   putative class members to opt into "a class action after an adjudication favoring the class had taken

28   place" even though they "would not otherwise be bound by an adjudication in favor of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

defendant." *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995). The classic example occurs when a class representative moves for summary judgment before a class has been certified. If the motion is granted, any member of the putative class can take advantage of the favorable ruling, but no absent class member would be bound by an unfavorable ruling. Such "one-way intervention ha[s] the effect of giving collateral estoppel effect to the judgment of liability in a case where the estoppel was not mutual," in a way that would "be unfair to the defendant." *Id.* (citation omitted); *see also, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-3082, 2014 WL 6483216, at *7 (N.D. Cal. Nov. 18, 2014) ("[A] defendant is then open to 'being pecked to death by ducks. One plaintiff could sue and lose; another could sue and lose; and another and another until one finally prevailed.'" (citation omitted)).

The rule applies equally to Petitioners' Motion, which seeks relief under 9 U.S.C. § 4—the same relief sought in the Amended Petition itself. Yet Petitioners purport to represent a currently uncertified class. Absent class members could take full advantage of a ruling in Petitioners' favor but face no risk of being bound by an unfavorable ruling. Courts routinely apply the rule against one-way intervention to deny dispositive motions by class representatives before a putative class has been certified. *See, e.g.*, *Hamm v. Mercedes-Benz USA, LLC*, No. 16-cv-3370, 2019 WL 4751911, at *9 (N.D. Cal. Sept. 30, 2019); *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015); *Henry v. Cent. Freight Lines, Inc.*, No. 16-cv-280, 2019 WL 2465330, at *4 (E.D. Cal. June 13, 2019). This Court should do likewise here. The rule resolves the Motion without the need for further analysis.[5]

---

[5] Although the issue is not currently before the Court, Rule 23 is inapplicable in proceedings under 9 U.S.C. § 4. That section creates a procedural mechanism to petition or apply for an order compelling arbitration, and the statute explicitly specifies which parts of the Federal Rules of Civil Procedure apply: "[s]ervice of the application must be "in the manner provided by the Federal Rules of Civil Procedure," 9 U.S.C. § 4; any jury trial must be "in the manner provided by the Federal Rules of Civil Procedure," *id.*; and the application overall "shall be made and heard in the manner provided by law for the making and hearing of motions," *id.* § 6. The statute's classification of this proceeding as a motion commenced by a petition (rather than a civil action commenced by a complaint, *see* Fed. R. Civ. P. 3), demonstrates Rule 23's inapplicability. *See CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 243-44 (3d Cir. 2021) (holding that parties may not use Rule 22 interpleader for motions under the FAA). That conclusion also flows from the purpose of Section 4, which "call[s] for an expeditious and summary hearing," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983), not protracted class-certification proceedings.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

**B.      The Court lacks the power to grant relief under 9 U.S.C. § 4 because Petitioners' arbitrations will not occur within this District.**

Apart from the rule against one-way intervention, Petitioner's Motion also fails under the terms of 9 U.S.C. § 4—for several independent reasons.

The first is that Section 4 requires that the "proceedings, under [the arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Courts in this Circuit and across the country have recognized that, by its terms, the statute does not permit an order under Section 4 when the arbitration agreement requires the arbitration to occur in a different judicial district. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995) ("[A] district court lacks the authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration."); *Puri v. Golden Temple of Oregon, LLC*, No. 10-cv-882, 2010 WL 11595757, at *4 (C.D. Cal. June 9, 2010) ("[T]he Court concludes that it cannot compel arbitration in its own district if the parties' agreement provides for arbitration outside the district"); *Simplicity Int'l v. Genlabs Corp.*, No. 09-cv-6146, 2010 WL 11507526, at *10 (C.D. Cal. May 6, 2010) ("Under the plain language of section 4, the law is clear that this Court cannot order an arbitration to take place outside the Central District of California."); *In re Jamster Mktg. Litig.*, No. 05-cv-819, 2008 WL 4858506, at *7 (S.D. Cal. Nov. 10, 2008), ("Because the service contracts at issue provides for arbitration in the state of plaintiffs' residence … , the court concludes that it cannot compel the parties to arbitrate their dispute outside of the Southern District of California."); *Kim v. Colorall Techs., Inc.*, No. 00-cv-1959, 2000 WL 1262667, at *1 n.1 (N.D. Cal. Aug. 18, 2000) ("[A] district court can only compel arbitration in its own district.").[6]

