SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice* forthcoming)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiff Fabien Ho Ching Ma, Laila Amlani,*
*Jonathan Willis, Melissa Olson, Sasha Solomon,*
*Ryan Crowley, Grae Kindel, Sarah Rosen, and*
*Adam Treitler, on behalf of themselves*
*and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL, SARAH ROSEN, and ADAM TREITLER, on behalf of themselves and all others similarly situated,<br><br>    Petitioner,<br><br>  v.<br><br>TWITTER, INC., AND X CORP.,<br><br>    Respondents. | Case No. 4:23-cv-3301<br><br>**PETITIONERS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION**<br><br><u>Hearing:</u><br>Date: March 14, 2024<br>Time: 2:00 PM<br>Place: Courtroom 6, 2nd Floor<br>Judge: Judge Jon S. Tigar |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ....................................................................................................... 3

    A.    Twitter Is Required to Pay the Arbitration Fees ...................................... 3

        1.    Twitter improperly asks the Court to second guess JAMS
            and AAA. ....................................................................................... 3

        2.    Twitter is required to pay arbitration fees under the
            agreements. ................................................................................... 5

    B.    This Court Should Order Twitter to Cooperate With and
        Participate in the Arbitrations Brought by All of Its Employees
        Who Are Bound by an Arbitration Agreement, Including
        Producing Copies of those Agreements, Should That Be Necessary
        for the Arbitrations to Proceed ................................................................. 9

    C.    Twitter's Procedural Arguments Lack Merit ......................................... 10

        1.    This Court May Compel Arbitration Here Regardless of the
            Venue Provisions of the Arbitration Agreements ..................... 10

        2.    For Employees Who Worked in Locations Where JAMS
            Does Not Have Arbitrators, The Court May Either Sever
            the Unenforceable Term of the Arbitration Agreement
            Regarding the Location of the Arbitration or Alternatively
            Appoint an Arbitrator Within This Judicial District ................. 13

        3.    The Discretionary Rule Against One-Way Intervention is
            Inapplicable ................................................................................ 13

III.   CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020) .......................................................... 3

*Ackerberg v. Citicorp USA, Inc.*,
  898 F. Supp. 2d 1172 (N.D. Cal. 2012) ......................................................... 14

*Ambler v. BT Americas Inc.*,
  964 F. Supp. 2d 1169 (N.D. Cal. 2013) ......................................................... 10

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
  2012 WL 3757486 (N.D. Cal. July 5, 2012).................................................... 12

*Brown v. Peregrine Enterprises, Inc.*,
  2023 WL 8800728 (2d Cir. Dec. 20, 2023) .................................................. 8, 9

*Cerletti v. Ecolab, Inc.*,
  2018 WL 11471626 (N.D. Cal. Feb. 27, 2018) ............................................... 10

*Continental Grain Co. v. Dant & Russell*,
  118 F.2d 967 (9th Cir. 1941) ......................................................................... 11

*Cornet v. Twitter, Inc.*,
  2023 WL 187498 (N.D. Cal. Jan. 13, 2023) ..................................................... 2

*De la Torre v. CashCall, Inc.*,
  2016 WL 6892693 (N.D. Cal. Nov. 23, 2016) ................................................ 14

*Diva Limousine, Ltd. v. Uber Technologies, Inc.*,
  392 F. Supp. 3d 1074 (N.D. Cal. 2019) ......................................................... 15

*Flora v. Prisma Labs, Inc.*,
  2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) .................................................. 13

*Hasbrouck v. Texaco, Inc.*,
  663 F.2d 930 (9th Cir. 1981) ......................................................................... 12

*HayDay Farms, Inc. v. FeeDx Holdings, Inc.*,
  55 F.4th 1232 (9th Cir. 2022) ............................................................. 1, 3, 4, 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)....................................................................................... 4

*In re Jamster Marketing Litigation*,
  2009 WL 250089 (S.D. Cal. Feb. 2, 2009) ..................................................... 12

*Kim v. Colorall Technologies, Inc.*,
  2000 WL 1262667 (N.D. Cal. Aug. 18, 2000) ................................................................. 12

*Lotsoff v. Wells Fargo Bank, N.A.*,
  2019 WL 4747667 (S.D. Cal. Sep. 30, 2019) ................................................................. 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*,
  49 F.3d 323 (7th Cir. 1995) ................................................................................ 11, 12

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) ........................................................................................... 14

*Needleman v. Golden 1 Credit Union*,
  474 F. Supp. 3d 1097 (N.D. Cal. 2020) ........................................................................ 4

*Oppenheimer & Co. v. Neidhardt*,
  56 F.3d 352 (2d. Cir. 1995) .................................................................................. 10

