SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice* forthcoming)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:   (617) 994-5800
Facsimile:   (617) 994-5801

*Attorneys for Petitioners Fabien Ho Ching Ma, Laila Amlani,
Jonathan Willis, Melissa Olson, Sasha Solomon,
Ryan Crowley, Lenna (Grae) Kindel, Sarah Rosen, and
Adam Treitler, on behalf of themselves
and all others similarly situated*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL, SARAH ROSEN, and ADAM TREITLER, on behalf of themselves and all others similarly situated,<br><br>Petitioners,<br><br>v.<br><br>TWITTER, INC., AND X CORP.,<br><br>Respondents. | Case No. 4:23-cv-3301<br><br>**PETITIONERS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S ORDER OF MARCH 11, 2024 (DKT. 41)** |

# TABLE OF CONTENTS

I. "Does the putative class in this case include any individuals against whom Twitter has successfully moved to compel arbitration in other cases? If so, how, if at all, does that impact the Court's consideration of the motion?" ......................... 1

II. If the Court agrees with Petitioners that they may move to compel arbitration in this district even though the arbitrations at issue were filed outside this district, must the Court compel arbitration to occur in this district notwithstanding the venue povisions of the arbitration agreements? *See* 9 U.S.C. § 4; *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001); *Cont'l Grain Co. v. Dant & Russell, Inc.*, 118 F.2d 967, 968–69 (9th Cir. 1941) .......................................................................................... 4

III. Do the different versions of the arbitration agreements have any impact on the Court's rulings, or should the results be the same regardless of which version Petitioner signed? ........................................................................................... 6

IV. The arbitration agreements provide, 'If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and *any disputes in that regard will be resolved by the Arbitrator*.' *E.g.*, ECF No. 6-1 at 4, 21 (emphasis added). JAMS and AAA have ruled on the parties' disputes regarding payment of fees. Assuming Petitioners' motion is procedurally proper, does the Court have the authority to reverse those rulings? .................................................................................. 7

V. If the Court reaches the question, does "applicable law" in states in which Twitter has not paid initial arbitration fees require fee-splitting or merely allow it under certain conditions? If the latter, how should that impact the Court's analysis? ............................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020) .................................................................................. 10

*Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.*,
  819 F.2d 247 (9th Cir.1987) ...................................................................................................... 7

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
  2012 WL 3757486 (N.D. Cal. 2012) ......................................................................................... 7

*Borodaenko v. Twitter, Inc.*,
  2023 WL 3294581 (N.D. Cal. May 5, 2023) ............................................................................ 4

*Brown v. Dillard's, Inc.*,
  430 F.3d 1004 (9th Cir. 2005) ................................................................................................. 10

*California Dep't of Toxic Substances Control v. Exxon Mobil Corp.*,
  2024 WL 645417 (E.D. Cal. Feb. 14, 2024) ........................................................................... 14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir .2000) ................................................................................................... 6

*Congdon v. Uber Techs., Inc.*,
  291 F. Supp. 3d 1012 (N.D. Cal. 2018) .................................................................................. 13

*Cornet v. Twitter, Inc.*,
  2023 WL 187498 (N.D. Cal. Jan. 13, 2023) .......................................................................... 4, 5

*Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*,
  588 F.3d 884 (5th Cir. 2009) ..................................................................................................... 9

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................................................................... 6

*Delano v. Mastec, Inc.*,
  2010 WL 4809081 (M.D. Fla. 2010) ...................................................................................... 14

*Hasbrouck v. Texaco, Inc.*,
  663 F.2d 930 (9th Cir. 1981) ..................................................................................................... 8

*Hilowitz v. Hilowitz*,
  444 N.Y.S.2d 948 (1981) ........................................................................................................ 12

*Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*,

282 F.Supp.2d 1131 (N.D.Cal.2003) .................................................................................. 7

*Hoyt v. WeLink Commc'ns, Inc.*,
2024 WL 169671 (D. Ariz. Jan. 16, 2024) ........................................................................ 7

*In re Marriage of Kostelnik*,
381 Mont. 182 (2015) ...................................................................................................... 14

*In re Marriage of Morris*,
266 Ill. App. 3d 277 (1994) ............................................................................................. 14

*Jacobson v. Fireman's Fund Ins. Co.*,
111 F.3d 261 (2d Cir. 1997) ............................................................................................ 12

