MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:     +1.415.442.1000
Fax:    +1.415.442.1001

Michael E. Kenneally, *pro hac vice*
michael.kenneally@morganlewis.com
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004-2541
Tel:     +1.202.739.3000
Fax:    +1.202.739.3001

Attorneys for Respondents
TWITTER INC., and X CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL, SARAH ROSEN, and ADAM TREITLER,<br><br>Petitioners,<br><br>v.<br><br>TWITTER, INC., and X CORP.,<br><br>Respondents. | Case No. 4:23-cv-3301<br><br>**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR CLASS CERTIFICATION** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| III. | LEGAL STANDARD | | 5 |
| IV. | ARGUMENT | | 5 |
| | A. | Petitioners' Motion suffers from several threshold problems. | 5 |
| | | 1. Rule 23 does not apply to petitions under 9 U.S.C | 5 |
| | | 2. Even if Rule 23 applied, Petitioners waived their right to certification. | 7 |
| | | 3. Petitioners propose fail-safe classes based on unobjective criteria. | 8 |
| | B. | Petitioners fail to meet Rule 23(a)'s requirements. | 10 |
| | | 1. Petitioners fail to satisfy numerosity. | 10 |
| | | 2. Petitioners fail to satisfy commonality. | 11 |
| | | 3. Petitioners fail to satisfy adequacy of representation. | 11 |
| | C. | Petitioners fail to meet Rule 23(b)'s requirements. | 14 |
| | | 1. Certification is inappropriate under Rule 23(b)(2). | 14 |
| | | 2. Certification is inappropriate under Rule 23(b)(1). | 15 |
| V. | CONCLUSION | | 17 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

RESPONDENTS' OPPOSITION TO
PETITION TO COMPEL ARBITRATION
CASE NO. 3:23-CV-3301

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adoma v. Univ. of Phoenix, Inc.*,
  270 F.R.D. 543 (E.D. Cal. 2010) ............................................................................................ 16

*Alberghetti v. Corbis Corp.*,
  263 F.R.D. 571 (C.D. Cal. 2010), *aff'd*, 476 F. App'x 154 (9th Cir. 2012) .......................... 14

*Boucher v. First Am. Title Ins. Co.*,
  No. 10-cv-199, 2011 WL 1655598 (W.D. Wash. May 2, 2011) ...................................... 8, 15

*Brazil v. Dell Inc.*,
  585 F. Supp. 2d 1158 (N.D. Cal. 2008) ................................................................................... 9

*Bridgeport Mgmt., Inc. v. Lake Mathews Min. Props., Ltd.*,
  No. 14-cv-70, 2014 WL 953831 (N.D. Cal. Mar. 6, 2014) (Tigar, J.).................................. 1, 6

*Capili v. Finish Line, Inc.*,
  116 F. Supp. 3d 1000 (N.D. Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir. 2017) ............... 13

*Cont'l Grain Co. v. Dant & Russell, Inc.*,
  118 F.2d 967 (9th Cir. 1941).............................................................................................. 2, 12

*CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*,
  19 F.4th 236 (3d Cir. 2021).................................................................................................... 6

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ................................................................................................................ 8

*Est. of Orbie Coggins ex rel. Brooks v. Wapato Point Mgmt. Co. Health & Welfare Plan*,
  22 F. Supp. 3d 1152 (E.D. Wash. 2014) ................................................................................. 8

*Frazier v. X Corp.*,
  No. 24-cv-2135, 2024 WL 3370887 (S.D.N.Y. July 4, 2024)............................................... 13

*Frazier v. X Corp.*,
  No. 24-cv-2135 (S.D.N.Y. Mar. 22, 2024), ECF No. 6......................................................... 13

*GGNSC Louisville Hillcreek, LLC v. Dockery*,
  No. 15-cv-908, 2016 WL 5478010 (W.D. Ky. Sept. 27, 2016).............................................. 7

*Green v. Occidental Petroleum Corp.*,
  541 F.2d 1335 (9th Cir. 1976)............................................................................................... 14

*Hansberry v. Lee*,
  311 U.S. 32 (1940) ................................................................................................................ 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

*Hargreaves v. Associated Credit Servs., Inc.*,
No. 16-cv-103, 2017 WL 2260705 (E.D. Wash. May 23, 2017) ............................................ 10

*In re Google RTB Consumer Priv. Litig.*,
No. 21-cv-2155, 2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ............................................... 8

*ISC Holding AG v. Nobel Biocare Fin. AG*,
688 F.3d 98 (2d Cir. 2012) ........................................................................................................ 7

*Jolly v. Intuit Inc.*,
485 F. Supp. 3d 1191 (N.D. Cal. 2020) .................................................................................... 9

*Kim v. Allison*,
87 F.4th 994 (9th Cir. 2023) ...................................................................................... 2, 12, 14

*La Mar v. H&B Novelty & Loan Co.*,
489 F.2d 461 (9th Cir. 1973) .................................................................................................. 16

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) ................................................................................................................ 15

*Mayfield v. Dalton*,
109 F.3d 1423 (9th Cir. 1997) ................................................................................................ 14

*McDonnell-Douglas Corp. v. U.S. Dist. Ct. for Cent. Dist. of California*,
523 F.2d 1083 (9th Cir. 1975) ................................................................................................ 16

*Miles v. Kirkland's Stores Inc.*,
89 F.4th 1217 (9th Cir. 2024) ................................................................................................... 5

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .............................................................................................................. 5, 6

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ............................................................................................................. 1, 6, 9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) ................................................................................. 5, 8

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ......................................................................................................... 14, 16

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .................................................................................................. 12

