SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice*)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:  (617) 994-5800
Facsimile:  (617) 994-5801

*Attorneys for Plaintiff Fabien Ho Ching Ma, Laila Amlani,
Jonathan Willis, Melissa Olson, Sasha Solomon,
Ryan Crowley, Lenna (Grae) Kindel, Sarah Rosen, and
Adam Treitler, on behalf of themselves
and all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL, SARAH ROSEN, and ADAM TREITLER, on behalf of themselves and all others similarly situated, <br><br> Petitioners, <br><br> v. <br><br> TWITTER, INC., AND X CORP., <br><br> Respondents. | Case No. 4:23-cv-3301 <br><br> **PETITIONERS' SUPPLEMENTAL BRIEFING ON THEIR MOTION TO COMPEL ARBITRATION** |

Pursuant to the Court's order of December 9, 2024 (Dkt. 61), Petitioners address the Court's questions and relevant authority issued since the prior briefing.

1. **"Petitioners have represented that the claims of Petitioners Lenna (Grae) Kindel, Sarah Rosen, and Sasha Solomon are moving forward in arbitration. ECF No. 50 at 15 n.7. Are arbitrations for any of the remaining Petitioners also moving forward?"**

No, the arbitrations for Petitioners Ma, Amlani, Willis, Olson, Crowley, and Treitler are still not moving forward.

2. **"As to any Petitioners for whom arbitration is not moving forward, has JAMS terminated the arbitration, or do those arbitration proceedings remain open? If any proceedings have been terminated, does that impact the Court's analysis?"**

JAMS has not terminated any of these arbitration proceedings; they simply remain effectively stayed. *See* Dkt. 26-3 (Liss-Riordan Declaration) ¶¶ 18, 26; Dkt. 6–2 at 5 ("[I]f compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue. JAMS will comply with that judicial determination."); Dkt. 6–6 at 2 (JAMS noting that affected cases "have been removed from calendar").

In any event, the formal status of these cases within JAMS is not relevant to this Court's inquiry under the Federal Arbitration Act (FAA), 9 U.S.C. § 4. The statute merely requires that the Court determine whether Petitioners are "aggrieved by the alleged failure, neglect, or refusal of another [— here, Twitter —] to arbitrate under a written agreement for arbitration." *Id.* "A party who refuses to pay required arbitration fees, despite having the ability to do so, has refused to arbitrate within the meaning of Section 4." *Frazier v. X Corp*, 2024 WL 3370887, at *3 (S.D.N.Y. July 4, 2024) (discussed in more detail *infra*); *Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *4 (C.D. Cal. Sept. 21, 2018) ("The Court finds that by repeatedly refusing to pay its portion of the filing fee as determined by the AAA… Zyppah has failed or refused to

arbitrate.").[1] Thus, Twitter's refusal to pay for these arbitrations, despite its ability to do so, constitutes a refusal to arbitrate irrespective of the formal status of these arbitrations.[2]

At the same time, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the

---

[1]   Indeed, the Ninth Circuit has opined:

> Our decision that Tillman's case may proceed does not mean that parties may refuse to arbitrate by *choosing* not to pay for arbitration. If Tillman had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's "failure, neglect, or refusal" to arbitrate. 9 U.S.C. § 4….A question may arise in such circumstances as to whether an arbitration "has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, when it has been terminated due to the nonpayment of a party who has the ability to pay but simply chooses not to. Even if such an arbitration has been terminated in accordance with the rules governing the arbitration, as Tillman's arbitration was here, it may be contrary to "the structure and purpose of the FAA" to allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules."

*Tillman v. Tillman*, 825 F.3d 1069, 1075–76 (9th Cir. 2016) (quoting *Sink v. Aden Enters.*, 352 F.3d 1197, 1200 (9th Cir. 2003)).