Here, no Petitioner requests—or has any right—to arbitrate in this District. Each demands arbitration someplace other than the Northern District of California. *See* Dkt. 6-5 (Ma: New York;

---

[6] In *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 784 (9th Cir. 2001), the court held that Section 4 does not require that an action **to enjoin** an arbitration be brought in the district where the contract designated the arbitration to occur. That holding has no application here, because it recognized that Section 4 "embraces actions to compel arbitration," as opposed to actions to enjoin an arbitration. *Id.* at 785; *accord Simplicity Int'l*, 2010 WL 11507526, at *11.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8                    RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

Amlani: San Diego; Willis: Sacramento; Olson: Chicago; Crowley: Riverside; Treitler: New York; Solomon: Seattle); Dkt. 6-7 (Kindel: Boston; Rosen: New York). And the DRA specifies that arbitration must take place within 45 miles of the employee's place of employment. DRA § 3.[7] This problem on its own requires denial or dismissal of the Petition. *See, e.g.*, *Lauer*, 49 F.3d at 331 (vacating district court order attempting to control arbitration proceeding in another district and remanding for dismissal of the Section 4 proceeding).

### C. The Court lacks the power to require Twitter to adhere to JAMS and AAA's policies on arbitral fees because they conflict with the DRA.

Arbitration is "strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). Accordingly, "arbitrators wield only the authority they are given." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). When parties want to authorize an arbitrator to settle their disputes, they "may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who resolve their disputes." *Id.* "Whatever they settle on, the task for courts and arbitrators at bottom remains the same: 'to give effect to the intent of the parties.'" *Id.* (citation omitted). "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *see also, e.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("[T]he Act requires the court to enforce the arbitration agreement in accordance with its terms.").

Petitioners note that arbitration can provide a quicker and more efficient alternative to litigation. Mot. 16-17. But the FAA's primary goal is enforcing the parties' arbitration agreement according to its terms, even if that results in some delay. *See, e.g.*, *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward."); *Dean Witter Reynolds, Inc. v. Byrd*, 470

---

[7] Because of the DRA's requirement, Petitioners Amlani, Willis, Olson, and Solomon are contractually obligated to arbitrate in Arizona, Idaho, Wisconsin, and Oregon, respectively. *See* Mot. 13 n.12; Dkt. 26-8.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

1    U.S. 213, 219 (1985) ("The legislative history of the [FAA] establishes that the purpose behind its

2    passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore

3    reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious

4    resolution of claims.").

5         Section 4 of the FAA expressly incorporates this requirement to strictly adhere to the terms

6    of the parties' agreement. When a party petitions to compel arbitration under this provision, the

7    party must seek "an order directing that such arbitration proceed *in the manner provided for in*

8    *[the parties'] agreement*." 9 U.S.C. § 4 (emphasis added). If the other party has failed to comply

9    with the agreement, "the court shall make an order summarily directing the parties to proceed with

10   the arbitration *in accordance with the terms thereof*." *Id.* (emphasis added). Thus, as the Ninth

11   Circuit has observed, "section 4 of the FAA limits the court's discretion; the court must order the

12   parties to proceed to arbitration *only in accordance with the terms of their agreement*." *Lifescan*,

13   363 F.3d at 1012-13 (reversing trial court's Section 4 order, which had directed one party to pay

14   arbitral fees, because that party's nonpayment was justified under the parties' agreement); *see also,*

15   *e.g.*, *Puri*, 2010 WL 11595757, at *4 (refusing to compel arbitration under Section 4 in a manner

16   that would "run afoul of the FAA's mandate that the Court direct the parties to proceed to arbitration

17   'in accordance with the terms of the agreement'" (quoting 9 U.S.C. § 4)). The terms of the DRA

18   foreclose the relief that Petitioners now seek.