*Oracle America, Inc. v. Myriad Group A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ................................................................................. 6

*Pearson v. P.F. Chang's China Bistro, Inc.*,
  2015 WL 12910914 (S.D. Cal. Feb. 23, 2015) ................................................................ 14

*Pope v. Sonatype, Inc.*,
  2015 WL 2174033 (N.D. Cal. May 8, 2015) ..................................................................... 6

*Puri v. Golden Temple of Oregon, LLC*,
  2010 WL 11595757 (C.D. Cal. June 9, 2010) .................................................................. 11

*Reed v. Navient Sols.*,
  2020 WL 13701850 (N.D. Ohio March 24, 2020) ................................................................. 6

*Revitch v. DircTV, LLC*,
  2018 WL 4030550 (N.D. Cal. Aug. 23, 2018) ................................................................... 8

*Richards v. Jefferson County*,
  517 U.S. 793 (1996) ........................................................................................... 3

*Schafer v. Allied Interstate LLC*,
  2020 WL 4457922 (W.D. Mich. Aug. 2, 2020) ............................................................... 14, 15

*Schwarzschild v. Tse*,
  69 F.3d 293 (9th Cir. 1995) .................................................................................. 14

*Seaman v. Private Placement Capital Notes II, LLC*,
  2017 WL 1166336 (S.D. Cal. March 29, 2017) ................................................................. 12

*Shearson Lehman Bros. v. Brady*,
    783 F. Supp. 1490 (D. Mass. 1991) ................................................................ 12

*Simplicity International v. Genlabs Corporation*,
    2010 WL 11507526 (C.D. Cal. May 6, 2010) ................................................ 12

*Textile Unlimited, Inc. v. A..BMH & Co.*,
    240 F.3d 781 (9th Cir. 2001) .............................................................. 11, 12, 13

*Todd Shipyards Corp. v. Cunard Line, Ltd.*,
    943 F.2d 1056 (9th Cir. 1991) ............................................................................ 1

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009) ............................................................................................. 14

*Wit v. United Behavioral Health*,
    2023 WL 8717488 (N.D. Cal. Dec. 18, 2023) .............................................. 14

*Zenelaj v. Handybook Inc.*,
    82 F. Supp. 3d 968 (N.D. Cal. 2015) .............................................................. 4

**Statutes**

Federal Arbitration Act ("FAA"),
    9 U.S.C. § 1 *et. seq.* ............................................................................... passim

**Other Authorities**

*AAA Employment Arbitration Rules and Mediation Procedures* (2016),
    https://www.adr.org/sites/default/files/Employment%20Arbitration%20Ru
    les%20and%20Mediation%20Procedures%20-%20January%201%202016
    .pdf ...................................................................................................................... 5

AAA's Employment Arbitration Rules,
    *available at*,
    https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf ........... 7

*JAMS Employment Arbitration Rules & Procedures* (2021),
    https://www.jamsadr.com/rules-employment-arbitration/english#Rule-1 ........ 5, 6

JAMS Neutral Directory,
    available at
    https://www.jamsadr.com/neutrals/search?filters=custom_ss_tag_neutral_
    all_location%3Asan_francisco_california ..................................................... 13

**Rules**

Federal Rule of Civil Procedure 23 .......................................................... 14, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

In its opposition, Twitter continues its attempts to game the legal system. Having chosen to compel nearly 2,000 of its former employees to pursue their claims individually in arbitration, it is now trying to avoid lying in the bed it made. Twitter should not be permitted to avoid the fate it has brought on itself and should instead be compelled to proceed to arbitration and follow the rulings of the arbitration providers who it decided to have oversee these disputes.

Here, the parties consented to the jurisdiction of JAMS and AAA to resolve these disputes. JAMS and AAA both determined that Twitter was responsible for paying the full arbitration fees (other than a small initial fee). Twitter cannot now ask this Court to second-guess those decisions. That is not a decision for a court to make. It is blackletter law that decisions made in arbitration are binding, and the standard for asking a court to set aside a decision in arbitration is extremely stringent. *See Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1060 (9th Cir. 1991) (quotations and citations omitted) ("An arbitrator's decision must be upheld unless it is 'completely irrational,' or it constitutes a 'manifest disregard of law.'"). Indeed, the Ninth Circuit has made clear that a court is not to second guess decisions made in arbitration, even if the court would have made a different decision. *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1236 (9th Cir. 2022).

Moreover, contrary to Twitter's assertions, nothing in Twitter's arbitration agreement mandates that arbitration fees be split between the parties. Rather, the agreement plainly provides for Twitter to pay the costs of the arbitration proceedings, in line with what both JAMS and the AAA have already ruled.