*Jones v. Starz Ent., LLC*,
2024 WL 1067505 (C.D. Cal. Mar. 11, 2024) .................................................................. 9

*KOS Ltd. v. Dockery*,
2024 WL 1129753 (Ga. Ct. App. Mar. 15, 2024) ........................................................... 14

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ........................................................................................................ 15

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) ............................................................................... 6, 11, 12

*Major League Baseball Players Ass'n v. Garvey*,
532 U.S. 504 (2001) .......................................................................................................... 9

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
2016 WL 7386138 (N.D. Cal. Dec. 21, 2016) ................................................................ 10

*Poland v. Martin*,
761 F.2d 546 (9th Cir. 1985) .......................................................................................... 14

*Pope v. Sonatype*, Inc.,
2015 WL 2174033 (N.D. Cal. May 8, 2015) .................................................................. 11

*Rodriguez v. Twitter, Inc.*,
2023 WL 3168321 (N.D. Cal. May 1, 2023) .................................................................... 4

*Seaman v. Private Placement Capital Notes II, LLC*,
2017 WL 1166336 (S.D. Cal. 2017) .................................................................................. 7

*Simpson v. Hand*,
1840 WL 3924 (Pa. 1840) ............................................................................................... 14

*Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*,
823 F.3d 524 (9th Cir. 2016) .......................................................................................... 11

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
  2016 WL 6662725 (C.D. Cal. May 26, 2016) .................................................................... 12

*United States v. Coeur d'Alenes Co.*,
  767 F.3d 873 (9th Cir. 2014) .............................................................................................. 14

*Weber v. X Corp.*,
  2024 WL 470255 (E.D. Wash. Jan. 8, 2024) ........................................................................ 5

**Statutes**

9 U.S.C. §§ 3, 4 ............................................................................................................................ 6

Petitioners submit this brief in response to the Court's Order of March 11, 2024 (Dkt. 41) requesting supplemental briefing on five questions.

**I.      "Does the putative class in this case include any individuals against whom Twitter has successfully moved to compel arbitration in other cases? If so, how, if at all, does that impact the Court's consideration of the motion?"**

As defined in the operative Amended Petition (Dkt. 6), the putative class in this action consists of "all former Twitter employees throughout the United States who have filed demands for arbitration against Twitter, but for whom Twitter has refused to proceed with arbitrating their claims." Dkt. 6 ¶ 17. As an initial matter, Twitter disingenuously argues:

> Based upon this definition, the putative class does *not* contain any individuals against whom Twitter has successfully moved to compel arbitration in other cases—and, indeed, the putative class is a null set—because Twitter has not refused to proceed with arbitrating the claims of any employee who agreed to and did not opt out of a Dispute Resolution Agreement ("DRA").

Def.'s Suppl. Br. 1. But this contention is simply untrue; Twitter has explicitly and repeatedly told JAMS, AAA, and Petitioners' counsel that it is refusing to proceed with arbitrating these claims now that JAMS and AAA have determined it must pay for these arbitrations. To JAMS, Twitter has written:

> Twitter declines to proceed under the Minimum Standards for all demands in jurisdictions where feesharing is lawful. . . . We understand that . . . JAMS will no longer administer these arbitrations. As a result, JAMS should cease invoicing Twitter for any fees/costs associated with these arbitrations.

Dkt. 6–4 at 2. To AAA, Twitter has similarly written:

> AAA's proposal seeks to require Twitter to front all arbitration fees until arbitrators issue individual rulings on this issue, and then Twitter could seek an order for reimbursement from each individual arbitrator if their rulings order apportionment. . . . . Twitter cannot agree to AAA's proposal to proceed with any demands that are not subject to mandatory fee sharing…. As for the remaining non-CA claimants, unless AAA agrees to apportion the fees for those matters equally among the parties . . . Twitter objects . . . .

Dkt. 6–10 at 8; *see also* 26–3 ¶¶ 29–33.[1] And to Petitioners' counsel, Twitter has made clear that it will not proceed with arbitrations for which it has been ordered to pay but has refused to do so. *E.g.* Dkt. 7–2; Ex. A ("[W]e will not arbitrate under the minimum standards… This is one of the cases where we have objected to proceeding under the Minimum Standards.").