*Rothman v. Gen. Nutrition Corp.*,
No. 11-cv-3617, 2011 WL 6940490 (C.D. Cal. Nov. 17, 2011) ............................................ 11

*Textile Unlimited, Inc. v. A..BMH & Co.*,
240 F.3d 781 (9th Cir. 2001) ............................................................................................. 2, 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

*Torres v. Nutrisystem, Inc.*,
  289 F.R.D. 587 (C.D. Cal. 2013) ........................................................................................ 11

*Vargas v. Delivery Outsourcing, LLC*,
  No. 15-cv-3408, 2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ............................................ 13

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ................................................................................................ 5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................ 5, 11, 15

*Weyerhaeuser Co. v. W. Seas Shipping Co.*,
  743 F.2d 635 (9th Cir. 1984) ................................................................................................ 7

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................................................ 16

## RULES

Fed. R. Civ. P. 2 ........................................................................................................................ 6

Fed. R. Civ. P. 3 ........................................................................................................................ 6

Fed. R. Civ. P. 23(a)(1) ........................................................................................................... 10

Fed. R. Civ. P. 23(b) ................................................................................................................. 6

Fed. R. Civ. P. 23(b)(1)(B) ..................................................................................................... 16

Fed. R. Civ. P. 23(c)(1)(A) .................................................................................................... 6, 7

Fed. R. Civ. P. 23(d)(1) ............................................................................................................ 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

## I.    INTRODUCTION

Petitioners' motion to certify a class in this 9 U.S.C. § 4 proceeding (Dkt. 50, "Motion") appears to be unprecedented. Neither side has identified any example of a class certification motion in this type of proceeding to compel individual arbitration—much less a decision granting certification in this context. That is for good reason. Petitioners' Motion has numerous problems that independently foreclose the class certification they seek.

At the threshold, Petitioners never explain how Rule 23 could appropriately apply in this proceeding. A Section 4 petition to compel arbitration under the Federal Arbitration Act ("FAA") is not a full-blown civil action or lawsuit. It is a narrow proceeding designed to facilitate "a summary and speedy disposition of motions or petitions to enforce arbitration clauses." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983). Section 4 lays out its own procedures for resolving a petition, including through a fast-tracked, summary trial if fact disputes require it, without any mention or hint of class certification. 9 U.S.C. § 4. The statute also instructs courts to treat Section 4 petitions "as motions, not complaints." *Bridgeport Mgmt., Inc. v. Lake Mathews Min. Props., Ltd.*, No. 14-cv-70, 2014 WL 953831, at *2 (N.D. Cal. Mar. 6, 2014) (Tigar, J.) (citing 9 U.S.C. § 6). Procedurally speaking, Section 4 petitions are not "actions," *see id.*, and so they cannot be "class actions." Besides, every Petitioner signed an agreement that waived their ability to bring or participate in a class action. They are equitably estopped from avoiding that waiver while simultaneously trying to enforce the agreements in which they made the waiver.

Beyond these problems, Petitioners face many more, which arise out of Rule 23's well settled requirements. Petitioners improperly propose to certify fail-safe classes, which are defined in terms of what Petitioners must prove to secure relief at the end of this proceeding—namely, that they agreed to arbitrate with Respondents (collectively, "Twitter"), that they demanded arbitration under those agreements, and that Twitter "refused" to proceed. *See* Mot. 1; 9 U.S.C. § 4. Moreover, Twitter has not refused to proceed; it has merely insisted on adherence to the terms of the parties' agreements. For this reason, Petitioners' improperly defined class has zero members, and fails to satisfy Rule 23(a)'s numerosity requirement. Petitioners likewise fail to establish that they can satisfy commonality because the common questions they purport to identify are in fact questions

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

about each individual class member.

Most glaring, perhaps, is Petitioners' failure to satisfy Rule 23(a)(4)'s requirement of adequacy of representation. This requirement seeks to guard against conflicts of interest between absent members of the proposed class, on the one hand, and the class representatives or class counsel on the other. *See, e.g.*, *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (reversing class certification because of inadequacy of representation). Here, Petitioners chose to file their petition in the Northern District of California, and under Ninth Circuit precedent this Court can issue an order compelling arbitration only within the Northern District of California. *See, e.g.*, *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001); *Cont'l Grain Co. v. Dant & Russell, Inc.*, 118 F.2d 967, 968-69 (9th Cir. 1941). Yet many members of the proposed class live and work in distant locations across the country and would not want to arbitrate their disputes against Twitter in this District. Petitioners give no attention to this divergence between the relief they are constrained to ask for from this Court and absent class members' interests in obtaining different relief. And the problem is particularly concerning because Petitioners seek to certify a class under Rule 23(b)(1) or (b)(2), which unlike Rule 23(b)(3) do not entitle absent class members to notice and an opportunity to opt out. This is exactly the sort of intra-class conflict that precludes certification under Rule 23(a)(4).

Finally, Petitioners also fail to justify certification under either Rule 23(b)(1) or (b)(2), which are not suited to the type of individualized relief compelling arbitration that Petitioners seek here. For all these reasons, Petitioners' Motion should be denied.