[2]   While the Seventh Circuit cases relied upon by Respondents "concluded that the parties **had fully arbitrated in accordance with their arbitration agreement**, which delegated the arbitration and underlying fee disputes to the rules and discretion of the AAA…, because the AAA terminated the arbitration in line with the process the parties had agreed to," *Hoeg v. Samsung Elecs. Am., Inc.*, 2024 WL 3593896, at *1 (7th Cir. July 31, 2024) (emphasis added) (summarizing *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609 (7th Cir. 2024)), such is not the case here. Not only has JAMS not formally terminated Petitioners' cases; their arbitration agreements make clear that the parties have *not* fully arbitrated in accordance with their arbitration agreements. Petitioners' arbitration agreements each explicitly provide, "This Agreement requires **all covered disputes to be resolved** only by an arbitrator **through final and binding arbitration** …. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator." Dkt. 6–1 at 3–4, 7–8, 11–12, 15–16, 19–20, 24–25, 29–30, 33–34 (emphasis added). Thus, even were JAMS to have formally terminated these proceedings, the out-of-circuit authority relied upon by Respondents is inapplicable to Petitioners' proceedings. And regardless, this Court is bound by the Ninth Circuit's interpretation of the FAA, not the Seventh Circuit's. *See Tillman*, 825 F.3d at 1075–76 (*supra* Note 1).

PETITIONERS' SUPPLMENTAL BRIEFING ON THEIR MOTION TO COMPEL ARBITRATION
CASE NO. 4:23-CV-3301

problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). Here, were Respondents able to effectively void their arbitration agreements by forcing JAMS to terminate the arbitrations by simply refusing to pay the required fees for JAMS' services, the FAA would become toothless, and any litigant seeking to avoid arbitration could follow the same tack to end up in court. This would do violence to the FAA's policy favoring arbitration and contravene both the statute's purpose and the parties' agreements.

3. **"Respondents state that Petitioner Ryan Crowley signed a version of the arbitration agreement that selects JAMS as the arbitration provider. ECF No. 35 at 10. Have Respondents produced a copy of that agreement to Crowley or his counsel? If they have not produced it because they are awaiting confirmation that Petitioners' counsel is 'authorized in writing by the employee to inspect, or receive a copy of, his or her personnel records,' Cal. Lab. Code § 1198.5(e), why have Petitioners' counsel not provided such confirmation?"**

Respondents have not produced a copy of Petitioner Crowley's signed arbitration agreement, despite confirming that they possess such a copy. Dkt. 35 at 10. They are required to do so under both the FAA and California law, and Cal. Lab. Code § 1198.5(e) is simply inapplicable to this situation. Respondents' ever-changing demands[3] before they will produce these agreements are nothing more than a continued effort to mire down Petitioners' counsel with procedural hurdles and frustrate the ability of scores of claimants to arbitrate their claims.

For starters, JAMS has made clear that it will administer Petitioner Crowley's arbitration against Respondents even without his signed arbitration agreement if this Court issues an order identifying JAMS as the proper forum for his arbitration. Dkt. 6–12 at 2 ("JAMS requests

---

[3] *See* Petitioners' Motion to Compel Arbitration and for Preliminary Injunction, Dkt. 26 at 15 n.15 (describing Respondents' shifting demands before they will produce signed agreements).

Claimants to amend the filings to include a signed arbitration agreement for each Claimant or, alternatively, a court order identifying JAMS and/or the JAMS Rules as applicable to the Claimant. Where a Claimant's Demand includes a signed agreement naming JAMS or a court order identifying JAMS as applicable to the Claimant, JAMS will proceed.").

At the same time, because all parties agree that Petitioner Crowley has a signed arbitration agreement listing JAMS at the arbitration provider, *see* Dkt. 35 at 10, the FAA requires this Court to compel Twitter to arbitrate these disputes. Under the FAA:

> A party seeking to compel arbitration must prove by a preponderance of the evidence the existence of an arbitration agreement, and a party opposing the petition bears the burden of proving by a preponderance of evidence any fact necessary to its defense. Where the parties agreed to arbitrate, courts apply a presumption of arbitrability as to particular grievances, "and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable."

*Cerletti v. Ecolab, Inc.*, 2018 WL 11471626, at *3 (N.D. Cal. 2018) (citations omitted); *accord Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d. Cir.1995) ("If the party seeking arbitration has substantiated the entitlement [to arbitration] by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."). More pointedly, this District has already recognized that "[w]hile the FAA authorizes the court to enforce only written agreements to arbitrate (9 U.S.C. § 3), it does not require the written agreements to be signed," and so when "the parties do not dispute that the Agreement is in writing," even if unsigned, there is "standing to compel arbitration." *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013). Because all parties agree that there is a valid arbitration agreement selecting JAMS as the parties' arbitration provider covering this dispute, this Court should compel arbitration with JAMS for Petitioner Crowley irrespective of Petitioners' possession of the signed agreement.[4]

---

[4]   The Ninth Circuit has explained:

Not only is Respondents' position contrary to the FAA; it is also incompatible with California law, including Cal. Lab. Code § 1198.5(e). For starters, by its very own terms, § 1198.5 only applies to "the personnel records that the employer maintains ***relating to the employee's performance or to any grievance concerning the employee***." Cal. Lab. Code § 1198.5(a) (emphasis added); *Carrillo v. Sodexo, Inc.*, 2021 WL 2980594, at *4 (C.D. Cal. Jan. 8, 2021) (quoting *id.*). An arbitration agreement plainly does not meet this definition.