19         **1.     The DRA requires Twitter and Petitioners to share arbitration fees**

20              **unless the individual arbitrator orders otherwise.**

21         Each Petitioner agreed to share the arbitration fees if permitted under applicable law. As set

22   forth in its entirety above, the relevant provision of the DRA, titled "**Paying For the Arbitration**,"

23   obligates Twitter to "pay the Arbitrator's and arbitration fees" only in those "cases where required

24   by law." DRA § 6. In contrast, "If under applicable law the Company is not required to pay all of

25   the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in

26   accordance with said applicable law, and any disputes in that regard will be resolved by the

27   Arbitrator." *Id.*

28         Here, there is no dispute that such fee-sharing is permissible for the relevant Petitioners,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

and they do not argue otherwise. Under the FAA, the Supreme Court has adverted to the possibility that an arbitration agreement might operate as an invalid "prospective waiver of a party's right to pursue statutory remedies" if "filing and administrative fees attached to arbitration … are so high as to make access to the forum impracticable." *Italian Colors*, 570 U.S. at 236 (citation omitted); *see also Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 90 (2000). Yet the Court warned that "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the **right to pursue** that remedy." *Italian Colors*, 570 U.S. at 236 (emphasis in original). Courts have widely held "that some showing of individualized prohibitive expense is necessary to invalidate an arbitration agreement." *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002); *see also, e.g.*, *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001) ("[T]he appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, *i.e.*, a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims."). And where a plaintiff fails to make any individualized showing of an inability to pay, courts have refused to strike down fee-splitting agreements. *Stewart*, 201 F. Supp. 2d at 293-94; *Bradford*, 238 F.3d at 558-59; *Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*, No. 22-cv-5212, 2023 WL 2138693, at *6 (S.D.N.Y. Feb. 21, 2023).

Other than California, Nevada, and Oregon,[8] most states—including those relevant here—follow the same basic approach and do not prohibit the sharing of fees. *See, e.g.*, *Clark v. Renaissance W., LLC*, 307 P.3d 77, 80 (Ariz. Ct. App. 2013) (Arizona) *Lambirth v. USAA Cas. Ins. Co.*, No. 20-cv-193, 2021 WL 3610504, at *3 (D. Idaho Aug. 13, 2021) (Idaho); *Bekele v. Lyft, Inc.*, 918 F.3d 181, 188 (1st Cir. 2019) (Massachusetts); *Brady v. Williams Cap. Grp., L.P.*, 928 N.E.2d 383, 387 (N.Y. 2010) (New York); *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 605 (Wash. Ct. App. 2002) (Washington); *Anderson v. Select Portfolio Servicing, Inc.*, No. 18-cv-706,

---

[8] Twitter has never objected to paying the arbitral fees as required by JAMS and AAA for California, Nevada, and Oregon because Twitter is obligated to make those payments under the DRA. *See, e.g.*, Meckley Decl., Ex. 3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

1    2019 WL 1487584, at *4 (W.D. Wis. Apr. 4, 2019) (Wisconsin).

2           By the terms of DRA § 6, then, Petitioners in such jurisdictions would need to put forward

3    meaningful evidence of an inability to pay to avoid their obligation to bear their portion of the

4    arbitration costs. Then the individual arbitrator for their dispute would resolve "any disputes in that

5    regard." DRA § 6. Petitioners' Motion is a direct assault on this provision, which they do not even

6    discuss. Mot. 9-12. The Motion seeks to order Twitter to pay fees regardless of whether Twitter is

7    "required to pay" those fees "under applicable law," directly contrary to the terms of DRA § 6.

8           Petitioners cite three cases, Mot. 10-11, but none is on point. In none of those cases did the

9    employers have a contractual right under their arbitration agreements to insist on an apportionment

10   of the fees. *See Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020) ("The

11   employer here … , faced with having to actually honor its side of the bargain, now blanches at the

12   cost of the filing fees it agreed to pay in the arbitration clause."); *Allemeier v. Zyppah, Inc.*, No. 18-

13   cv-7437, 2018 WL 6038340, at *3 (C.D. Cal. Sept. 21, 2018) ("[T]he AAA terminated the parties'

14   arbitration because Zyppah simply refused to pay its portion of the filing fee."); *Sink v. Aden

15   Enters., Inc.*, 352 F.3d 1197, 1198 (9th Cir. 2003) ("[T]he parties do not dispute that Aden, the

16   employer, was obligated to pay these costs.").