With respect to the other issues Petitioners have raised, Twitter has not contested that Petitioners who do not have copies of their signed arbitration agreements have nevertheless agreed to arbitrate their disputes. Accordingly, this Court should compel Twitter to honor the

terms of its agreements and proceed to arbitrate these disputes (and produce these agreements if needed for the disputes to go forward in arbitration). Twitter's contrary arguments — as to both this Court's power to compel arbitration in these matters and Twitter's obligations under these agreements — are wholly without merit.

In a nutshell, Twitter seeks to have this Court bless its efforts to create an illusory, private justice system wherein it can violate laws with complete impunity by continuously bobbing and weaving whenever aggrieved employees get close to having their day in court (or arbitration). When employees filed a class action against Twitter in federal court for violations of state and federal laws, Twitter successfully moved to compel employees with an arbitration agreement to arbitrate their claims specifically on an individual basis. *See, e.g.*, *Cornet v. Twitter, Inc.*, 2023 WL 187498 at *1–3 (N.D. Cal. Jan. 13, 2023). When employees began to have scheduling conferences for their arbitration proceedings, Twitter suddenly announced that it would stop paying the costs necessary for these proceedings to continue in most of the arbitration cases, and Twitter also suddenly refused to continue choosing alternative locations for proceedings in which the designated arbitration service provider had no available arbitrators, again save for select locales. *Id.* at ¶¶ 15–33. Twitter also balked at proceeding with arbitrations for any employee who could not provide a signed copy of their arbitration agreement and refused to produce copies of these agreements in order to allow the arbitrations to proceed. Dkt. 6–11.

Simply put, when Twitter is sued in court, it insists on arbitrating; when arbitration demands are filed against Twitter, it insists on asking a court to undo what the arbitration providers decided. Twitter is using the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et. seq.* and its arbitration agreement as both a sword and a shield, trying to wear down litigants, drive up their costs, and prolong these suits as long as they can in the hopes that they will simply

surrender their claims or run out of available avenues for seeking redress. But this strategy "runs up against the deep-rooted historic tradition that everyone should have his own day in court," and permitting these tactics would not only provide a roadmap for future bad actors, but also do violence to our legal system. *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996) (internal quotation marks omitted). As Judge Alsup recognized in *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020), "This hypocrisy [should] not be blessed."

## II.   ARGUMENT

### A.   Twitter Is Required to Pay the Arbitration Fees

Twitter's attempt to have this Court second guess the determinations made by JAMS and AAA that Twitter would have to pay the arbitration fees runs contrary to established law. Parties cannot simply appeal to the courts when they disagree with an arbitrator's decision. *HayDay Farms*, 55 F.4th at 1236. In fact, courts must ordinarily defer to an arbitrator's conclusion, even where they are erroneous. *Id.* Here, both JAMS and AAA concluded (after hearing argument from the parties) that, under their respective rules, Twitter was required to pay the full arbitration fees. The Court should defer to these decisions.

Moreover, regardless of the deference owed to JAMS's and AAA's rulings, Twitter is obligated to pay the arbitration fees under the terms of the arbitration agreement. To that end, the agreement does ***not*** require the parties to split the arbitration fees. There is also no dispute that the parties agreed as part of their arbitration agreement to arbitrate pursuant to JAMS's and AAA's respective rules, which provide that Twitter must pay the full arbitration fees. Thus, Twitter should be compelled to arbitration and to pay all requisite fees, as previously ordered.

### 1.   Twitter improperly asks the Court to second guess JAMS and AAA.

In its opposition, Twitter invites the Court to substitute its own interpretation of the fee splitting dispute for that of JAMS and AAA. (Defs. Mem. at 9-16.) However, there is no

1   legitimate basis for the Court to do so.

2        To that end, if the parties' contract delegates threshold issues to an arbitrator, courts must

3   defer those issues to the arbitrator. *Needleman v. Golden 1 Credit Union*, 474 F. Supp. 3d 1097,

4   1106 (N.D. Cal. 2020) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524,

5   531 (2019)). Furthermore, reference to the specific rules of an arbitration provider, such as

6   JAMS or AAA, constitutes clear and unmistakable evidence of the parties' intent for the

7   arbitrator to decide threshold issues. *See Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 971-75

8   (N.D. Cal. 2015) (finding the parties delegated the issue of arbitrability to an arbitrator by

9   incorporating AAA's rules into their agreement). The Ninth Circuit has also made it clear that

10  courts must defer to an arbitrator's conclusions, even if erroneous. *See e.g.*, *HayDay Farms*, 55

11  F.4th at 1236 (recognizing courts owe stringent deference to an arbitrator's ruling, even if the

12  court has serious concerns about the correctness of the conclusion).