Twitter has likewise refused to proceed with any arbitrations in which Claimants do not have signed copies of their arbitration agreements, *e.g.* Dkt. 26–4 ¶¶ 3–4, despite Twitter's admission that it possesses such agreements and its (later reneged) promise to produce them, *e.g.* Dkt. 26–3 ¶¶ 7–12. Thus, there are ample members of the putative class in this case.

Turning to the merits of the Court's question, in the matters handled by Petitioners' Counsel, Twitter successfully compelled the named Plaintiffs who were subject to arbitration agreements to arbitration in the following cases: *Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); *Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); and *Gadala v. Twitter, Inc.*,

---

[1]     In its latest attempt to move the goalposts, and months after Petitioners filed this complaint in response to Twitter's refusal to proceed with the arbitrations, Twitter proposed that it will "*advanc[e]* Claimants' portion of the initial arbitral fees in order to enable the AAA arbitrations to move forward," Def.'s Suppl. Br. 1–2 (emphasis added) thus putting Claimants in the position of risking that they may have to repay these fees, should Twitter convince an arbitrator to disregard the JAMS and AAA rules and ignore the decisions that JAMS and AAA already reached that Twitter must pay the fees.
        Not only would such a conditional "advance" leave Claimants in the untenable position of worrying that they may risk having to pay fees that JAMS and AAA have already decided they do not have to pay, Twitter's "proposal" also came with the condition that the claimants unilaterally agree to waive any legal rights they may have to challenge any fee allocation decisions in the future if they disagree with them (including seeking relief in court, if appropriate). Dkt. 36 at 13. Because the claimants rightfully balked at Twitter's only conditionally "advancing" the fees and Twitter's demand that they waive their legal rights just so Twitter would do what AAA already determined was required, Twitter now tries to blame Petitioners for refusing to arbitrate in accordance with the arbitration agreement. Def.'s Suppl. Br. 2. Twitter's efforts to shift the blame to Petitioners should be rejected. Petitioners stand ready to arbitrate once Twitter complies with the decisions of JAMS and AAA, both of which allow Twitter to argue to individual arbitrators that fee-sharing could be ordered (and which do not require Claimants to waive any rights to challenge any arbitrator ruling they may have).

No. 3:23-cv-01595-JSC (N.D. Cal. May 15, 2023)[2] Other than Christina Gadala, who resides in Florida, Twitter is moving forward with all these individuals' arbitrations.[3]

Notwithstanding, the Court's analysis is not impacted by whether or not a putative class member has actually been compelled to arbitration by Twitter. Twitter made it clear that it would move to compel arbitration of anyone bound by an arbitration agreement. As such, rather than hopelessly trying to proceed in court, putative class members filed their claims in arbitration. Yet, for anyone who (1) worked outside of California, Nevada, or Oregon; (2) worked in a state where JAMS does not have an office or arbitrators; and/or (3) did not have a signed copy of their arbitration agreement, Twitter has refused to move forward with their arbitrations. Twitter cannot have it both ways.  It cannot object to litigating individuals' claims in court because of their arbitration agreement, and at the same time refuse to move forward in arbitration. In short, Twitter is simply trying to block all claims by its former employees who are covered by the

---

[2] The named Plaintiff in *Gadala* agreed to stipulate to the dismissal of the case when Twitter presented a copy of her arbitration agreement. *Gadala v. Twitter, Inc.*, Dkt. 17 (N.D. Cal. May 15, 2023).

[3] Twitter has identified two individuals – Arnaud Weber and Lenna Kindel (Petitioner Grae Kindel, recently legally changed their name to "Lenna Kindel"), as potential putative class members whose claims have previously been compelled to arbitration. Def.'s Suppl. Br. 2–3. If, as Twitter represents, "arbitration was never initiated" by Weber (following his agreement with Twitter to dismiss his court claims with prejudice), then he would not fall within the putative class.
   As to Kindel, after the Amended Petition was filed, and on the eve of an arbitrator ruling on the issue in their individual arbitration, Twitter withdrew its objection to AAA's fee determination for Kindel's case. To that end, Twitter informed AAA that "the parties have conferred and agree that the fee sharing dispute is temporarily withdrawn pending a ruling" in this case, and Twitter has "agree[d] to continue paying the AAA fees in this matter pending that ruling, but expressly reserve[d] its right to re-raise the fee sharing dispute at a later date." Dkt. 37–1 at 3. Accordingly, Kindel too assumedly would not be included in this putative class (although Twitter has apparently retained the right to reassert its argument later for Kindel). Regardless, the order compelling Kindel's claim to arbitration made no mention of the fee-splitting issue presented here, and therefore Twitter's concerns about *res judicata* and comity are unfounded. *See Cornet et. al. v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023)