## II.    BACKGROUND

Petitioners are former employees of Twitter, Inc., who seek to assert claims arising out of several reductions in force that followed Twitter's October 2022 change in ownership. Each Petitioner entered into one of three versions of a binding Dispute Resolution Agreement ("DRA") agreeing to arbitrate their employment-related disputes with Twitter on an individual basis. *See* Dkt. 6-1; Dkt. 26-4. Each of the three DRA versions provides for an arbitration location "no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise." DRA § 3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

One relevant difference between the DRAs concerns the designation of an arbitration provider. The version signed by Petitioners Ma, Amlani, Willis, Olson, Crowley, and Treitler ("DRA #1") and the version signed by Petitioner Solomon ("DRA #2") both provide for "arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules." DRA #1 § 5; DRA #2 § 5. These versions define "JAMS Rules" as "JAMS Employment Arbitration Rules and Procedures." DRA #1 § 3; DRA #2 § 3. In contrast, the version signed by Petitioners Kindel and Rosen ("DRA #3") does not select an arbitration provider or any arbitration rules at all. *See* DRA #3 §§ 3, 5. Section 3 of that agreement provides that "[t]he Arbitrator shall be selected by mutual agreement of the Company and the Employee." DRA #3 § 3. The parties exercised their ability under that provision by mutually agreeing to arbitrate these claims before the American Arbitration Association ("AAA") under its Employment Arbitration Rules. Dkt. 6-8.

Although Section 6 of the DRA requires apportioning arbitral fees between the parties where permitted by applicable law and requires that any disputes in this regard be decided by the parties' arbitrator, JAMS and AAA both decided to disregard this provision. JAMS Senior Vice President and General Counsel Sheri Eisner communicated that JAMS would apply its Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("Minimum Standards") "notwithstanding any contrary provision in the parties' arbitration agreement." Dkt. 6-4. Ms. Eisner also stated that while the arbitrator in an individual case could consider whether the Minimum Standards apply and that JAMS would take the arbitrator's position into consideration, JAMS retained the right to make a "final determination." *Id.* Likewise, AAA responded to the parties' dispute over fees not by directing the parties to raise their dispute before their arbitrator, but by proposing to appoint a "Process Arbitrator" to decide the company's obligation to pay virtually all arbitral fees. Dkt. 6-9. Despite DRA § 6, AAA would not apportion the fees for the Process Arbitrator between the parties; rather, Twitter would have had to pay the Process Arbitrator's compensation. *Id.* Twitter explained that having a Process Arbitrator resolve the parties' fee dispute would violate the DRA, and the parties later agreed to have the issue raised to the merits arbitrator in each individual arbitration. Dkt. 26-5. Twitter further objected that AAA was disregarding the terms of the DRA by requiring Twitter to front all arbitration fees pending arbitrators' rulings on

1    the issue, even in jurisdictions where fee apportionment was lawful. Dkt. 6-10.

2            After an unsuccessful attempt at mediation, the parties revisited the status of the AAA

3    arbitrations. To move the matters along, Twitter proposed advancing the claimants' portion of the

4    arbitral fees on the condition that claimants and their counsel agreed to comply with the merits

5    arbitrators' rulings on fee sharing and reimburse Twitter for the advanced payments if ordered by

6    the merits arbitrators to do so. Dkt. 36, Ex. 3, at 3. Petitioners' counsel flatly rejected the proposal

7    and objected to paying any share of the arbitrator fees. *Id.* at 2.

8            Meanwhile, on July 3, 2023, Petitioners filed this proceeding under 9 U.S.C. § 4. Dkt. 1. In

9    relevant part, that provision states:

10           > A party aggrieved by the alleged failure, neglect, or refusal of another
             > to arbitrate under a written agreement for arbitration may petition any
11           > United States district court which, save for such agreement, would
             > have jurisdiction under title 28, in a civil action or in admiralty of the
12           > subject matter of a suit arising out of the controversy between the
             > parties, for an order directing that such arbitration proceed in the
13           > manner provided for in such agreement. … The court shall hear the
             > parties, and upon being satisfied that the making of the agreement for
14           > arbitration or the failure to comply therewith is not in issue, the court
             > shall make an order directing the parties to proceed to arbitration in
15           > accordance with the terms of the agreement. The hearing and
             > proceedings, under such agreement, shall be within the district in
16           > which the petition for an order directing such arbitration is filed. …

17   9 U.S.C. § 1. Petitioners later filed an amended petition, Dkt. 6, and submitted a motion to compel

18   arbitration on January 5, 2024, Dkt. 26. Respondents opposed, Dkt. 35, and Petitioners filed a reply,

19   Dkt. 37. Petitioners purported to seek relief on behalf of a proposed class "of all former Twitter

20   employees throughout the United States who have filed demands for arbitration against Twitter,

21   but for whom Twitter has refused to proceed with arbitrating their claims." Dkt. 6, ¶ 17.

22           On April 22, 2024, the Court denied Petitioners' motion without prejudice. Dkt. 46, at 1.

23   The Court found merit in Respondents' first objection to Petitioners' motion to compel arbitration:

24   it violated the rule of one-way intervention by seeking an order for the ultimate relief in this

25   proceeding—orders compelling arbitration—before moving for class certification. *Id.* at 3-4. As

26   the Court explained, the one-way intervention rule guards against the unfairness and inefficiency

27   that would result if a class representative could obtain a ruling on the merits before moving for

28   class certification, because the class representative could then decide not to seek certification if the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1   merits ruling proved to be unfavorable. *See id.* at 3, 4-5. The Court ordered the parties to confer on

2   a schedule for a class certification motion, and pursuant to the Court-ordered schedule Petitioners

3   filed that motion on June 18, 2024. Dkt. 50.

4   **III.    LEGAL STANDARD**

5          "The class action is 'an exception to the usual rule that litigation is conducted by and on

6   behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348

7   (2011) (citation omitted). "Before it can certify a class, a district court must be 'satisfied, after a

8   rigorous analysis, that the prerequisites' of both Rule 23(a) and 23(b)[] have been satisfied." *Olean*

9   *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en

10  banc). Petitioners' assertion that the Court must accept "the substantive allegations of the complaint

11  as true" (Mot. 4) is wrong. Class certification movants "must actually *prove*—not simply plead—

12  that their proposed class satisfies each requirement of Rule 23." *Olean*, 31 F.4th at 664 (citation

13  omitted); *see also Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024) ("[A] party

14  cannot plead or speculate her way to class certification."); *Vinole v. Countrywide Home Loans,*

15  *Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("pleadings alone will not resolve the question of class

16  certification"). Petitioners "must prove the facts necessary to carry the burden of establishing that

17  the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean*, 31 F.4th at

18  665.