Moreover, § 1198.5 explicitly exempts from its scope "records…[o]btained prior to the employee's employment," as well as situations in which "an employee or former employee files a lawsuit that relates to a personnel matter against his or her employer or former employer." Cal. Lab. Code § 1198.5. Thus, the statute relied upon by Respondents to withhold Petitioner Crowley's arbitration agreement — particularly given the legislative intent behind its enactment[5] — simply cannot frustrate his effort to secure a copy of his signed agreements.

Additionally, even were § 1198.5 to apply, Respondents have failed to explain how

---

By its terms, the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719–20 (9th Cir.1999); *see also Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 477–78 (9th Cir.1991). If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms.

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (emphasis in original).

[5] The Legislature's intent in enacting Cal. Lab. Code § 1198.5 was to *increase* employees' access to their records, not to create barriers to their accessing these records. *See Trevino v. Lassen Mun. Util. Dist.*, 2009 WL 385792, at *20 (E.D. Cal. Feb. 13, 2009), *amended,* 2009 WL 982006 (E.D. Cal. Apr. 6, 2009).

Petitioner has not already satisfied the "reasonable steps [required] to verify the identity of a current or former employee or his or her authorized representative." Cal. Lab. Code § 1198.5(e). While Respondents represent to this Court that "Petitioners' counsel have not provided any written authorizations to support the personnel record requests," Dkt. 35 at 6, this is simply untrue. Petitioner Crowley (like other claimants) has sent to Respondents written documentation that Petitioners' counsel is his "REPRESENTATIVE/ATTORNEY" via filing an arbitration demand with JAMS. Dkt. 6–5 at 28. Petitioner Crowley has even filed a signed affidavit under oath in this litigation attesting to the fact that he filed this demand and that "[b]ecause JAMS has required a signed copy of [his] arbitration agreement in order to administer my arbitration, and Twitter has not provided the signed copy, [his] arbitration has not moved forward." Dkt. 7–4 at 3. Thus, even were § 1198.5 to apply, Petitioner Crowley has met its requirements.

Regardless, California law requires Respondents to produce a signed copy of Petitioner Crowley's arbitration agreement under a separate statute that does not contain the same hurdles that Respondents claim § 1198.5 does: Cal. Lab. Code § 432. As one federal court has explained:

> California Labor Code section 432 requires: 'If an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request.' …. Under the plain language of section 432, it appears [the employer] should have produced the Arbitration Agreement in response to [the employee's] request.

*Carrillo*, 2021 WL 2980594, at *4. Thus, Respondents are legally required to furnish Crowley's signed arbitration agreement, and they cannot use § 1198.5 as a cudgel to throw obstacles in Petitioner's way to stymie his right to arbitrate his claims.[6]

---

[6] Moreover, defendants (including Twitter) routinely attach signed arbitration agreements when employees who are bound by such agreements file claims in court (as Twitter did for the plaintiffs for whom they moved to compel arbitration) without requiring a signed authorization to do so.

PETITIONERS' SUPPLMENTAL BRIEFING ON THEIR MOTION TO COMPEL ARBITRATION
CASE NO. 4:23-CV-3301

6

4. **"The parties may address any relevant authority decided after they completed their prior briefing."**

Respondents address four intervening cases since the parties' briefing on Petitioners' Motion to Compel Arbitration and for Preliminary Injunction. The first two — the Seventh Circuit cases of *Wallrich* and *Hoeg* — are inapposite and otherwise conflict with Ninth Circuit precedent as discussed *supra*. The other two — *Frazier v. X Corp.*, 2024 WL 3370887 (S.D.N.Y. July 11, 2024) (attached as Exhibit A), and *Rosa v. X Corp.*, 2024 WL 4903619 (D.N.J. Nov. 27, 2024), both concern the very same arbitration agreements as here but come to opposite conclusions about the ongoing fee dispute. In *Frazier*, the court concluded that Twitter's arbitration agreement requires it to abide by the JAMS General Counsel's ruling that the Minimum Standards applied, and Twitter must pay the arbitration fees per the agreement, before ordering Twitter to do so under § 4 of the FAA. In *Rosa*, the court concluded that the Minimum Standards were not applicable, and that Twitter had not engaged in bad faith or waived its obligation to arbitrate, before compelling the parties to arbitration. However, for a litany of reasons, this Court should follow Judge Rakoff's well-reasoned decision in *Frazier*[7] over the contrary decision in *Rosa*.