17          Here, in contrast, DRA § 6 gives Twitter an explicit right not to pay the disputed fees—

18   unless the employees make a sufficient showing under applicable law to their arbitrator. Section 4

19   of the FAA does not permit the Court to order Twitter to arbitrate in a manner directly **contrary** to

20   "the manner provided for in [the parties' arbitration] agreement." 9 U.S.C. § 4; *see Lifescan*, 363

21   F.3d at 1013 ("There was … no basis for an order requiring Premier to pay the fees[.]").

22                    **2.     JAMS and AAA's policies on fees do not supersede the DRA.**

23          Petitioners rely heavily on JAMS and AAA's insistence that Twitter pay more than their

24   contractual share of the arbitral fees. Petitioners, ignore, however, that JAMS and AAA did not

25   base their positions on the DRA itself. In fact, JAMS explicitly explained that the requirements of

26   the DRA were irrelevant: it would impose its Minimum Standards on Twitter "separate and apart

27   from" the law in any given jurisdiction and "notwithstanding any contrary provision in the parties'

28   arbitration agreement." Dkt. 6-4. JAMS also acknowledged that claimants' waiver of the Minimum

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

Standards would have the effect of the parties' "shar[ing] JAMS fees according to the underlying arbitration clause." Meckley Decl., Ex. 2. The arbitration providers' position thus rested on their policy decisions to disregard the Parties' agreements. That attempt to override the terms of the parties' arbitration agreement itself violates the FAA and thus cannot support Petitioners' requested relief under 9 U.S.C. § 4.

Petitioners do not argue—nor could they—that the Minimum Standards (or AAA fees) are incorporated into the terms of the DRA. The DRA never refers to the Minimum Standards (or the AAA), much less state that they govern. And the DRA is the contracting parties' "full and complete agreement relating to the formal resolution of [the covered] disputes," DRA § 10, so a court may not supplement it with unwritten terms.

DRA #1 and #2 do state that arbitration will take place under the "then-current JAMS Rules." DRA § 5. But the JAMS Rules themselves make clear that the Minimum Standards are distinct from the Rules, characterizing the Minimum Standards as one of the "JAMS policies" rather than part of the Rules themselves. JAMS Employment Rule 2(a). And, of course, the reference in DRA § 6 to "applicable law" cannot support applying the Minimum Standards because "the JAMS Minimum Standards clearly are not law." *Reed v. Navient Sols., LLC*, No. 17-cv-1218, 2020 WL 13701850, at *4 (N.D. Ohio Mar. 24, 2020).

Nor could those Petitioners who are subject to DRA #3 show that AAA's fee schedule is somehow part of their arbitration agreement. Unlike the other two DRA versions, DRA #3 does not refer to any arbitration provider or adopt any particular rules of arbitration. Instead, it directs the parties to select the Arbitrator by "mutual agreement." DRA #3 § 3. Here, the parties complied with that provision in mutually selecting AAA. But in doing so, they were merely enforcing their existing arbitration in DRA #3, not replacing it with a new agreement that extinguishes DRA § 6 in favor of the AAA's fee schedule. *See, e.g.*, *Bossé v. N.Y. Life Ins. Co.*, 992 F.3d 20, 29 n.11 (1st Cir. 2021) (explaining that a novation requires "evidence that the parties intended to extinguish the obligations under the [original] Agreement when they entered into the … subsequent agreements).

The law is clear, moreover, that a general agreement to arbitrate under the rules of JAMS or AAA does not negate a contrary, explicit contractual term addressing the payment of arbitration

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

fees. As another court in this District recently explained, with reasoning that applies equally here, a specific provision on fees controls over a general reference to arbitration rules:

> While the parties may have intended to utilize the AAA rules, it does not follow that they intended those rules [to] govern over express provisions in the [agreement] to the contrary. Moreover, applying the fee schedule of the AAA Employment Rules "would impermissibly render the more specific provisions in [the arbitration agreement] superfluous." *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1254 (N.D. Cal. 2019). The Court therefore finds that the specific provision requiring the parties to split arbitration fees equally controls over the AAA Employment Rules incorporated by reference. *See id.* (citing *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003) (noting that it is "[a] standard rule of contract interpretation … that when provisions are inconsistent, specific terms control over general ones.")).

*Goobich v. Excelligence Learning Corp.*, No. 19-cv-6771, 2020 WL 5593011, at *3 (N.D. Cal. Sept. 18, 2020); *see also, e.g.*, *Brady*, 928 N.E.2d at 386 ("[T]he terms of the parties' Arbitration Agreement, rather than the AAA rules, control[].."); *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1100 (N.D. Ill. 2015) ("[A]ny default fee provisions in the … JAMS rules are overridden by the express Agreement that the parties signed."). Any other interpretation of the DRA would make the fee-apportioning language in DRA § 6 completely meaningless, in violation of basic contract principles. *See, e.g.*, *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1010 (9th Cir. 2014) ("'[E]very word, phrase or term of a contract must be given effect,' and courts should avoid accepting interpretations that 'render[] part of the writing superfluous.'" (citation omitted).