13       Here, for most employees the applicable arbitration agreement explicitly incorporated

14  JAMS's Rules. (Dkt. 6-1.) For those employees whose agreement did not include a specific

15  arbitration provider, the parties agreed to submit their disputes to AAA under its Employment

16  Arbitration Rules. (Dkt. 6-8.) Thus, by incorporating JAMS's and AAA's rules into their

17  agreements, Twitter (and the employees) clearly and unmistakably intended for JAMS and AAA

18  to resolve any threshold issues, including questions about the proper allocation of arbitration

19  fees. Given the delegation of authority to decide such matters, both arbitration providers

20  reviewed the applicable agreements, considered the parties' arguments, and concluded that

21  Twitter was responsible for paying the full allocation of arbitration fees (other than a small initial

22  fee) because it agreed to their jurisdiction and rules.[1] Whether the Court agrees or not, JAMS's

---

[1]   JAMS' General Counsel, who also chairs JAMS' "National Arbitration Committee" made the determination that JAMS Minimum Standards applied. *See* Dkt. 6-3. "The authority

and AAA's conclusions are based upon plausible interpretations of the parties' agreements and their own arbitration rules, and therefore their rulings are entitled to stringent deference. *See HayDay Farms*, 55 F.4th at 1241.[2]

### 2. Twitter is required to pay arbitration fees under the agreements.

Regardless of JAMS's and AAA's conclusions, Twitter's argument that the employees should have to split the arbitration fees (for these cases that they have been compelled to arbitrate) is also wrong based on the language of Twitter's arbitration agreement. Specifically, as Twitter acknowledges, the version of the agreement which applies to the vast majority of employees both provide for "arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules." Defs. Opp. at 3. Then-current JAMS' Rules provided: "The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies [] including, without

---

and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees." *JAMS Employment Arbitration Rules & Procedures*, *supra* note 7, at R. 1(c).

AAA also determined that Twitter was required to pay for these arbitrations but noted that Twitter could bring the issue to the merits arbitrators' attentions after first fronting the costs of such arbitrators (which Twitter refused to do – except for later, when it suggested it may front the fees, so long as the employees agreed to waive any rights they may have to challenge any determinations against them, which the employees did not agree to do). Dkt. 26-3 ¶ 29–32. "When the arbitration is filed, the AAA makes an initial administrative determination [on which fee schedule to apply]….If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination." *AAA Employment Arbitration Rules and Mediation Procedures* (2016), 7–8, https://www.adr.org/sites/default/files/Employment%20Arbitration%20Rules%20and%20Mediation%20Procedures%20-%20January%201%202016.pdf.

[2]     Twitter also argues that JAMS Minimum Standards do not apply because the arbitration agreement is not a condition of employment. Defs Opp. at 15-16. Again, JAMS's interpretation of its own rules is entitled to deference. Moreover, contrary to Twitter's argument (and without conceding that the agreement was not a condition of employment), nothing within the Minimum Standards limits their application only to arbitration agreements that are a condition of employment. *See generally* Dkt. 6-2.

limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness."[3] The Minimum Standards, in turn, provided: "The only fee that an employee may be required to pay is the initial JAMS Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fees and all professional fees for the arbitrator's services." Dkt. 6-2 at 4.

Under these plain terms, Twitter *is* required to pay for these arbitrations. Its contention that "the JAMS Minimum Standards clearly are not law," Defs. Opp. at 13 (quoting *Reed v. Navient Sols.*, 2020 WL 13701850, at \*4 (N.D. Ohio March 24, 2020)), misses the mark, as the parties' agreement expressly incorporated these rules. *See, e.g.*, *Pope v. Sonatype, Inc.*, 2015 WL 2174033, at \*4 (N.D. Cal. May 8, 2015) (holding agreement to arbitrate according to JAMS Rules includes Minimum Standards and "the most logical interpretation of the Arbitration Agreement is that the JAMS provisions were intended to apply if a provision in the Arbitration Agreement conflicted with a JAMS requirement"); *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013) (holding incorporation of AAA Rules was "clear and unmistakable evidence" parties agreed to provisions, notwithstanding other, less-specific but possibly contradictory, provision).

Similarly, for those employees who signed the version of Twitter's arbitration agreement which did not specify an arbitration provider, consistent with the terms of the agreement, the parties agreed to submit these disputes to AAA. Dkt. 6-8. At the outset of each matter, Twitter signed AAA's Agreement authorizing AAA to administer the case under AAA's Employment Arbitration Rules. *Id.* AAA's Employment Arbitration Rules incorporate AAA's Fee Schedule. (AAA's Employment Arbitration Rules at p. 26, *available at*,

---

[3]    *JAMS Employment Arbitration Rules & Procedures* (2021), R. 2(a), https://www.jamsadr.com/rules-employment-arbitration/english#Rule-1.

https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf). Thus, by signing AAA's Agreement, Twitter consented to AAA's Employment/Workplace Mass Arbitration Administrative Fee Schedule ("AAA Fee Schedule"). *See id.* Therefore, the parties also agreed to AAA's Fee Schedule as part of their agreement to arbitrate.