Amended Petition and Motion to Compel Arbitration.[4]

**II.    If the Court agrees with Petitioners that they may move to compel arbitration in this district even though the arbitrations at issue were filed outside this district, must the Court compel arbitration to occur in this district notwithstanding the venue provisions of the arbitration agreements?** *See* **9 U.S.C. § 4;** ***Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001);** ***Cont'l Grain Co. v. Dant & Russell, Inc.*, 118 F.2d 967, 968–69 (9th Cir. 1941).**

Binding Supreme Court and Ninth Circuit precedent is unequivocal: "By its terms, section 4 of the FAA limits the court's discretion….[T]he district court's role is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. If the answer is yes to both questions, the court must enforce the agreement" by compelling arbitration. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). This Court simply lacks discretion to determine that Petitioners' underlying claims are subject to a valid arbitration agreement but decline to compel arbitration because of the venue provisions.[5]

As another court in this District explained:

Because the FAA mandates that district courts shall direct the parties to proceed

---

[4]    Twitter argues that somehow the *Weber* court's order compelling a non-putative class member to arbitration could preclude this Court from requiring Twitter to comply with JAMS and AAA's fee decisions on *res judicata* and comity grounds. Def.'s Suppl. Br. 3 (citing *Weber v. X Corp.*, No. 23-cv-233, 2024 WL 470255 (E.D. Wash. Jan. 8, 2024)). However, the issue before the Court in *Weber* did not concern the fee dispute. As such, contrary to Twitter's mischaracterization, the court never explicitly ruled on the issues presented here. Thus, Twitter concerns about *res judicata* with respect to *Weber* are likewise unfounded.

[5]    To be clear, any arbitrations that are already proceeding outside of this judicial district would not be affected by any order in this case, as such claimants would not be members of the putative class.

> to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.
>
> Assuming that the district court finds these conditions to be satisfied, the court lacks discretion to do anything other than order arbitration to proceed according to its terms. *Cf. Chiron Corp. v. Ortho Diagnostic Sys.,* Inc., 207 F.3d 1126, 1130 (9th Cir .2000) (court can only order arbitration when claim lies within scope of arbitration agreement). One term, however, may be disregarded: under Ninth Circuit precedent, § 4 "confines the arbitration to the district in which the petition to compel is filed." *Textile Unlimited, Inc. v. A..BMH and Co.,* Inc., 240 F.3d 781, 785 (9th Cir.2001) (emphasis omitted); *see also Cont'l Grain Co. v. Dant & Russell,* 118 F.2d 967, 969 (9th Cir.1941). That is, the Ninth Circuit's interpretation of the FAA's remedial provision, set forth in *Continental Grain,* "prohibits a district court from ordering parties to arbitrate outside of the district in which a motion to compel is filed." This is true when the arbitration agreement is silent as to venue; it is true even when the arbitration agreement specifies a venue. *See Bauhinia Corp. v. China Nat. Mach. & Equip. Imp. & Exp. Corp.,* 819 F.2d 247, 250 (9th Cir.1987) (silent as to venue); *Homestake Lead Co. of Missouri v. Doe Run Res.* Corp., 282 F.Supp.2d 1131, 1143–44 (N.D.Cal.2003) (specifying venue); *cf. Lexington,* 795 F.Supp.2d at 1092 (where arbitration agreement specified venue outside district where petition was filed, court acknowledged that it could order arbitration only within its own district, so transferred case instead). The Ninth Circuit has explained that § 4 does not require a party to file a petition to compel arbitration in the place "where the contract specified that arbitration should occur." *Textile Unlimited,* 240 F.3d at 785 (citing *Continental Grain,* 118 F.2d at 969)….
>
> Irrespective of this Court's view of the wisdom of the *Continental Grain* rule, it remains the law of this circuit until modified by Congress or some superior court.

*Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2012 WL 3757486, at *5–6 (N.D. Cal. 2012) (citations and quotations omitted); *see also, e.g.*, *Seaman v. Private Placement Capital Notes II, LLC*, 2017 WL 1166336, at *5–6 (S.D. Cal. 2017) ("*Continental Grain*…remains controlling authority in this Circuit….Accordingly, the Court grants Defendants' motion to compel arbitration, but will require arbitration proceedings to be initiated in the Southern District of California.").[6]

---

[6] Twitter argues that "the 'majority' position among Ninth Circuit district courts" is to simply ignore binding precedent and hold "that courts may not compel arbitration outside their boundaries but also may not compel arbitration in violation of the location chosen in the

Thus, this Court is bound to apply the Ninth Circuit's decisions in *Textile Unlimited* and *Continental Grain* here and, as such, the arbitration agreements' venue provisions cannot be a barrier to compelling arbitration. *See Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981) (citations omitted) ("District courts are bound by the law of their own circuit. They are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.").[7]

### III. Do the different versions of the arbitration agreements have any impact on the Court's rulings, or should the results be the same regardless of which version Petitioner signed?

The parties agree that the only difference between the two versions of the arbitration agreement is that one version (signed by Petitioners Kindel and Rosen) does not specify the arbitration provider or rules. But this difference should not impact the Court's analysis, because as Twitter has acknowledged, the parties agreed to proceed with the AAA as the administrator for cases in which the agreement did not specify JAMS. In doing so, the parties explicitly agreed to arbitrate under AAA's Employment Arbitration Rules. (Dkt. 6-9.) Those rules provide :

> The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable. AAA fees shall be paid in accordance with the Costs of Arbitration section….
>
> Any arrangement for the compensation of a neutral arbitrator shall be made

---

arbitration agreement." Def.'s Suppl. Br. 4 (citing *Hoyt v. WeLink Commc'ns, Inc.*, 2024 WL 169671, at *4 (D. Ariz. Jan. 16, 2024)). This is not true. In *Hoyt*, the court simply explained, "While there are some conflicting district court decisions, the majority agree that a district court is only able to compel arbitration in its own district." *Id.* at *4. It certainly did not, and indeed could not, describe the majority position as being that courts cannot order arbitration within their own district notwithstanding agreements' venue provisions.

[7]   Twitter's supplemental brief focuses largely on arguing against the premise of the Court's question (*i.e.*, "If the Court agrees with Petitioners that they may move to compel arbitration in this district even though the arbitrations at issue were filed outside this district…"). Petitioners, instead, have focused on the actual question asked of the parties. Notwithstanding, for the reasons outlined in Petitioners' memorandum in support of their motion to compel arbitration (*see* Dkt. 26 at 15-18), as well as their reply (Dkt. 37 at 15-17, both of which are incorporated by reference herein, Respondents' arguments are wrong.

through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose. Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section....

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties....If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

*Employment Arbitration Rules and Mediation Procedures* 25–26. Accordingly, there are no relevant differences between the respective agreements, and the result for all three are the same: Twitter is required to pay the arbitration fees, consistent with JAMS's and AAA's prior rulings.

**IV.  The arbitration agreements provide, 'If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and *any disputes in that regard will be resolved by the Arbitrator*.' *E.g.*, ECF No. 6-1 at 4, 21 (emphasis added). JAMS and AAA have ruled on the parties' disputes regarding payment of fees. Assuming Petitioners' motion is procedurally proper, does the Court have the authority to reverse those rulings?**

In its supplemental briefing, Twitter argues that the emphasized language "highlights a serious problem with the JAMS and AAA determinations," because this language "specifically delegates the authority to resolve fee-apportionment disputes to "*the Arbitrator*" in each individual case, *not* to JAMS or AAA as organizations." Def.'s Suppl. Br. 9. This argument is little more than an attempted end-run around the foundational principle that courts do not second-guess the results of arbitration proceedings. *See, e.g.*, *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510 (2001). That includes threshold questions regarding "the payment of arbitration fees," which federal courts are required by the FAA to "decline[] to address." *Jones v. Starz Ent., LLC*, 2024 WL 1067505, at *4 (C.D. Cal. Mar. 11, 2024); *see also Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) ("Payment of fees is a procedural condition precedent that the trial court should not review."). Twitter may vehemently disagree with how JAMS and AAA decided the fee issue, but that is not a reason to deviate from settled law regarding the judiciary's exceedingly limited role in

PETITIONERS' SUPPLEMENTAL BRIEF
CASE NO. 4:23-CV-3301
7

reviewing arbitration decisions.