19  **IV.    ARGUMENT**

20         **A.    Petitioners' Motion suffers from several threshold problems.**

21                **1.    Rule 23 does not apply to petitions under 9 U.S.C. § 4.**

22         Petitioners' Motion rests on the mistaken premise that Rule 23 allows a court to certify a

23  class in a proceeding to compel arbitration under 9 U.S.C. § 4. Petitioners say almost nothing to

24  defend that premise, and they identify no decision—***from any court, ever***—granting class

25  certification in a Section 4 proceeding.

26         Petitioners' only attempt to grapple with this issue is through a misleading citation to

27  *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). Petitioners suggest that the Supreme Court

28  suggested in *Morgan* that Rule 23 applies to proceedings under Section 4. That is not remotely true.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1    *Morgan* did not even mention Rule 23 or class certification. It merely held that the usual principles

2    governing waiver or forfeiture of arguments apply in their usual way in proceedings to stay

3    litigation under 9 U.S.C. § 3 or compel arbitration under 9 U.S.C. § 4. *Morgan*, 596 U.S. at 416-17

4    (deciding only "a single issue," namely whether courts "may create arbitration-specific variants of

5    federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring

6    arbitration'" (citation omitted)). Here, the unavailability of class certification for a Section 4

7    petition flows from the terms of the FAA and the Federal Rules, not some abstract public policy.

8         By definition, a class action under Rule 23 requires an "action." *See* Fed. R. Civ. P. 23(b)

9    ("A class ***action*** may be maintained if Rule 23(a) is satisfied and if [Rule 23(b) is satisfied]."

10   (emphasis added)); Fed. R. Civ. P. 23(c)(1)(A) (instructing courts to determine "whether to certify

11   the ***action*** as a class action" at "an early practicable time after a person sues or is sued as a class

12   representative" (emphasis added)); Fed. R. Civ. P. 23(d)(1) (identifying orders that a court may

13   issue "[i]n conducting an ***action*** under this rule" (emphasis added)). Under the Rules, there is only

14   "one form of action—the civil action." Fed. R. Civ. P. 2. And "[a] civil action is commenced by

15   filing a complaint with the court." Fed. R. Civ. P. 3.

16        But it is well settled that a freestanding proceeding to compel arbitration under Section 4 of

17   the FAA is *not* commenced by filing a complaint. As this Court recognized in denying an

18   application for entry of default in a Section 4 proceeding, Section 6 of the FAA "provides for

19   petitions to be treated as motions, not complaints." *Bridgeport*, 2014 WL 953831, at *3; *see also*

20   *Moses H. Cone*, 460 U.S. at 22 n.27 ("Section 6 … provides that a request for relief under … § 4

21   is to be treated procedurally as a motion."). As a consequence, "petitions to compel arbitration filed

22   as instituting suit are not 'actions' to which responsive 'pleadings'"—such as an answer—"are

23   possible in the first instance." *Bridgeport*, 2014 WL 953831, at *3.

24        For this reason, the Third Circuit has held that Rule 22 interpleader procedures are not

25   available in a proceeding to confirm an arbitration award under 9 U.S.C. § 9. *CPR Mgmt., S.A. v.*

26   *Devon Park Bioventures, L.P.*, 19 F.4th 236, 242-44 (3d Cir. 2021). Like a Section 4 petition to

27   compel arbitration, a Section 9 petition to confirm an award is "a motion, not a pleading." *Id.* at

28   243. As a result, "parts of the Federal Rules of Civil Procedure that apply to pleadings do not apply

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1  to cases commenced by way of a motion to confirm … an arbitration award pursuant to [Section 9

2  of] the FAA." *Id.* "Because Rule 22 interpleader proceeds via pleading, it is not a motion and is

3  thus not permitted under the FAA." *Id.*

4          The same logic applies to Rule 23 procedures. They proceed via pleading—when a

5  proposed class representative "sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A);

6  *see also* Fed. R. Civ. P. 23(a). They therefore have no place in a Section 4 proceeding that takes

7  the form of a motion rather than an action initiated by a pleading. Nothing in the text of the FAA

8  suggests that a Section 4 proceeding is a civil action. On the contrary, Section 4 itself draws a

9  contrast between the "petition" to compel arbitration that institutes the Section 4 proceeding and

10  the "civil action" that the parties might litigate to resolve their underlying dispute. 9 U.S.C. § 4. In

11  addition, Section 4 "sets out a simple, flexible framework for deciding whether a petition to compel

12  arbitration must proceed to trial, consistent with 'the simplicity, informality, and expedition of

13  arbitration.'" *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 113 (2d Cir. 2012) (citation

14  and footnote omitted) (questioning whether Rule 56's summary judgment procedures could apply

15  in a Section 4 proceeding). By design, a court's authority in a Section 4 proceeding is "narrowly

16  circumscribed": it "can only determine whether a written arbitration agreement exists, and if it does,

17  enforce it 'in accordance with its terms.'" *Weyerhaeuser Co. v. W. Seas Shipping Co.*, 743 F.2d

18  635, 637 (9th Cir. 1984). There is no basis to import class certification procedures into a

19  freestanding Section 4 proceeding. *Cf. GGNSC Louisville Hillcreek, LLC v. Dockery*, No. 15-cv-

20  908, 2016 WL 5478010, at *1 (W.D. Ky. Sept. 27, 2016) (concluding that a respondent could not

21  assert counterclaims in a Section 4 proceeding given the proceeding's narrow scope of inquiry).