First, the cases are on different procedural postures: like here, *Frazier* was decided on a petition to compel arbitration brought by JAMS claimants; in contrast, *Rosa* was on a motion brought by Twitter within a suit alleging violations of the common law, the New Jersey Conscientious Employee Protection Act, New York Labor Law § 740, and California Labor Code § 1102.5, with the plaintiff arguing Twitter had acted in bad faith and had waived its right to arbitration by refusing to pay the disputed fees.

Second, *Rosa* — erroneously and without reasoning — brands this fee dispute a

---

[7] *Hoeg* was not "relied on by the Frazier district court" as Twitter argues, Dkt. 59 at 1; *Frazier* cited *Hoeg* in string cites — each time with several other cases that are good law, including a binding Ninth Circuit case and case from the Central District of California — and always for the accurate proposition that a party refusing to pay arbitration fees can constitute refusing to arbitrate under 9 U.S.C. § 4 and result in the party being ordered to pay such fees pursuant to the FAA.

"challenge[] to an arbitration agreement's validity," which it represents is "presumed to be [a] question[] for judicial determination" wherein New Jersey "[s]tate contract principles apply." *Rosa* at *5 (citations and quotations omitted). Thus, *Rosa* relies entirely on New Jesey law — inapplicable here — in analyzing the parties' agreement and the question over fees. In contrast, *Frazier* — citing a wealth of authority spanning federal courts with fulsome reasoning — correctly identifies this as a "[p]rocedural question[] relating to the rules of arbitration," which is a "matter[] for the arbitrator, and not for the court, to resolve." *Frazier* at *6 (citations and quotations omitted). *Frazier* then goes on to explain why the parties' arbitration agreements must be read to reserve the preliminary determination of fee allocations to JAMS' General Counsel.

Third, and relatedly, in *Rosa*, it was "only the JAMS case manager [who] ha[d] determined anything regarding fee apportionment," and "Rosa appear[ed] to exclusively rely on the case manager's decision along with its arguments for the general applicability of the Minimum Standards." *Rosa* at *11 n.7. In *Frazier* — as here — it was the JAMS General Counsel who issued the fees decision. This is a crucial distinction because, as *Frazier* notes and as Petitioners have argued here, the JAMS Rules expressly incorporated by the parties' agreements provide that the "JAMS' General Counsel was authorized to act on behalf of JAMS as an organization and carry out its duty under the JAMS Rules," and thus under the parties' agreements, "[t]he JAMS General Counsel is, in effect, standing in the shoes of the individual arbitrator until one has ruled to the contrary, and so in that sense her decision is no different than that of an individual arbitrator." *Frazier* at *6–7 (citing JAMS Rule 1(c)).

Fourth, *Rosa* explained its inclination "to find Rosa waived certain arguments," including that he "waived his opportunity to rebut the arguments put forth by Twitter on this topic [that Twitter would not be required to pay the fees if the Minimum Standards applied] because he has either not provided case law or properly addressed Twitter's claims." *Rosa* at *11. At the same time, the court accepted Twitter's argument that the contractual language "requires equal fee-apportionment unless and until the arbitrator orders otherwise" solely because Rosa "forfeited arguing against Twitter's interpretation" and "neglect[ed] to substantively address many of

Twitter's arguments." *Rosa* at *11 n.7. Thus, the *Rosa* court accepted Twitter's arguments on the crux issue of this case due to waiver/forfeiture. *Frazier*, on the other hand, reached this question and conducted a thorough analysis — citing, *inter alia*, dictionary definitions, court opinions, and legislative intent — before concluding that "even using [Twitter's own] definitions, the fact arbitration that fees must be 'apportioned' does not dictate *how* the fees should be apportioned." *Frazier* at *9 (quoting arbitration agreements) (emphasis in original). Here, by contrast, Petitioners have explicitly made the argument that the agreement neither requires nor supports equal division of arbitration fees irrespective of if the Minimum Standards apply. *See, e.g.*, Dkt. 37 at 5–9; Dkt. 43 at 11–14.