In another recent dispute in which the AAA improperly tried to override an arbitration agreement through its fee schedule, the Second Circuit aptly observed: "Even if it could be argued that the AAA was justified in insisting on [the employer's] compliance with its Fee Schedule to commence arbitration, [the employer] cannot be faulted for standing on its contractual entitlements." *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023) (vacating district court order that lifted stay of litigation, which had previously been entered under 9 U.S.C. § 3, "to the benefit of the party that refused to comply with the express [fee-splitting] terms of the [parties' agreements]"). The same principle applies here. Twitter is simply standing on the terms of the DRA, which both sides accepted. The FAA entitles Twitter to do so.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

### 3.     By their terms, the JAMS Minimum Standards do not even apply.

Even if DRA #1 and #2 could be read as incorporating the JAMS Minimum Standards, and even if the Minimum Standards could be thought to supersede the fees provision in DRA § 6, JAMS' position would still be entirely unreasonable and unsupported. As JAMS' communications with the parties made clear, JAMS' attempt to impose the Minimum Standards on the parties rests on its own policy decisions. According to JAMS, these policy decisions stand "separate and apart from" the law in any given jurisdiction and governs "notwithstanding any contrary provision in the parties' arbitration agreement." Meckley Decl., Ex. 2. Even if that approach were compatible with the FAA, JAMS' supposed administrative policy still would not support JAMS' actions because that policy, by its terms, does not apply to the DRA.

The Minimum Standards apply *only* when arbitration is required as a condition of employment. The opening paragraph of the Minimum Standards says that they "apply to arbitrations based on pre-dispute agreements that are required as a condition of employment." Dkt. 6-2, at 2. The Minimum Standards reiterate that point a few paragraphs later: "If an arbitration is based on a clause or agreement that is required as a condition of employment, JAMS will accept the assignment only if the proceeding complies with the Minimum Standards." *Id.* There is no other way to read the document. *See Selman v. FCB Worldwide Inc.*, No. B168315, 2004 WL 2729656, at *3 (Cal. Ct. App. Dec. 1, 2004) (unpublished) ("JAMS [Minimum] Standard 6 . . . appl[ies] only to arbitration agreements that are required as a condition of employment.").

Here, however, the DRA was *not* required as a condition of employment, as it expressly stated in bolded text, "**Arbitration is not a mandatory condition of Employee's employment at the Company**." DRA § 8. Rather, employees had 30 days after their receipt of the DRA "**to opt out and not be subject to this Agreement**." Such employees would "not be subject to any adverse employment action as a consequence of that decision and [could] pursue available legal remedies without regard to [the DRA]." *Id.* Numerous Twitter employees made use of this opportunity to opt out of the DRA—and some of those employees are now pursuing litigation in federal court—but Petitioners did not opt out.

This type of opt-out provision is a quintessential example of an arbitration agreement that,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

according to the Ninth Circuit and countless other courts, is ***not*** a condition of employment. *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it."); *Young v. Refined Techs., Inc.*, No. 22-cv-1032, 2022 WL 3012536, at *5 (C.D. Cal. June 17, 2022) (referring to "an opt-out provision" as "[o]ne of the typical indicia that a contract is not a condition of employment"); *Simeon v. Domino's Pizza LLC*, No. 17-cv-5550, 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019) ("[T]he Arbitration Agreement … makes clear that dispute resolution by arbitration is not a mandatory condition of Simeon's employment. The cover letter to the Arbitration Agreement states: "You have 30 calendar days from the date you sign the Arbitration Agreement to opt out of the duty to arbitrate through the procedures described in the Agreement."); *Essex v. Children's Place, Inc.*, No. 15-cv-5621, 2017 WL 6000347, at *5 (D.N.J. Dec. 4, 2017) ("Plaintiffs were not required to participate in TCP's arbitration program as a condition of employment with TCP. … [T]he Arbitration Agreement expressly state[s] that signing the Arbitration Agreement is not a mandatory condition of employment. … To the contrary, the Arbitration Agreement has a clear 'opt out' provision."); *Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09-cv-2864, 2009 WL 2001328, at *4 (S.D.N.Y. July 10, 2009) ("[Plaintiff] was not required to submit to the … mediation/arbitration provisions as a condition of employment, but was provided with the choice of opting-out.").

Because the DRA had an opt-out provision and was not required as a condition of Petitioners' employment, the Minimum Standards cannot apply even if it were consistent with the rest of the DRA. *See Selman*, 2004 WL 2729656, at *3 (Because "the arbitration agreement was not mandatory … JAMS [Minimum] Standard 6 … do[es] not apply."). For this reason, too, there is no legal or factual basis to order Twitter to pay the arbitral fees as Petitioners request.

**D.    The Court lacks the power to require Twitter to produce signed arbitration agreements because Twitter has no such obligation under the DRA, the FAA, or any statute.**

Petitioners' additional request for an order compelling production of signed copies of employees' arbitration agreements is equally unsupported. Petitioners literally cite no legal authority—no case, no statute, no contract provision, nothing—to justify their request. Mot. 14-15.

For the reasons discussed above, 9 U.S.C. § 4, which is the sole statutory basis for their Motion, certainly does not permit such relief, because it permits only orders "in accordance with the terms" of the parties' agreement. *See, e.g.*, *Lifescan*, 363 F.3d at 1012; *Puri*, 2010 WL 11595757, at *4. Nothing in the DRA itself, or the existence of an arbitration agreement more generally, imposed any obligation on Twitter to produce signed copies of the DRA upon demand, much less on the conditions that Petitioners' counsel has demanded. *See, e.g.*, *Folck v. Lennar Corp.*, No. 17-cv-992, 2018 WL 1726617, at *4 (S.D. Cal. Apr. 10, 2018) (rejecting employee's argument that by declining to produce his arbitration agreement on demand, employer "acted inconsistently with a right to compel arbitration"); *Norton v. Lyft, Inc.*, No. 19-cv-2025, 2019 WL 4744691, at *1 (N.D. Cal. Sept. 13, 2019) (rejecting worker's argument that by failing to respond to his emails asking whether he had opted out in a timely manner, company "acted inconsistently with its right to arbitrate").

Twitter's counsel explained to Petitioner's counsel that Twitter's approach to the production of signed arbitration agreements would adhere to the only statutory provision that either side has identified as potentially applicable, California Labor Code § 1198.5. In particular, Twitter said that it "require[d] written authorization from each individual employee expressly authorizing Twitter to release such files to third party representatives." Dkt. 26-9. This is a common position for an employer to take in such circumstances, because California Labor Code § 1198.5(e) expressly authorizes employers to "take reasonable steps to verify the identity of a current or former employee or his or her authorized representative," which the statute defines as "a person authorized in writing by the employee to inspect, or receive a copy of, his or her personnel records."

Without addressing § 1198.5(e) or citing any countervailing authority, Petitioners contend that Twitter has no justification for demanding signed authorizations from counsel. Mot. 15 n.15. The statutory provision serves an important purpose because it protects personnel records from unauthorized disclosure. Indeed, were an employer to produce personnel records **without** the employee's authorization, the employer could subject itself to privacy-based claims by that employee. While Petitioners imply that it would be burdensome for their counsel to obtain written authorizations from their clients, they never explain why. *Id.* Nor do they explain why Twitter

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

should assume from the fact that counsel purport to represent certain individuals that counsel have even discussed the personnel records request with them.[9] Quite notably, other attorneys representing other former Twitter employees have had no issue obtaining their clients' written authorizations to release their records, and Twitter has had no objection to providing signed copies of those individuals' arbitration agreements. Meckley Decl., ¶ 10. In contrast, the only thing Petitioners' counsel have furnished with respect to the request for agreements is a list of individuals' names. *See id.* ¶ 11 & Ex. 4. Twitter has no way of knowing whether those individuals have knowingly authorized that release of their records. *Id.* ¶ 9.

Twitter explained to Petitioners' counsel that if they "provide[d] compliant signed and dated written authorizations, Twitter [would] move as promptly as possible, with due regard to its statutory obligations." Dkt. 26-9. Twitter remains willing to do so.[10]

### E.   Petitioners' recourse for an unavailable arbitral forum is 9 U.S.C. § 5.

Petitioners' final request (Mot. 12-14) is for the Court to compel arbitrations in locations other than the location specified in DRA § 3 (45 miles of the employee's place of employment) because, for some claimants, JAMS does not have available arbitrators in that location. Again, 9 U.S.C. § 4 does not permit the Court to compel arbitration in a way that conflicts with the terms of the parties' agreements. And even if 9 U.S.C. § 4 did permit a rewrite of the agreements, Petitioners never explain why the Court should disregard the location requirement in DRA § 3 rather than the provision selecting JAMS as the arbitration provider in Section 5 of DRA #1 and DRA #2.

Although 9 U.S.C. § 4 does not permit the Court to issue an order compelling arbitration in a manner that contradicts the terms of the parties' agreement, the FAA has a different mechanism to resolve the unavailability of the agreement's designated arbitration provider. Under 9 U.S.C. § 5,

---

[9] Petitioners' counsel maintain a website soliciting clients to bring claims against Twitter, which requires the individual to fill out a brief standard form. *See* Meckley Decl. ¶ 8 & Ex. 5. Twitter has no way of knowing the extent to which Petitioners' counsel have communicated with such individuals beyond receiving a completed online form. But if counsel regularly do communicate substantively with their clients, obtaining written authorization should be rather straightforward.

[10] Petitioners misleadingly suggest that Twitter imposed an arbitrary monthly cap on the number of agreements it would provide. Mot. 15 n.15. In reality, Twitter simply cited California Labor Code § 1198.5(p), which says that "[a]n employer is not required to comply with more than 50 requests under this section to inspect and receive a copy of personnel records filed by a representative or representatives of employees in one calendar month."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

1   a court may appoint a substitute arbitrator, unless the identity of the arbitrator selected in the

2   agreement is integral to the agreement. *See, e.g.*, *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d

3   1217, 1222 (11th Cir. 2000) ("Section 5 of the FAA provides a mechanism for appointment of an

4   arbitrator where 'for any … reason there shall be a lapse in the naming of an arbitrator[.]'" (citation

5   omitted)); *Khan v. Dell Inc.*, 669 F.3d 350, 354 (3d Cir. 2012) ("[T]he unavailability of the

6   [National Arbitration Forum] is addressed in section 5 of the FAA, which provides a mechanism

7   for substituting an arbitrator when the designated arbitrator is unavailable."). Ninth Circuit

8   authority is fully in accord with these Third and Eleventh Circuit decisions. *See, e.g.*, *Reddam v.*

9   *KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006) (following the Eleventh Circuit's decision in

10  *Brown*), *abrogated in part on other grounds by Powerex Corp. v. Reliant Energy Servs., Inc.*, 551

11  U.S. 224 (2007); *Ferrini v. Cambece*, No. 12-cv-1954, 2013 WL 2421717, at *3 (E.D. Cal. June 3,

12  2013); *Selby v. Deutsche Bank Tr. Co. Americas*, No. 12-cv-1562, 2013 WL 1315841, at *12 (S.D.

13  Cal. Mar. 28, 2013); *Martin v. Certain Underwriters of Lloyd's, London*, No. 10-cv-1298, 2011

14  WL 13227729, at *8 (C.D. Cal. Sept. 2, 2011).

15         Petitioners cite a handful of inapposite cases addressing severance of ***unlawful*** arbitration

16  provisions, but Petitioners never argue that the selection of JAMS is integral to the DRA. Mot. 13.

17  Nor can they. "There is no evidence that naming of [JAMS] was so central to the arbitration

18  agreement that the unavailability of that arbitrator brought the agreement to an end." *Reddam*, 457

19  F.3d at 1061. Nor have the parties "unambiguously expressed their intent not to arbitrate their

20  disputes in the event that the designated arbitral forum is unavailable." *Khan*, 669 F.3d at 354. DRA

21  #1 and #2 merely state, "Employee and the Company agree to bring any claim in arbitration before

22  [JAMS]." DRA #1 § 5; DRA #2 § 5. That language is nowhere near enough to suggest that JAMS

23  is the exclusive arbitration provider acceptable to the contracting parties. *See Khan*, 669 F.3d at

24  355 (holding that arbitration provider was not integral even though the agreement "state[d] that all

25  disputes "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING

26  ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM"). And, of

27  course, DRA #3 does not specify JAMS, AAA, or any arbitration provider.

28         Here, of course, JAMS is unavailable not just for geographic reasons but also because it

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

1   insists on applying the Minimum Standards despite contrary language from the DRA. AAA

2   likewise is insisting on allocating fees almost entirely to Twitter, in a way that contradicts the

3   arbitration agreement. The appropriate solution, and one to which Twitter does not object, is the

4   one proposed by Section 5 and applicable case law: the parties should proceed before a substitute

5   arbitrator who will preserve the remaining terms of the DRA. That would enable the parties'

6   disputes to move forward, but in a way that is consistent with the DRA.

7           **F.      Elon Musk's August 5, 2023 tweet is irrelevant.**

8           Petitioners cite an August 5, 2023 tweet by Elon Musk and contend that it somehow requires

9   Twitter to "pay the fees for Petitioner Treitler's arbitration." Mot. 15. This argument is completely

10  baseless—and Petitioners cite no legal support for it. The tweet, on its face, was not directed

11  specifically to Treitler, or any Twitter employees. Dkt. 6-13. The tweet also postdated Treitler's

12  termination by nearly seven months. *See* Dkt. 26-6, ¶ 2. More to the point, it is not a contract, let

13  alone a contract between Twitter and Treitler, much less an arbitration agreement, and so 9 U.S.C.

14  § 4 does not provide a mechanism to enforce it. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged

15  failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may

16  petition … for an order directing that such arbitration proceed in the manner provided for in such

17  agreement.").

18          **G.      Petitioners' cursory request for a preliminary injunction should be denied.**

19          In two footnotes, Petitioners ask this Court to issue a preliminary injunction "allowing the

20  arbitrations to proceed." Mot. 2 n.2, 17 n.16. A preliminary injunction is "an extraordinary remedy

21  that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*

22  *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Petitioners, however, have not meaningfully

23  developed their fleeting request for the extraordinary relief of a preliminary injunction, and the

24  Court should treat the issue as waived. *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th

25  Cir. 2014) ("Arguments raised only in footnotes … are generally deemed waived."); *City of*

26  *Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) (deeming an issue waived where

27  the party "fail[ed] to address the issue in its opening brief except in a footnote").

28          In any event, Petitioners have failed to show any likelihood of success because, as discussed

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

1  above, all their requested relief conflicts with the express terms of the DRA. *Disney Enters., Inc. v.*

2  *VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("Likelihood of success on the merits 'is the most

3  important' *Winter* factor; if a movant fails to meet this 'threshold inquiry,' the court need not

4  consider the other factors[.]" (citations omitted)). In addition, Petitioners cannot obtain injunctive

5  relief from this Court because of the same geographic problem that forecloses relief under 9 U.S.C.

6  § 4: the Court lacks authority either to compel arbitrations that must take place in other judicial

7  districts or to accomplish the same result through an injunction. *See Lauer*, 49 F.3d at 328 ("Merrill

8  Lynch cannot rely on semantics by framing the request as one for injunctive relief to evade the

9  general commands of § 4. Allowing an 'injunction' to achieve the same effect as a properly filed

10  motion to compel … would frustrate § 4's clearly stated commands.").

11  Petitioners also fail to make any meaningful showing for the other requirements for a

12  preliminary injunction. They rely on *Adams v. Postmates, Inc.*, No. 19-cv-3042, 2020 WL 1066980

13  (N.D. Cal. Mar. 5, 2020), but it does not support them. That case determined—contrary to

14  Petitioners' theory, Mot. 17 n.16—that litigation expense does ***not*** constitute irreparable injury.

15  2020 WL 1066980, at *5. And it is off point: the court denied the company's motion for a stay

16  pending appeal because the appeal was "based on its untenable assertion that Petitioners [were]

17  attempting to arbitrate on a classwide basis." *Id.* at *6. Twitter, in contrast, is not trying to

18  characterize Petitioners' arbitrations as a class arbitration; it is merely trying to enforce the DRA

19  according to its terms. Petitioners failed to carry their burden in demonstrating any entitlement to

20  a preliminary injunction.

21  **IV.   CONCLUSION**

22  For all these reasons, Twitter requests that this Court deny Petitioners' Motion to Compel

23  Arbitration and for Preliminary Injunction (Dkt. 26) and Amended Class Petition to Compel

24  Arbitration (Dkt. 6).

25  / / /

26  / / /

27  / / /

28  / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301

1  Dated: February 9, 2024                    Respectfully submitted,

2                                             MORGAN, LEWIS & BOCKIUS LLP

3                                             By  /s/ Eric Meckley
4                                                 Eric Meckley
                                                  Brian D. Berry
5                                             Attorneys for Respondents

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

RESPONDENTS' OPPOSITION TO
MOTION TO COMPEL ARBITRATION
CASE NO. 3:23-cv-3301