Notwithstanding, Twitter argues that JAMS's Minimum Standards and AAA's Fee Schedule conflict with Section 6 of the arbitration agreement. Contrary to Twitter's assertion, nothing within its agreement requires the arbitration fees to be split between the parties. Each version of the Agreement states:

> [I]n all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

Defs. Opp. at 3 (quoting Agreement § 6). Nowhere does this language say that the employees are required to split fees with Twitter. Rather, the agreement simply provides that arbitration fees will be apportioned in accordance with applicable law. However, nothing within the FAA and/or the various state laws at issue requires that parties to an arbitration agreement split arbitration fees. Nor does the FAA and/or state law prohibit application of JAMS's Minimum Standards and/or AAA's Fee Schedule. As such, it is entirely consistent with Twitter's arbitration agreement for JAMS's Minimum Standards and AAA's Fee Schedule to apply. Simply stated, because the agreement defers to what is allowed by applicable law, and applicable law does not mandate a certain outcome (other than that the law requires that these threshold decisions be made in arbitration, not by a court), JAMS's Minimum Standards or AAA's Fee Schedule provide for how the fees should be paid.[4]

---

[4] The agreement says that if the law requires Twitter to pay the fees, it will pay the fees. Thus, presumably, Twitter has agreed to pay the arbitration fees for employees who have brought

Nevertheless, Twitter argues that because federal law generally **_permits_** parties to contract for fee splitting, the Court must do so here. In doing so, Twitter relies on a plethora of federal cases for the proposition that employees must make a showing of prohibitive expense in order to invalidate fee-splitting agreements as unconscionable. However, no such showing is required here, as the language of Twitter's agreement does not require fee-splitting. Thus, each of the cases Twitter relies upon is easily distinguishable. In each of those cases, the agreement explicitly required fee splitting. No such agreement exists here. Again, the agreement simply provides that fees will be apportioned as allowed by applicable law. It does not mandate fee splitting, as Twitter argues. If Twitter desired fee splitting in jurisdictions outside of California, Nevada, and Oregon, it should have clearly stated so in its agreement.[5]

Twitter also relies on _Brown v. Peregrine Enterprises, Inc._, 2023 WL 8800728, at *2 (2d Cir. Dec. 20, 2023), for the proposition that an arbitration agreement's language trumps any JAMS and/or AAA rules to the contrary. _Brown_, a summary order, is likewise easily distinguishable. In _Brown_, the court held that the terms of an arbitration agreement trumped the AAA fee schedule where the agreement (1) explicitly stated that "the parties to arbitration shall equally share the costs and expenses charged by the AAA or the arbitrator during the pendency

---

claims against it in California, Nevada, and Oregon. The agreement then says that, if the law does not require Twitter to pay the fees, the fees shall be apportioned in accordance with the law. But that line does **_not_** say that the employees have to pay a portion of the fees. Indeed, many employer arbitration agreements do include language expressly requiring fee splitting, and there has been much litigation surrounding the enforceability and validity of such language. However, this language does not require fee splitting. Saying that the fees shall be apportioned in accordance with the law does not mandate that employees are to pay part of the fees.

[5]     To the extent the Court finds the language of the agreement to be ambiguous regarding fee splitting, it must be construed against Twitter as the drafter of the agreement. _Revitch v. DircTV, LLC_, 2018 WL 4030550, at *16 (N.D. Cal. Aug. 23, 2018) (recognizing that the common law rule construing ambiguous contact terms against the draft applies with equal force to arbitration agreements). But more importantly, the Court should defer to the arbitration providers' determination of this issue.

of the arbitration prior to a determination of which is the prevailing party"; and (2) stated that "the arbitration terms from the agreements would trump any of the AAA's own rules." *Id.* In stark contrast, Twitter's agreement says nothing about prevailing over the JAMS's and/or AAA's rules. (*See* Dkt. 6-1.) Moreover, as explained above, Twitter's agreement does not state that the fees shall be split. It states only that "If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the arbitrator." (Dkt. 6-1 at § 6.) Thus, *Brown* does nothing to advance Twitter's argument.

In short, there is simply no basis for Twitter's contention that employees are required to split the arbitration fees. As such, the Court should grant Petitioners' motion and order Twitter to arbitrate these claims in accordance with the rules and decisions of JAMS and AAA that Twitter must pay the arbitration fees for these cases.

**B.      This Court Should Order Twitter to Cooperate With and Participate in the Arbitrations Brought by All of Its Employees Who Are Bound by an Arbitration Agreement, Including Producing Copies of those Agreements, Should That Be Necessary for the Arbitrations to Proceed**

Twitter also argues that it is not obligated to produce signed copies of arbitration agreements for its employees who do not have a copy of their agreement. Having compelled all employees who brought cases in court against it, but who were bound by arbitration agreements, to arbitrate their claims, Twitter should not be allowed to avoid arbitration for those employees who simply do not have a copy of their arbitration agreement.[6] Indeed, the FAA requires that this Court compel Twitter to arbitrate these disputes, even if the employees do not have a copy of

---

[6]      If Twitter continues to play the game of refusing to produce the agreements (except on a very slow timetable), the employees could all individually bring their claims in court, only to be compelled one-by-one to arbitration. Such an exercise would be a burden on the Court and constitute game-playing that the Court should not condone.

their agreement.[7] Under the FAA:

> A party seeking to compel arbitration must prove by a preponderance of the evidence the existence of an arbitration agreement, and a party opposing the petition bears the burden of proving by a preponderance of evidence any fact necessary to its defense. Where the parties agreed to arbitrate, courts apply a presumption of arbitrability as to particular grievances, "and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable."

*Cerletti v. Ecolab, Inc.*, 2018 WL 11471626, at *3 (N.D. Cal. Feb. 27, 2018) (citations omitted). Here, Petitioners have made at least a minimal showing that these employees have agreed to arbitrate their disputes. *See, e.g.*, Dkt. 7-4 ¶ 2.[8] In contrast, Twitter has never disputed that Petitioners are bound by arbitration agreements. Thus, this Court should compel Twitter to arbitrate these employees' disputes. *See Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352, 358 (2d. Cir. 1995) (finding the he party opposing arbitration may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried regarding the entitlement to arbitration).

## C.   Twitter's Procedural Arguments Lack Merit

Recognizing the flaws in its substantive arguments, Twitter also argues against Petitioners' motion for alleged procedural reasons. These arguments likewise fail.

### 1.   This Court May Compel Arbitration Here Regardless of the Venue Provisions of the Arbitration Agreements

Twitter argues that the FAA does not permit an order compelling arbitration under Section 4 when the arbitration agreement requires the arbitration to occur in a different judicial

---

[7]   JAMS indicated that it would proceed with these arbitrations if it was furnished with signed copies of the arbitration agreement *or* "a court order identifying JAMS and/or the JAMS Rules as applicable to the Claimant[s]." Dkt. 6-12 at 2.

[8]   "While the FAA authorizes the court to enforce only written agreements to arbitrate (9 U.S.C. § 3), it does not require the written agreements to be signed." *See, e.g.*, *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013).

district (Defs. Opp. at 8). This argument also lacks merit. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration **may petition any United States district court which, save for such agreement, would have jurisdiction under title 28**, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement….The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4 (emphasis added). In other words, a petition to compel arbitration is properly brought in *any* federal district court that otherwise has jurisdiction over the underlying claims, notwithstanding any venue provisions in the arbitration agreements themselves.

Indeed, the Ninth Circuit has been clear on this point:

> First, on its face, § 4 provides that venue is proper for an action to compel arbitration in "any United States district court which, save for such agreement, would have jurisdiction under Title 28." That clear expression should end the argument. **[B]y its terms, § 4 only confines the *arbitration* to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur.** *See Continental Grain Co. v. Dant & Russell,* 118 F.2d 967, 969 (9th Cir. 1941).

*Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001) (emphasis added).

In contrast, Twitter curiously cites the Seventh Circuit case of *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995), for its proposition that "Courts in this Circuit and across the country have recognized that, by its terms, the statute does not permit an order under Section 4 when the arbitration agreement requires the arbitration to occur in a different judicial district." Def. Opp. at 8. In doing so, it contends that the controlling Ninth Circuit decision in *Textile Unlimited* "has no application here. *Id.* at 8, n.6.[9] But, as a litany of

---

[9]    Twitter also cites a quartet of district court cases, but all are inapposite. In *Puri v. Golden Temple of Oregon, LLC*, 2010 WL 11595757, at *4 (C.D. Cal. June 9, 2010), "the parties

courts in the Ninth Circuit have explained, Twitter's argument misreads the plain text of both § 4 and *Textile Unlimited*. As this Court recognized in *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2012 WL 3757486, at *5–6 (N.D. Cal. July 5, 2012), under binding Ninth Circuit authority, the presence of a forum selection clause in the parties' arbitration agreement is irrelevant. Section 4 confines the arbitration to the district in which the motion to compel was filed, regardless of whether the arbitration agreement is silent on venue, or specifies venue, and a party is not required to file their motion to compel in the place where the contract specified arbitration should take place. *Id. See also, e.g.*, *Seaman v. Private Placement Capital Notes II, LLC*, 2017 WL 1166336, at *5–6 (S.D. Cal. March 29, 2017).

Thus, this Court must follow the binding Ninth Circuit's decision in *Textile Unlimited* here and, as such, Twitter's arguments must be rejected. *See Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981) (citations omitted).[10]

---

agree[d] that if Plaintiff's claims are arbitrable, the arbitration should proceed in Oregon, and that the Court should not compel arbitration within this district," and so the court granted the motion to compel in part and dismissed in part without prejudice. In *Simplicity International v. Genlabs Corporation*, 2010 WL 11507526, at *9 (C.D. Cal. May 6, 2010), the parties "agree[d] that if arbitration is ordered, it should take place in St. Louis" — which the district court ordered, before reversing its decision after concluding it lacked the power to order out-of-district arbitration proceedings and instead granted a stay. In *In re Jamster Marketing Litigation*, 2009 WL 250089, at *3 (S.D. Cal. Feb. 2, 2009), the court amended its earlier order — the one quoted by Twitter — to reverse course and instead "instruct[ed] the Clerk of Court to refer" the case "to the Panel on Multidistrict Litigation." Finally, the dicta Twitter quotes from *Kim v. Colorall Technologies, Inc.*, 2000 WL 1262667, at *1 (N.D. Cal. Aug. 18, 2000), solely cites the Seventh Circuit *Lauer* case and, in any event, was abrogated by the Ninth Circuit's subsequent controlling opinion in *Textile Unlimited*.

[10]    While *Textile Unlimited* clearly permits Petitioners' alternative argument — that the Court "order[] these arbitrations to proceed in the Twitter locations where these employees reported to, as these employees generally worked from home," *i.e.*, Twitter's headquarters located in this District, it could also follow the path outlined by *Shearson Lehman Bros. v. Brady*, 783 F. Supp. 1490, 1496–98 (D. Mass. 1991), and simply compel arbitration without mandating a situs of the proceedings, with the expectation that the parties will abide by the arbitration administrators' decisions or else return here for compulsion in this District. *See also*

### 2. For Employees Who Worked in Locations Where JAMS Does Not Have Arbitrators, The Court May Either Sever the Unenforceable Term of the Arbitration Agreement Regarding the Location of the Arbitration or Alternatively Appoint an Arbitrator Within This Judicial District

For the reasons outlined in Petitioners' motion, the Court may sever the arbitration agreement's unenforceable location provisions and compel Twitter to arbitrate through the nearest JAMS office. (Dkt. 26 at 18-20.) Alternatively, the Court could order arbitration for these employees to take place in this judicial district.

Twitter argues that the appropriate remedy for the lack of arbitrators for employees who reside in a state without a local JAMS office is for the Court to appoint an arbitrator under Section 5 of the FAA, 9 U.S.C. § 5. (Dkt. 35 at 25-27). While Section 5 allows a court to appoint an arbitrator, as outlined *supra* in Section (C)(1), under binding Ninth Circuit caselaw, any such appointment and arbitration must take place in this judicial district. *See Textile Unlimited*, 240 F.3d at 785. Thus, if the Court is inclined to appoint an arbitrator rather than simply sever the provision, it should appoint arbitrators for these cases in the Northern District of California. In such a case, there is no shortage of potential JAMS arbitrators located in San Francisco. *See* JAMS Neutral Directory, available at https://www.jamsadr.com/neutrals/search?filters=custom_ss_tag_neutral_all_location%3Asan_francisco_california.

### 3. The Discretionary Rule Against One-Way Intervention is Inapplicable

Finally, Twitter argues that Petitioners' motion should be denied because of the "rule against one-way intervention." Defs. Opp. at 6–7. However, the rule against one-way

---

*Flora v. Prisma Labs, Inc.*, 2023 WL 5061955, at *7, n.12 (N.D. Cal. Aug. 8, 2023) (citations omitted).

1    intervention — which is discretionary[11] — is simply irrelevant here. The rule flows from Federal

2    Rule of Civil Procedure 23[12] and is inapplicable by its own terms:

> The rule against one-way intervention provides that class certification must be decided, and notice provided to the class **prior to the determination of defendant's liability on the merits**. The purpose of the rule is to prevent intervention of a plaintiff in a class action after an adjudication favoring the class ha[s] taken place – a phenomenon that [m]any commentators objected to because **it had the effect of giving collateral estoppel effect to the judgment of liability in a case where the estoppel was not mutual**.

*Wit v. United Behavioral Health*, 2023 WL 8717488, at *30 (N.D. Cal. Dec. 18, 2023)

(alterations in original) (internal quotations omitted) (emphasis added). Here, such concerns do

not arise, as "a decision on a motion to compel arbitration is not a final judgment on the merits

that gives rise to collateral estoppel." *Lotsoff v. Wells Fargo Bank, N.A.*, 2019 WL 4747667, at

*4 (S.D. Cal. Sep. 30, 2019) (quoting *Pearson v. P.F. Chang's China Bistro, Inc.*, 2015 WL

12910914, at *4 (S.D. Cal. Feb. 23, 2015)). Indeed, it is well established that an order

compelling arbitration is not a decision on the merits at all. *Vaden v. Discover Bank*, 556 U.S.

49, 63 (2009); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175 (N.D. Cal. 2012).

     Moreover, as Twitter recognizes, the rule against one-way intervention is designed to

thwart "putative class members [from] opt[ing] into 'a class action after an adjudication favoring

the class had taken place' even though they 'would not otherwise be bound by an adjudication in

favor of the defendant.'" Defs.' Opp. at 6–7 (quoting *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th

Cir. 1995)). But "[i]n contrast to Rule 23(b)(3) classes . . . Rule 23(b)(2) class members may not

---

[11]    *See, e.g., De la Torre v. CashCall, Inc.*, 2016 WL 6892693, at *16 (N.D. Cal. Nov. 23, 2016); *Schafer v. Allied Interstate LLC*, 2020 WL 4457922, at *8 (W.D. Mich. Aug. 2, 2020).

[12]    Ironically, while arguing for the rule's application, Twitter simultaneously argues, "Rule 23 is inapplicable in proceedings under 9 U.S.C. § 4." Twitter is incorrect that Rule 23 is unavailable in proceedings to compel arbitration, *see Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). However, at this stage, the Court is not being asked to certify a class.

opt out," and therefore, courts have declined to apply the rule against one-way intervention to Rule 23(b)(2) classes. *Diva Limousine, Ltd. v. Uber Technologies, Inc.*, 392 F. Supp. 3d 1074, 1096 (N.D. Cal. 2019). Here, to the extent a class is certified[13], clearly it would be a Rule 23(b)(2) class, which seeks injunctive or declaratory relief, and not a Rule 23(b)(3) class. Thus, the rule against one-way intervention is not applicable.[14]

## III.   CONCLUSION

For the foregoing reasons and those set forth in Petitioners' motion, this Court should end Twitter's gamesmanship and compel it to arbitrate its employees claims in accordance with its agreements.

---

[13]   If Petitioners obtain the preliminary relief they seek from their motion, it appears unlikely they would need to have a class certified, since the Court's ruling would likely resolve the issue raised for all the putative class members here.

[14]   At the same time, while Twitter argues to this Court that it should not rule on Petitioners' petition because "absent class members could take advantage of a ruling in Petitioners' favor" (Defs.' Opp. at 7), just days before filing its opposition, Twitter informed multiple arbitrators (in individual arbitrations for which it had already paid initial fees before deciding not to) that they should not rule on the fee splitting dispute, pending a ruling in *this* matter, and explicitly reserved the right to re-raise the issue to the arbitrators after this Court issued its ruling. (Ex. A - Emails dated Feb. 9, 2024.) Given its representations to these arbitrators, Twitter cannot credibly argue that it would be prejudiced by the Court's deciding this matter on the substance of Petitioners' motion. *See Schafer*, 2020 WL 4457922, at *8 (W.D. Mich. 2020) (refusing to invoke the rule against one-way intervention where the defendant agreed that the parties would proceed with cross-motions for summary judgment before briefing class certification).

1

2

Respectfully submitted,

3

4

5

6

7

FABIEN HO CHING MA, LAILA AMLANI,
JONATHAN WILLIS, MELISSA OLSON,
SASHA SOLOMON, RYAN CROWLEY,
GRAE KINDEL, SARAH ROSEN, and
ADAM TREITLER, on behalf of themselves
and all others similarly situated,

By their attorneys,

8

9

10

11

12

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719
Bradley Manewith (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; bmanewith@llrlaw.com

13

Dated:          February 23, 2024

14

15

16

### CERTIFICATE OF SERVICE

I, Shannon Liss-Rirodan, hereby certify that a true and accurate copy of this document

17

18

was served on all counsel of record via the Court's CM/ECF system on February 23, 2024.

19

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719

20

21

22

23

24

25

26

27

28