This Court, in line with other federal courts, has recognized that issues contractually delegated to arbitrators that require resolution before individual arbitrators are appointed (like allocation of fees and whether to consolidate proceedings) are properly for JAMS and AAA to determine. *See, e.g.*, *Meadows v. Dickey's Barbecue Restaurants Inc.*, 2016 WL 7386138 at *3 (N.D. Cal. Dec. 21, 2016) (Tigar, J.) (holding when AAA determined arbitral proceedings needed to be filed individually and the Plaintiffs subsequently sought to compel arbitration on a consolidated basis, that "this request… [is] a question for the arbitrator," before denying plaintiffs' motion "without prejudice to submitting the matter to the AAA."); *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1065–68 (N.D. Cal. 2020) (holding "specific procedural disputes [related to fee allocation] are referred to the AAA for decision" and chastising the employer, "faced with having to actually honor its side of the bargain, [for] now blanch[ing] at the cost of the filing fees it agreed to pay in the arbitration clause" because it "never expected that so many would actually seek arbitration."); *accord Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1008–09 (9th Cir. 2005) (holding company "refused to participate in the arbitration process at all" and "breach[ed ]its obligations under the arbitration agreement" by refusing to respond to or comply with letters from AAA requesting it to pay filing fee AAA determined it owed).

At the same time, there is no disputing that the parties' arbitration agreements themselves either incorporated the JAMS rules by reference (Dkt. 6-1) or reflected the parties' express assent to arbitration consistent with AAA rules (Dkt. 6-8.). *See also* Dkt. 37 at 4-5. There is also no disputing that, under the relevant JAMS and AAA rules, each arbitration provider has the authority to resolve threshold issues including the allocation of arbitration fees among the parties.[8] Twitter attempts to manufacture an irreconcilable tension between these rules and the

---

[8]   *See, e.g.*, *JAMS Employment Arbitration Rules & Procedures*, https://www.jamsadr.com/rules-employment-arbitration/english at R. 1, 6, 31  ("The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ('NAC') or the office of JAMS General Counsel or their designees…. If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings….   The non-payment of fees may result in an

arbitration agreements by focusing on their reference to decisions that are to be made by an "Arbitrator," suggesting that such reference precludes the arbitration service providers from making fee determinations in a manner consistent with their respective rules. Yet, as a threshold matter, even if Twitter's argument about how to interpret the word "Arbitrator" in the agreements is plausible — and, indeed, even if JAMS and AAA are wrong about how to interpret this phrase — that does not permit the drastic remedy of judicially disturbing an arbitration ruling. *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 531–32 (9th Cir. 2016) ("The question is not . . . whether the arbitrator's interpretation of the agreement was 'plausible,' in the sense of one a court might render, but instead whether he made any interpretation or application of the agreement at all."). Moreover, given that the agreements expressly incorporate the JAMS and AAA rules, even if there is "express[ly] conflicting language in the Arbitration Agreement" regarding fee disputes — which there is not — "the most logical interpretation of the Arbitration Agreement is that the [JAMS and AAA rules] were intended to apply if a provision in the Arbitration Agreement conflicted with [these rules'] requirement[s]." *Pope v. Sonatype*, Inc., 2015 WL 2174033, at *4 (N.D. Cal. May 8, 2015).

Twitter relies heavily on *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004), for the proposition that this Court "has an *obligation* not to follow [the JAMS and AAA fee] rulings because they are inconsistent with the terms of the [agreements]." Def.'s Suppl. Br. 10 (emphasis in original). This reliance is perplexing, given that *Lifescan* stands for the proposition that courts have no role in reviewing fee arrangements that comport with arbitration service providers' rules incorporated into an arbitration agreement. In *Lifescan*, the

---

administrative suspension of the case."); *AAA Employment Arbitration Rules and Mediation Procedures* (2017), www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf., at R. 46–48 ("The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee…. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings….The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties….If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.").

applicable arbitration agreement incorporated the AAA Commercial Arbitration rules, which provided in relevant part that "[t]he AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee." *Id.* After the arbitrator requested initial deposits, one of the parties (Premier) indicated that it was unable to pay, so the arbitrator rescinded its request and gave the other party (Lifescan) "the option of advancing the fees owed by Premier so the final arbitration hearings could proceed, with an expectation that Lifescan would recoup the advance as part of any award." *Id.* at 1011. When Lifescan refused to proceed under this arrangement, the AAA suspended proceedings, and Lifescan sued, arguing that the applicable AAA rule "requires the parties to deposit fees before the arbitration begins, and that Premier violated [that rule] by failing to do so." *Id.* at 1012.

The district court sided with Lifescan, but the Ninth Circuit reversed on the grounds that the applicable AAA rule provided only that the organization "*may* require the parties" to place a deposit at the outset of arbitration, not that a deposit *was* required. *Id.* The Ninth Circuit concluded that, by disturbing the arbitrator's threshold fee apportionment judgment — and the arbitration service provider's subsequent decision to suspend arbitration — the district court overstepped its limited role given that "the arbitration has proceeded pursuant to the parties' agreement and *the rules they incorporated*." *Id.* at 1013 (emphasis added). Indeed, *Lifescan* sounds a resounding note of caution about judicial interference with initial fee apportionment determinations, with the court emphasizing the principle that "[t]he FAA gives federal courts only limited authority to review arbitration decisions, because broad judicial review would diminish the benefits of arbitration." *Id.* at 1012. The same principle controls here.[9]

---

[9]     Indeed, at least one arbitrator has already agreed with the JAMS and AAA rulings that Twitter must pay full fees. Ex. A (Partial Final Award in the Zhang Arbitration). As Petitioners have noted, both JAMS and AAA have stated that Twitter could attempt to persuade an arbitrator otherwise. While Petitioners disagree that an arbitrator could properly order any class members here to split arbitration fees, the Court should compel arbitration as requested here and could allow Twitter to seek such rulings from arbitrators. Arguably, however, the *Zhang* decision itself may be preclusive on this issue. *See, e.g., Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261,

**V.    If the Court reaches the question, does "applicable law" in states in which Twitter has not paid initial arbitration fees require fee-splitting or merely allow it under certain conditions? If the latter, how should that impact the Court's analysis?**

Twitter concedes that "applicable law in the relevant states does not create a freestanding obligation that parties split arbitration fees." Def.'s Suppl. Br. 12. This should end the Court's inquiry. Every version of the arbitration agreements at issue mandates the exact same thing: "If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." Dkt. 6–1 at 4, 8, 12, 16, 21, 26, 30, 35. Given Twitter's admission that "applicable law in the relevant states does not create a freestanding obligation that parties split arbitration fees," Def.'s Suppl. Br. 12, it cannot argue that JAMS and AAA's fee decisions are not "in accordance with [] applicable law." Indeed, Twitter *does not* make such an argument, other than repeating its own, repudiated interpretations of the agreements and claiming that the FAA and state laws require these agreements to be enforced. Def.'s Suppl. Br. 12–14.

Likewise, as Petitioners argued in their earlier briefing, the plain language of the agreement itself does not require fee-splitting.  Twitter argues again that it does because it refers to the fees being "apportioned".  However, "apportioned" does not mean shared evenly.  Twitter drafted the agreement and failed to make clear what it now contends the agreement says – that the fees should be split evenly by the parties.  As the drafter of the agreement, ambiguities should be interpreted against it.  *See Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1024 n.14 (N.D. Cal. 2018) (finding even if contract terms were ambiguous, they would be construed against defendant as the drafter of the contract).

---

267–68 (2d Cir. 1997) (quoting *Hilowitz v. Hilowitz*, 444 N.Y.S.2d 948, 949 (1981) ("[R]es judicata and collateral estoppel apply to issues resolved by arbitration 'where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award.'"); accord *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 6662725 (C.D. Cal. May 26, 2016).

Twitter cites to dictionaries in support of its claim that "apportioned" means the fees must be split evenly, but a litany of blackletter contract law principles make this interpretation untenable.

First, where a contractual term is unambiguous, courts must simply apply "the plain meaning that a lay person would normally attach to them," and "should not strain for interpretations to create ambiguities where none exist." *Poland v. Martin*, 761 F.2d 546, 548 (9th Cir. 1985). Courts are only to resort to dictionary definitions when a term is genuinely ambiguous. *Id.* Here there is no ambiguity.

Indeed, courts interpreting the word "apportioned" in a variety of contexts have consistently held that it does not require equal splitting.[10]  In fact, in interpreting nearly identical language in an arbitration agreement, the court in *Delano v. Mastec, Inc.*, 2010 WL 4809081, at *6 (M.D. Fla. 2010) (citation and alteration omitted), specifically found: "[T]he arbitration agreement's provision that arbitrator and arbitration fees 'will be apportioned between the parties by the Arbitrator in accordance with applicable law' is not informative as to the likely allocation of arbitration fees."

Moreover, even if the Court were to look at a dictionary, it is clear that "apportion" does not automatically mean a 50/50 split. While Twitter cherry-picks two definitions of "apportion" from dictionaries published 34 years ago and 68 years ago respectively (which themselves do not stand for the proffered proposition that "apportionment would be a 50/50 allocation," Def.'s Suppl. Br. 13), contemporary definitions refute such an interpretation. For example, the first

---

[10]   *See, e.g.*, *California Dep't of Toxic Substances Control v. Exxon Mobil Corp.*, 2024 WL 645417, at *4 (E.D. Cal. Feb. 14, 2024) (citing *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 877 (9th Cir. 2014)) ("However, apportionment does not necessarily need to be exactly proportional to fault."); *Simpson v. Hand*, 1840 WL 3924, at *6 (Pa. 1840) ("A]pportion' does not mean equally divided."); *In re Marriage of Morris*, 266 Ill. App. 3d 277, 281 (1994) ("Just or equitable apportionment does not necessarily mean equal division."); *In re Marriage of Kostelnik*, 381 Mont. 182, 188 (2015) ("[C]ontrary to Daniel's argument, equitable apportionment does not require an equal distribution of the marital estate."); *KOS Ltd. v. Dockery*, 2024 WL 1129753, at *5 (Ga. Ct. App. Mar. 15, 2024) (cleaned up) ("Simply put, the fact…that their fault *could* have been apportioned does not mean that the factfinder had a basis to determine the degree to which each liable defendant contributed to the damages.").

definition of "apportioned" in the current Oxford English Dictionary is: "To assign (*to* a person) as his or her proper portion or share; to allot." *Oxford English Dictionary*, "Apportion (*v.*)," (Mar. 2024), https://doi.org/10.1093/OED/5428229782. Likewise, Websters defines "Apportion" as "to divide and share out according to a plan," and notes this has been the operative definition since the 15th Century. *Merriam-Webster*, "Apportion," https://www.merriam-webster.com/dictionary/apportion. Thus, even the dictionary definition of "apportion" does not support Twitter's interpretation.

       Finally, even assuming Twitter's interpretation is a proper definition of "apportion," given the case law regarding the term, as well as the other dictionary definitions, this at most creates ambiguity. However, the doctrine of *contra proferentem* "resolves the ambiguity against the drafter [ — here, Twitter —] based on public policy factors, primarily equitable considerations about the parties' relative bargaining strength." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 186 (2019). Thus, only if the phrase "apportioned" is genuinely ambiguous are Twitter's proffered definitions relevant. Yet, even under such circumstances, because Petitioners' interpretation of the term is also plausible, it controls.

       In short, it is undisputed that applicable law does not require fee splitting, though it could arguably allow it (a point that Petitioners would contest, if this issue actually needed to be addressed). Likewise, the term "apportioned" does not mean equal fee splitting. Thus, because the parties incorporated JAMS' and AAA's rules (which includes their fees schedules) into the arbitration agreements, JAMS' and AAA's decisions to apportion fees pursuant to the their respective fee schedules (which require claimants to pay a small initial filing fee and for Twitter to pay the remaining fees) is allowed under applicable law and therefore consistent with the terms of Twitter's Arbitration Agreement.

       For the reasons discussed here and in Petitioners' motion and reply, the Court should grant the petition to compel arbitration. Contrary to Twitter's request, the Court cannot second guess the arbitration providers, regardless of whether it even agrees or not with their conclusions.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | PETITIONERS FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, LENNA (GRAE) KINDEL, SARAH ROSEN, and ADAM TREITLER, on behalf of themselves and all others similarly situated, |
|  | By their attorneys, |
|  | /s/ *Shannon Liss-Riordan* |
|  | Shannon Liss-Riordan, SBN 310719 |
|  | Bradley Manewith (*pro hac vice* forthcoming) |
|  | LICHTEN & LISS-RIORDAN, P.C. |
|  | 729 Boylston Street, Suite 2000 |
|  | Boston, MA 02116 |
|  | (617) 994-5800 |
|  | Email: sliss@llrlaw.com; bmanewith@llrlaw.com |

Dated: April 5, 2024

**CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on all counsel of record via the Court's CM/ECF system on April 5, 2024.

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719