22          **2.        Even if Rule 23 applied, Petitioners waived their right to certification.**

23          The Court need not decide whether Rule 23 could theoretically be available in a Section 4

24  proceeding because Petitioners have all expressly waived their ability to seek class certification in

25  the very agreement they are now seeking to enforce. The DRA states, "Employee acknowledges

26  and agrees that Employee and the Company are each waiving the right to participate as a plaintiff

27  or class member in any purported class action, collective action or representative action

28  proceeding." DRA #1 § 5; DRA #2 § 5; *see also* DRA #3 § 5 ("There will be no right or authority

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1    for any dispute to be brought, heard or arbitrated as a class action[.]"). These provisions do not

2    merely say that arbitration cannot proceed on a class-action basis. They affirmatively waive any

3    right to participate as a class-action plaintiff or class member in any proceeding or dispute. By their

4    plain terms, these waivers preclude Petitioners' present Motion.

5            Petitioners have no basis to disavow these provisions. The entire object of this Section 4

6    proceeding—by Petitioners' own admission—is to have the Court enforce the DRA. *See* Dkt. 26,

7    at 8 ("[T]he Court should enforce the parties' agreement to arbitrate."). Petitioners cannot on the

8    one hand ask the Court to enforce the DRA while on the other hand asking the Court to disregard

9    one of its material terms. *See, e.g.*, *Est. of Orbie Coggins ex rel. Brooks v. Wapato Point Mgmt. Co.*

10   *Health & Welfare Plan*, 22 F. Supp. 3d 1152, 1156 (E.D. Wash. 2014) ("Equitable estoppel

11   'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid

12   the burdens that contract imposes.'"). And federal law is clear that class action waivers in arbitration

13   agreements are enforceable. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). The

14   Court should enforce Petitioners' waivers here.

15           **3.      Petitioners propose fail-safe classes based on unobjective criteria.**

16           The third threshold problem for Petitioners is their failure to properly define their class. The

17   en banc Ninth Circuit has explained that "[a] court may not … create a 'fail safe' class that is

18   defined to include only those individuals who were injured by the allegedly unlawful conduct."

19   *Olean*, 31 F.4th at 669 n.14. In a fail-safe class, "whether a person qualifies as a member depends

20   on whether the person has a valid claim." *In re Google RTB Consumer Priv. Litig.*, No. 21-cv-2155,

21   2024 WL 2242690, at *5 (N.D. Cal. Apr. 4, 2024) (citation omitted)). "Such a class definition is

22   improper because a class member either wins or, by virtue of losing, is defined out of the class and

23   is therefore not bound by the judgment." *Olean*, 31 F.4th at 669 n.14. This type of class definition

24   creates the one-way intervention problem in another form: if the defendant succeeds on the merits,

25   that success is not binding on would-be class members. *See, e.g.*, *Boucher v. First Am. Title Ins.*

26   *Co.*, No. 10-cv-199, 2011 WL 1655598, at *5 (W.D. Wash. May 2, 2011) ("A 'fail-safe class' like

27   this ensures that a defendant cannot prevail against the class, because if the defendant prevails, the

28   class will not exist.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1    Petitioners' proposed class is a classic example of a fail-safe class within the context of this

2    9 U.S.C. § 4 proceeding. Their proposed class comprises:

3         All former Twitter employees through the United States who signed
          arbitration agreements with Twitter and who have filed demands for
4         arbitration with JAMS or AAA against Twitter, but for whom Twitter
          has refused to proceed with arbitrating their claims.
5

6    Mot. 1. Through this definition, Petitioners defines class membership in terms of what they must

7    show to obtain relief under 9 U.S.C. § 4. To be a class member, the former employee must have

8    formed an arbitration agreement with Twitter, demanded to arbitrate, and been met by refusal. *See*

9    Mot. 7-8. Those are simply the elements for Section 4 relief: the petitioner must have "a written

10   agreement for arbitration" and must be "aggrieved by the … refusal of another to arbitrate." 9

11   U.S.C. § 4. If the court is "satisfied that the making of the agreement for arbitration or the failure

12   to comply therewith is not in issue," the court must issue an order compelling arbitration. *Id.* Courts

13   thus recognize that two key elements under 9 U.S.C. § 4 are: (1) an agreement to arbitrate and (2) a

14   refusal to arbitrate as the agreement requires. *See, e.g.*, *Moses H. Cone*, 460 U.S. at 21; *Jolly v.*

15   *Intuit Inc.*, 485 F. Supp. 3d 1191, 1197, 1206 (N.D. Cal. 2020).

16       Twitter's defense in this proceeding is that it has not refused to arbitrate but is merely

17   seeking to have the DRA's provisions enforced according to their terms. *See* Dkt. 35, at 14. If

18   Twitter is right, the Court may not issue relief under Section 4. *See Jolly*, 485 F. Supp. 3d at 1206

19   ("[A] court may only compel arbitration [under Section 4] if one party is not abiding by the terms

20   of the agreement."). And if Twitter is right, the proposed class is a null set. That is a classic example

21   of a fail-safe class, which the Court should reject. *See, e.g.*, *Brazil v. Dell Inc.*, 585 F. Supp. 2d

22   1158, 1167 (N.D. Cal. 2008) (rejecting class defined in terms of purchasers that "Dell falsely

23   advertised" because "[t]o determine who should be a member of these classes, it would be necessary

24   for the court to reach a legal determination that Dell had falsely advertised").

25       Notably, this problem extends to Petitioners' subclasses as well. The "Arbitration Fees Sub-

26   Class" and "JAMS Office Sub-Class" similarly incorporate a "refus[al] to proceed with arbitrating

27   [members'] claims" criterion. Again, proving that Twitter has refused to comply with the parties'

28   agreement is what Petitioners must do to obtain the Section 4 relief they seek. And the "Signed

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                    RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1   Arbitration Agreements Sub-Class" incorporates a "refus[al] to produce signed copies of the[]

2   arbitration agreements." Mot. 1. If Twitter's positions on fees, producing agreements, and JAMS

3   arbitration locations are supported by the DRA, Petitioners lose their Section 4 petition on the

4   merits and these their subclasses are empty, just like their overarching class. The Court should

5   refuse to certify Petitioners' fail-safe classes.

6   **B.      Petitioners fail to meet Rule 23(a)'s requirements.**

7   For at least three of Rule 23(a)'s requirements—numerosity, commonality, and adequacy

8   of representation—Petitioners have failed to meet these requirements for class certification by a

9   preponderance of evidence.

10   **1.      Petitioners fail to satisfy numerosity.**

11   Petitioners have not shown that their proposed class or subclasses are "so numerous that

12   joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As discussed already, Petitioners

13   have proposed class definitions limited to individuals with whom Twitter has refused to arbitrate

14   or refused to produce signed agreements. *See* Mot. 1. But Twitter has not made such refusals.

15   Twitter has not refused to proceed with arbitrating. Twitter remains committed to enforcing the

16   DRA according to its terms, and even agreed to advance certain claimants' share of arbitration fees

17   to obtain a definitive ruling on the parties' fees disputes from their arbitrators. Dkt. 35, at 14; Dkt.

18   36, Ex. 3, at 3. Nor has Twitter refused to produce signed copies of former employees' arbitration

19   agreements. Twitter simply insists on receiving evidence that former employees have authorized

20   Petitioners' counsel to obtain their personnel records, consistent with California Labor Code

21   § 1198.5. Dkt. 26-9; Dkt. 35, at 17-18; Dkt. 36, ¶¶ 9-11.

22   Petitioners have not carried their class certification burden by proving by a preponderance

23   of evidence that there actually are former Twitter employees with whom Twitter has truly refused

24   to arbitrate or refused to produce a signed agreement. Still less have they proved by a preponderance

25   that there are enough members of their proposed class and subclasses to satisfy Rule 23(a)(1)'s

26   numerosity requirement. *See, e.g.*, *Hargreaves v. Associated Credit Servs., Inc.*, No. 16-cv-103,

27   2017 WL 2260705, at *4 (E.D. Wash. May 23, 2017) ("Mere conjecture as to the number of

28   members that fit within Plaintiffs' proposed class and subclass definition does not satisfy the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1  Rule."); *Rothman v. Gen. Nutrition Corp.*, No. 11-cv-3617, 2011 WL 6940490, at *4 (C.D. Cal.

2  Nov. 17, 2011) (finding that numerosity cannot be shown by "[i]ndulging in … speculation" based

3  on the total number of transactions).

### 2.     Petitioners fail to satisfy commonality.

5  Petitioners have also failed to identify common questions to satisfy Rule 23(a)(2). Rather

6  than identify how their request for relief "depend[s] upon a common contention … that is capable

7  of classwide resolution—which means that determination of its truth or falsity will resolve an issue

8  that is central to the validity of each one of the claims in one stroke," *Wal-Mart Stores, Inc. v.*

9  *Dukes*, 564 U.S. 338, 350 (2011)—Petitioners identify three questions that vary person to person:

> (1) Is ***he or she*** a former Twitter employee who signed an arbitration
> agreement with Twitter? (2) Has ***he or she*** filed an arbitration
> demand with JAMS or AAA? (3) Has Twitter refused to proceed
> with arbitrating ***his or her*** claims?

13  Mot. 7-8 (emphasis added). Each of the questions is individualized. Determining the answers to

14  these questions for the named Petitioners (or any other individual class members) does not entail

15  anything for others who may or may not be in the class and may or may not have a right to relief

16  under Section 4. Petitioners also approach their proposed subclasses in a similar way, identifying

17  individualized questions about the subclass members rather than common questions that cut across

18  the class. Mot. 8. At best, Petitioners' questions merely determine whether an individual fits within

19  the class or subclass definitions. If that sort of question were enough to establish commonality,

20  commonality would cease to be a meaningful requirement. *See Torres v. Nutrisystem, Inc.*, 289

21  F.R.D. 587, 590, 592 n.2 (C.D. Cal. 2013) (finding commonality lacking for proposed class of "[a]ll

22  persons located in California whose telephone conversations with Defendant were recorded by

23  Defendant without disclosure at any time," despite plaintiff's argument that "whether each class

24  member's call was recorded" and "whether the class member's call was recorded without

25  disclosure" were common questions, because the commonality of those questions was merely a

26  result of "how the proposed class [was] constructed").

### 3.     Petitioners fail to satisfy adequacy of representation.

28  Petitioners' argument that they "will fairly and adequately protect the interests of the class,"

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1    Fed. R. Civ. P. 23(a)(4), overlooks a glaring divergence of interests between Petitioners and absent

2    class members. The first question "in assessing adequacy of representation is whether 'the named

3    plaintiffs and their counsel have any conflicts of interest with other class members.'" *Kim*, 87 F.4th

4    at 1000. "An absence of material conflicts of interest between the named plaintiffs and their counsel

5    with other class members is central to adequacy and, in turn, to due process for absent members of

6    the class." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009).

7         The conflict here arises from Petitioners' decision to file their petition in this Court. As the

8    parties have already briefed, the Ninth Circuit has construed 9 U.S.C. § 4 as not permitting a district

9    court to issue a Section 4 order compelling arbitration outside that court's own district. *Textile*

10   *Unlimited*, 240 F.3d at 785; *Cont'l Grain*, 118 F.2d at 968-69. The Court asked the parties to

11   address those Ninth Circuit cases in supplemental briefing, asking whether, if Petitioners may move

12   to compel arbitration in this District, the Court must compel arbitration to occur within this district

13   notwithstanding the DRA's arbitration-venue provision. *See* Dkt. 41, at 1. The parties identified a

14   divergence of views from district courts on whether a court in a Section 4 proceeding may override

15   an arbitration-venue provision. *See* Dkt. 42, at 3-4. But neither side disputes that if the Court may

16   issue Section 4 relief despite the DRA's arbitration-venue provision, it must order the arbitration

17   to occur within this District. *Compare* Dkt. 42, at 7, *with* Dkt. 43, at 5.

18        That would mean that all putative class members, regardless of where they live and where

19   their counsel are based and admitted to practice law, would have to seek relief in arbitration in the

20   Northern District of California if Petitioners obtain class certification and prevail. The individual

21   Petitioners may be willing to trade a convenient arbitration location for a Section 4 order from this

22   Court, but there is no reason to think other putative class members would make that tradeoff.

23   Petitioners' evidence shows that many claimants potentially with fee-sharing disputes worked far

24   from this District, including several hundred in New York, and several hundred more spread out in

25   Massachusetts, the District of Columbia, Georgia, Florida, Illinois, Texas, and other faraway

26   locations. Dkt. 50-1, at 4-17. A significant number of these claimants are not represented by

27   Petitioners' counsel. A separate law firm represents claimants in Colorado, Florida, Illinois, New

28   Jersey, New York, North Carolina, Oklahoma, Pennsylvania, Texas, Washington, and Wisconsin.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                    RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1    *Id.* And that law firm filed a Section 4 petition against Twitter on behalf of its New York-based

2    clients on the ground that New York was the venue "in which the arbitration is to be held." Petition

3    to Compel ¶ 10, *Frazier v. X Corp.*, No. 24-cv-2135 (S.D.N.Y. Mar. 22, 2024), ECF No. 6.[1] Yet if

4    the Court grants Petitioners' Motion and Petition here, all those claimants—and potentially more—

5    would have to forgo the ability to arbitrate near where they worked before an arbitrator

6    presumptively familiar with their local law, and instead arbitrate before an arbitrator in the Northern

7    District of California.[2]

8        Sacrificing a convenient arbitration location is not a small matter. Courts often recognize

9    that the location of arbitration is very important to employees. Some courts have even refused to

10   enforce arbitration agreements because the arbitration location would have been inconvenient for

11   the employee. *See, e.g.*, *Vargas v. Delivery Outsourcing, LLC,* No. 15-cv-3408, 2016 WL 946112,

12   at *11 (N.D. Cal. Mar. 14, 2016) ("Forcing Plaintiff, a luggage delivery driver, to challenge the

13   arbitration agreement thousands of miles from where he worked places a substantial barrier to

14   Plaintiff bringing his claims."); *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1007 (N.D. Cal.

15   2015) ("Forcing a retail shoe store employee to initiate an arbitration and/or challenge an arbitration

16   agreement thousands of miles away from her place of work erects a substantial barrier to the

17   vindication of the statutory discrimination claims at issue in this case."), *aff'd*, 699 F. App'x 620

18   (9th Cir. 2017). The JAMS Minimum Standards also state that "[a]n employee's access to

19   arbitration must not be precluded … by the location of the arbitration." JAMS Minimum Standard

20   No. 6 (reproduced at Dkt. 1-2). So to the extent that JAMS continues to insist on applying the

21   Minimum Standards, it may not even accept an arbitration that would require a New York

22   employee, for example, to arbitrate in San Francisco.

23       The key point here is that there are undoubtedly absent members of the putative nationwide

---

[1] The district court recently issued a decision ordering Twitter to pay all ongoing arbitration fees for the *Frazier* petitioners unless and until their individual arbitrators rule to the contrary. *Frazier v. X Corp.*, No. 24-cv-2135, 2024 WL 3370887, at *1 (S.D.N.Y. July 4, 2024). Twitter respectfully disagrees with the court's decision and intends to appeal.

[2] Even for the JAMS Office Sub-Class, granting relief under Section 4 would be highly inconvenient. Petitioners' evidence indicates that most putative members of this proposed subclass worked far from this District and that none was seeking to arbitrate in the Northern District of California. *See* Dkt. 26-8; Dkt. 50-1, Ex. 5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

class who would prefer to arbitrate in the contractually specified location, but Petitioners and Petitioners' counsel do not represent that viewpoint and cannot obtain relief that is consistent with it. In such circumstances, certification is improper. *See, e.g.*, *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997) (finding "a conflict between the interests of the putative representative and members of the class" where the representatives were challenging a government program but "there were undoubtedly people among the broad class proposed by them who did not oppose [it]"); *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 577 (C.D. Cal. 2010) ("It is well-established that class representatives are inadequate if they seek relief that putative class members do not wish to seek."), *aff'd*, 476 F. App'x 154 (9th Cir. 2012). This conflict is "fundamental" and goes to "the heart" of these proceedings. *Kim*, 87 F.4th at 1000 (citation omitted). The conditions under which the arbitrations are to occur is the whole crux of this Section 4 proceeding.

The conflict is particularly concerning given Petitioners' request for certification under Rule 23(b)(1) or 23(b)(2). These types of class action, unlike Rule 23(b)(3) class actions, include no right to notice and no right to opt out and avoid being bound by the court's judgment. *See, e.g.*, *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1339 (9th Cir. 1976). So "[t]he legal rights of absent class members … are resolved regardless of either their consent, or, in a class with objectors, their express wish to the contrary." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 847 (1999). Binding absent class members to an order compelling arbitration in the Northern District of California, negating an important term of their agreements without any warning or opportunity to opt out, raises serious due process concerns for those class members. *See Hansberry v. Lee*, 311 U.S. 32, 45 (1940) ("Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires."). For this reason, too, class certification is improper.

### C.   Petitioners fail to meet Rule 23(b)'s requirements.

#### 1.   Certification is inappropriate under Rule 23(b)(2).

Another problem arising from Petitioners' attempt to use Rule 23 for a Section 4 proceeding is their inability to fit within Rule 23(b)(2). That provision authorizes class certification when "the

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). But the Supreme Court has made clear that "claims for *individualized* relief … do not satisfy the Rule." *Wal-Mart*, 564 U.S. at 360. The key to a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy," so the Rule "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* (citation omitted). "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.*

Here, however, the only relief Petitioners might be able to obtain through 9 U.S.C. § 4 are individualized directives for individual arbitrations. The statute specifies that a Section 4 "order direct[s] the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Any such order in this case would have to direct an arbitration between a single Petitioner (or putative class member) and Twitter in accordance with their respective agreement's terms. There is no way for the Court to compel arbitration collectively. The DRA requires "**arbitration on an individual basis only**." DRA § 5; *see also* DRA #1 § 5 ("[A]ny arbitration will be limited to the claims between [the] Employee and the Company individually."); DRA #2 § 5 (same). There is a world of difference between an order compelling individual arbitration and an order compelling arbitration on a classwide basis. *See, e.g.*, *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184-85 (2019). So even if, as Petitioners assert, an order compelling arbitration is akin to an injunction, Petitioners are limited to a series of individual injunctions compelling individual arbitrations—not a single, indivisible injunction compelling arbitration as to the class as a whole. Rule 23(b)(2) does not permit that type of individualized injunctive relief.

### 2.      Certification is inappropriate under Rule 23(b)(1).

Petitioners' alternative argument to certify a Rule 23(b)(1) class fares no better. *First*, Petitioners misunderstand the scope of Rule 23(b)(1)(A), which is concerned that the opponent of class certification might be subject to "incompatible standards of conduct." Fed. R. Civ. P. 23(b)(1)(A). "Rule 23(b)(1)(A) authorizes class actions to eliminate the possibility of adjudications

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1    in which the defendant will be required to follow inconsistent courses of conduct." *Zinser v. Accufix*

2    *Research Institute, Inc.*, 253 F.3d 1180, 1194 (9th Cir. 2001) (citation omitted). "This danger exists

3    in those situations in which the defendant by reason of the legal relations involved can not [*sic*] as

4    a practical matter pursue two different courses of conduct." *Id.* (citation omitted). Here, there is no

5    such risk. If one court orders Twitter to pay all arbitration fees for one claimant, and another court

6    declines to order Twitter to pay all arbitration fees for another claimant, there is no difficulty in

7    complying with both orders. The same reasoning applies to orders on different claimants' receipt

8    of their own signed arbitration agreements or on different claimants' ability to arbitrate if JAMS

9    lacks a location near their place of work. *See, e.g.*, *McDonnell-Douglas Corp. v. U.S. Dist. Ct. for*

10   *Cent. Dist. of California*, 523 F.2d 1083, 1086 (9th Cir. 1975) (rejecting application of Rule

11   23(b)(1)(A) merely "because if separate actions were maintained, defendants might be held liable

12   in some actions but not in others").

13       *Second*, there is no risk that individual adjudications of these issues "would be dispositive

14   of the interests of" absent individuals or "substantially impair or impede their ability to protect their

15   interests." Fed. R. Civ. P. 23(b)(1)(B). The classic case for certification under Rule 23(b)(1)(B) is

16   where the class has claims against a limited fund, such as trust assets, a bank account, insurance

17   proceeds, or liquidated company assets, that is inadequate to pay all the claims. *See Ortiz*, 527 U.S.

18   at 834, 838-41. Petitioners do not (and cannot) claim that this proceeding implicates such concerns.

19   Nor do they identify any similarity between this proceeding and the other examples of Rule

20   23(b)(1)(B) classes identify. *See* Mot. 14. Rather, they seemingly suggest that the fact that the

21   arbitration agreements here are purportedly materially identical means an individual proceeding

22   would set precedent for absent members of the proposed class. Mot. 15. It has long been settled,

23   however, that potential "stare decisis consequences" are not the sort of concern that justifies

24   certification under Rule 23(b)(1)(B). *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 467 (9th

25   Cir. 1973); *accord Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 547 (E.D. Cal. 2010).

26   Petitioners' maintenance of individual Section 4 petitions would not risk impairing other former

27   Twitter employees' ability to protect their interests, so Rule 23(b)(1)(B) certification is improper.

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

16                                          RESPONDENTS' OPPOSITION TO
MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-cv-3301

1   **V.      CONCLUSION**

2          For all these reasons, the Court should deny Petitioners' Motion for Class Certification

3   (Dkt. 50).

4   Dated: July 15, 2024                                Respectfully submitted,

5                                                       MORGAN, LEWIS & BOCKIUS LLP

6                                                       By  */s/ Eric Meckley*

7                                                           Eric Meckley
                                                            Brian D. Berry
8                                                           Michael E. Kenneally

9                                                           Attorneys for Respondents

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17                          RESPONDENTS' OPPOSITION TO
                            MOTION FOR CLASS CERTIFICATION
                            CASE NO. 3:23-cv-3301