Fifth, *Rosa* fails to engage substantively with Twitter's arbitration agreement's language that "any disputes" as to fee apportionment "will be resolved by the Arbitrator," instead proclaiming that whether the JAMS Minimum Standards apply "in light of the different interpretations of the [arbitration agreements] and what fee arrangement should take place….will dictate whether **this Court** is forced to order arbitration pursuant to the FAA." *Rosa* at *9–10 (emphasis added). *Frazier*, on the other hand, wrestled with the reservation of such determinations to "the Arbitrator," which it acknowledged to be "a natural person" rather than JAMS as an entity, before concluding:

> While the Court agrees with Twitter, as apparently do petitioners, that ultimate resolution of any dispute over how fees should be allocated must be resolved by an individual arbitrator, the Court disagrees that the DRA precludes an interim allocation of fee responsibility until an individual arbitrator has ruled. The DRA provision specifying that fee disputes "will be resolved by the Arbitrator" does not answer the question of who is to resolve such fee disputes <u>before</u> an arbitrator has been appointed or been given a chance to address on the question. The contrary reading of this provision urged by Twitter would mean that <u>no one</u> has the power to order Twitter to pay any ongoing arbitration fees already due until the point that an arbitrator has had a chance to rule.
>
> The trouble with Twitter's interpretation, already evident from this very case, is that it would allow Twitter to effectively resist arbitration altogether. Indeed, on Twitter's theory, Twitter could refuse even to pay its case initiation fee -- which no one disputes it was required to pay -- and petitioners' only recourse would be to advance those sums until an arbitrator ordered to the contrary, even though courts

PETITIONERS' SUPPLMENTAL BRIEFING ON THEIR MOTION TO COMPEL ARBITRATION
CASE NO. 4:23-CV-3301

9

> routinely find such conduct constitutes an impermissible refusal to arbitrate.
>
> To be sure, an employee in the position of the petitioners here could in theory advance the ongoing arbitration fees and later seek reimbursement once the individual arbitrator had been assigned. But, at a minimum, this would allow Twitter to foist upon individual employees an arbitrary and often extreme financial burden. And if, as could often be the case, an individual employee lacked the funds necessary to assume such a burden, the result would be to allow Twitter to avoid arbitration entirely. Such an interpretation would frustrate the "prime objective of an agreement to arbitrate ... to achieve streamlined proceedings and expeditious results." *Preston v. Ferrer*, 552 U.S. 346, 357, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (internal quotation marks omitted). Such an unreasonable interpretation cannot have been what was intended by the DRA.
>
> Whereas the provision Twitter relies on -- and the DRA more generally -- is silent on the question of interim relief, the JAMS Rules and Minimum Standards, which are incorporated into the DRA, contemplate that JAMS as an organization will have the power to make an initial ruling on this dispute.

*Frazier* at *4–5 (emphasis in original) (citations and footnotes omitted). *Frazier* went on to explain that, because the JAMS Rules incorporated into the parties' agreements appoint JAMS' General Counsel to act in the organization's stead, her determination was entitled to deference as an initial matter but noted that the parties could raise the issue with individual arbitrators after Twitter complied with this preliminary determination that allowed the arbitrations to proceed.

Finally, *Rosa* summarily accepted that because employees could opt out of their arbitration agreements, these agreements were not "required as a condition of employment" without any further analysis or recognition that employees were required to sign the agreements and could only opt-out afterwards. *Frazier*, on the other hand — citing a wealth of caselaw in addition to policy rationales — delved into why each agreement (rather than *arbitration*) was indeed "required as a condition of employment" notwithstanding the opt-out provisions.

In short, the facts and reasoning in *Frazier* should guide this Court, and Respondents should be compelled to arbitrate in accordance with the parties' agreements.

Respectfully submitted,

PETITIONERS FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, LENNA (GRAE) KINDEL, SARAH ROSEN, and ADAM TREITLER, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719
Bradley Manewith (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; bmanewith@llrlaw.com

Dated:       December 20, 2024

PETITIONERS' SUPPLMENTAL BRIEFING ON THEIR MOTION TO COMPEL ARBITRATION
CASE NO. 4:23-CV-3301

11

**CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on all counsel of record via the Court's CM/ECF system on December 20, 2024.

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan